**JENNER & BLOCK LLP**
David R. Singer (Cal. Bar No. 204699)
DSinger@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:    +1 213 239 5100
Facsimile:     +1 213 239 5199

Gregory D. Washington (Cal. Bar No. 318796)
GWashington@jenner.com
455 Market Street, Suite 2100
San Francisco, CA  94105
Telephone:    +1 415 293 5937

Precious S. Jacobs-Perry (admitted *pro hac vice*)
PJacobs-Perry@Jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Telephone:  +1 312 840-8615

Attorneys for Defendant
Apple Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD JACKSON et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., et al.,<br><br>Defendants. | Case No. 2:22-cv-09438 AB (MAA)<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:    Hon. André Birotte Jr.<br>Ctrm:    7B<br>Date:    June 9, 2023<br>Time:    10:00 a.m. |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 9, 2023, at 10:00 a.m.,[1] or as soon thereafter as the matter may be heard in the courtroom of the Honorable André Birotte Jr., United States District Judge, Central District of California, located in Courtroom 7B in 350 West 1st Street, Los Angeles, CA 90012, Defendant APPLE INC. ("Apple") will, and hereby does, move the Court to dismiss this action under Federal Rule of Civil Procedure 12(b)(1) and (6) on the grounds that Plaintiffs do not have Article III standing and their Complaint fails to state a claim (the "Motion").

The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in Support of Apple's Motion to Dismiss and all exhibits thereto, any additional briefing, and the evidence and arguments presented to the Court at the hearing on this matter.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 5, 2023. Apple initiated the meet-and-confer process with an email on March 27, 2023, and concluded the process with a phone conversation on April 5, 2023.

---

[1] Apple had initially planned to choose an earlier hearing date, but has selected June 9 to give Plaintiffs' counsel additional time to seek consolidation of the hearing dates for Apple's motion to dismiss and other Defendants' anticipated motions to dismiss, and, if such hearing dates are consolidated, to accommodate the majority of other Defendants who are available on this date (though not all Defendants' counsel are available). There were no other available hearing dates in June 2023 on which Apple and/or its counsel are available (and on which other defense counsel are available) for a hearing. If the Court determines it is appropriate to consolidate hearing dates, Apple is amenable to working with the parties to find a mutually agreeable hearing date and would not oppose a motion consolidating hearing dates within a reasonable time period.

Dated:  April 11, 2023                    JENNER & BLOCK LLP

                                   By:  /s/ *David R. Singer*
                                        David R. Singer
                                        Precious S. Jacobs-Perry
                                        Gregory Washington

                                        Attorneys for Defendant
                                        Apple Inc.

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

    A.    Plaintiffs Allege That Federal Officials Orchestrated A "Censorship Scheme." ............................................................................................... 2

    B.    Plaintiffs Make No Specific Allegations Against Apple. ................... 3

    C.    Plaintiffs' Unsupported Claims And Requested Relief. .................... 4

I.    RULE 12 DISMISSAL STANDARDS. ..................................................... 5

II.    PLAINTIFFS DO NOT HAVE ARTICLE III STANDING. ...................... 5

    A.    Plaintiffs Have Not Alleged That They Suffered An Injury-In-Fact.. 6

    B.    Plaintiffs' Alleged Harm Is Neither Traceable To Apple Nor Redressable By The Court. ................................................................ 7

III.    PLAINTIFFS' SECTION 1983 CLAIM FAILS BECAUSE THEY DO NOT ALLEGE THAT APPLE ACTED IN CONCERT WITH STATE OR LOCAL OFFICIALS, AND APPLE IS NOT A STATE ACTOR. ........... 10

    A.    Plaintiffs' Claim That Apple Acted In Concert With Federal Officials Is Not Actionable Under Section 1983. ............................................ 10

    B.    Because Plaintiffs Cannot Sue The Federal Government Or Private Parties For Damages For First Amendment Violations, Any Amendment To Plaintiffs' Section 1983 Claim Would Be Futile.... 11

    C.    Because Apple Is A Private Entity, And Not A State Actor, Plaintiffs Also Cannot Sue Apple For Injunctive Relief. ................................. 12

        1.    Apple cannot meet the "public function" test because it does not perform a traditionally exclusive government function. ... 12

        2.    Apple's alleged conduct cannot meet the joint action or governmental nexus test because it did not willfully or substantially cooperate with federal officials. ........................ 13

3.    Apple cannot meet the "state compulsion" test because federal officials did not dictate that Apple censor any Plaintiff's speech. ...................................................................................14

IV.   PLAINTIFFS' CIVIL RIGHTS ACT CLAIM FAILS BECAUSE THEY DO NOT ALLEGE THAT APPLE ACTED UNDER THE COLOR OF STATE LAW, DISCRIMINATED AGAINST ANYONE BASED ON RACE, OR VIOLATED THE CIVIL RIGHTS ACT. ..............................15

      A.    Plaintiffs' Civil Rights Act Claim Fails Because They Have Not Alleged That Apple Acted Under State or Local Authority. ............16

      B.    Plaintiffs Do Not Allege Race-Based Discrimination. .....................16

      C.    Plaintiffs Do Not Allege That Apple Engaged In Conduct Prohibited By The Civil Rights Act. ...............................................17

V.    SECTION 230 OF THE COMMUNICATIONS DECENCY ACT BARS EACH OF PLAINTIFFS' CLAIMS BECAUSE THEY SEEK TO HOLD APPLE LIABLE AS A PUBLISHER OF THIRD-PARTY CONTENT...18

VI.   PLAINTIFFS DO NOT STATE A CLAIM UNDER CALIFORNIA'S UNRUH CIVIL RIGHTS ACT...................................................................19

      A.    Plaintiffs Lack Standing To Bring An Unruh Act Claim. ................19

      B.    Plaintiffs Do Not Allege Intentional Discrimination........................20

      C.    Political Viewpoint Is Not A Protected Class...................................21

VII.  PLAINTIFFS HAVE NO INDEPENDENT INJUNCTIVE OR DECLARATORY RELIEF CLAIMS. .......................................................21

CONCLUSION..................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alcorn v. Anbro Engineering, Inc.*,
 2 Cal. 3d 493 (1970) ................................................................................... 20

*Anderson v. Warner*,
 451 F.3d 1063 (9th Cir. 2006) ................................................................... 10

*Angelucci v. Century Supper Club*,
 41 Cal. 4th 160 (2007) ................................................................................ 19

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................. 5, 6

*Azul-Pacifico, Inc. v. City of Los Angeles*,
 973 F.2d 704 (9th Cir. 1992) ..................................................................... 11

*Barnes v. Yahoo! Inc.*,
 570 F.3d 1096 (9th Cir. 2009) ................................................................... 18

*Bartlett v. Strickland*,
 556 U.S. 1 (2009) .................................................................................. 15-16

*Billings v. United States*,
 57 F.3d 797 (9th Cir. 1995) ....................................................................... 10

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
 403 U.S. 388 (1971) ............................................................................ 11, 12

*Blum v. Yaretsky*,
 457 U.S. 991 (1982) ................................................................................... 14

*Children's Health Defense v. Facebook Inc.*,
 546 F. Supp. 3d 909 (N.D. Cal. 2021) ................................................. 14, 15

*Christman v. Pennsylvania*,
 275 F. Supp. 434 (W.D. Pa. 1967) ............................................................ 16

*City of Los Angeles v. Lyons*,
 461 U.S. 95 (1983) ....................................................................................... 5

*City of Reno v. Netflix, Inc.*,
    52 F.4th 874 (9th Cir. 2022) ............................................................................ 22

*Correctional Services Corp. v. Malesko*,
    534 U.S. 61 (2001) ....................................................................................11-12

*DeGrassi v. City of Glendora*,
    207 F.3d 636 (9th Cir. 2000) ......................................................................... 14

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) ...................................................................... 9, 14

*Diep v. Apple Inc.*,
    No. 21-cv-10063-PJH, 2022 WL 4021776 (N.D. Cal. Sept. 2, 2022) .............. 18

*Doe v. Internet Brands, Inc.*,
    824 F.3d 846 (9th Cir. 2016) ......................................................................... 19

*Dozier v. Walmart Inc.*,
    No. CV2005286, 2021 WL 1534973 (C.D. Cal. Mar. 5, 2021).......................... 5

*Egbert v. Boule*,
    142 S. Ct. 1793 (2022) .................................................................................. 11

*Fair Housing Council of San Fernando Valley v. Roommates.Com LLC*,
    521 F.3d 1157 (9th Cir. 2008) ....................................................................... 19

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) ......................................................................... 5

*Flores v. Adir International, LLC*,
    No. CV 15–00076, 2015 WL 12806476 (C.D. Cal. May 8, 2015).................. 6-7

*Franklin v. Fox*,
    312 F.3d 423 (9th Cir. 2002) ......................................................................... 13

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*,
    528 U.S. 167 (2000) ........................................................................................ 5

*George v. Pac.-CSC Work Furlough*,
    91 F.3d 1227 (9th Cir. 1996) ......................................................................... 13

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*,
    742 F.3d 414 (9th Cir. 2014) ......................................................................... 20

*Hindes v. FDIC*,
    137 F.3d 148 (3d Cir. 1998) ............................................................................... 11

*Huber v. Biden*,
    No. 21-CV-06580, 2022 WL 827248 (N.D. Cal. Mar. 18, 2022),
    *aff'd*, No. 22-15443, 2022 WL 17818543 (9th Cir. Dec. 20, 2022) ................. 21

*Langer v. Stern*,
    No. CV 19-02151, 2019 WL 7899945 (C.D. Cal. Nov. 25, 2019) .................... 19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................... 8

*Magassa v. Mayorkas*,
    52 F.4th 1156 (9th Cir. 2022) ...................................................................... 10-11

*Manhattan Community Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019) ............................................................................... 12, 14

*MAO-MSO Recovery II, LLC v. Mercury General*,
    No. CV 17-02525, 2018 WL 3357493 (C.D. Cal. May 23, 2018) ...................... 7

*Martinez v. Cot'n Wash, Inc.*,
    81 Cal. App. 5th 1026 (2022) ........................................................................... 21

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ............................................................................ 5

*Mayall v. USA Water Polo, Inc.*,
    174 F. Supp. 3d 1220 (C.D. Cal. 2016) .............................................................. 9

*McCrudden v. DeMarco*,
    No. 22-cv-00407, 2022 WL 2784764 (C.D. Cal. June 2, 2022) ......................... 9

*Mecinas v. Hobbs*,
    30 F.4th 890 (9th Cir. 2022) ............................................................................... 8

*Neerman v. Cates*,
    No. CV 22-2751, 2022 WL 18278377 (C.D. Cal. Dec. 28, 2022) ................... 22

*O'Handley v. Weber*,
    62 F.4th 1145 (9th Cir. 2023) .......................................................................... 12

*Pasadena Republican Club v. Western Justice Center*,
   985 F.3d 1161 (9th Cir.), *cert. denied*, 142 S. Ct. 337 (2021) ........................... 12

*Prager University v. Google LLC*,
   951 F.3d 991 (9th Cir. 2020) ...................................................................... 12, 13

*Rawson v. Recovery Innovations, Inc.*,
   975 F.3d 742 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 69 (2021) ..................... 13

*Reichle v. Howards*,
   566 U.S. 658 (2012) ......................................................................................... 11

*Salazar v. County of Orange*,
   564 F. App'x 322 (9th Cir. 2014).........................................................................9

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ...............................................................................7

*Schilling v. Rogers*,
   363 U.S. 666 (1960) ......................................................................................... 22

*Semerjyan v. SEIU Loc. 2015*,
   489 F. Supp. 3d 1048 (C.D. Cal. 2020) ...............................................................5

*Smith v. BP Lubricants USA, Inc.*,
   64 Cal. App. 5th 138 (2021)............................................................................. 19

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................................................6

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998) ..............................................................................................9

*Tsao v. Desert Palace, Inc.*,
   698 F.3d 1128 (9th Cir. 2012)......................................................................... 12

*United States. v. Mississippi*,
   380 U.S. 128 (1965) ......................................................................................... 16

*Vogel v. Sym Properties, LLC*,
   No. CV 15-09855, 2017 WL 4586348 (C.D. Cal. Aug. 4, 2017) ........................6

*Warth v. Seldin*,
   422 U.S. 490 (1975) ............................................................................................7

*Wash. Environmental Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) ........................................................................... 8

*White v. Square, Inc.*,
  7 Cal. 5th 1019 (2019) .................................................................................... 20

*Zhou v. Breed*,
  No. 21-15554, 2022 WL 135815 (9th Cir. Jan. 14, 2022) .............................. 15

**Statutes**

42 U.S.C. § 1983 ................................................................................... *passim*

47 U.S.C. § 230(c)(1) ................................................................................ 18, 19

47 U.S.C. § 230(f)(2) ...................................................................................... 18

52 U.S.C. § 10101(a) ................................................................................ 16, 17

52 U.S.C. § 10101(a)(1) ............................................................................ 16, 17

52 U.S.C. § 10101(a)(2)(A) ............................................................................ 17

52 U.S.C. § 10101(b) ...................................................................................... 18

Cal. Civ. Code § 51(b) .................................................................................... 21

Cal. Civ. Code § 51 ........................................................................................ 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs' 136-page Complaint conjures up a vast, "Orwellian" (their words) conspiracy between nearly every branch of the federal government and a dozen defendants that supposedly violated the "civil rights" and "right to vote" of 72 million Americans. Yet nowhere in Plaintiffs' 405-paragraph airing of grievances is there even a kernel of a claim against Defendant Apple Inc. ("Apple"). Even worse, Plaintiffs' Complaint reveals a complete misunderstanding (or outright contortion) of the First Amendment and this nation's bedrock anti-discrimination laws.

To start, under Article III of the U.S. Constitution, Plaintiffs' Complaint does not present a factual predicate to have standing for this Court to even consider the claims. There are no factual allegations that Apple censored so much as a single word of any Plaintiffs' (or anyone else's) speech. Nor does the Complaint allege any instance of Apple unlawfully discriminating against anyone, let alone a protected class of speakers, voters, or consumers. And there are no allegations causally connecting any alleged wrongful conduct by Apple to any cognizable injury suffered by any Plaintiff. Because Plaintiffs fail to demonstrate Article III standing, every cause of action against Apple should be dismissed with prejudice.

The Court should also dismiss Plaintiffs' Complaint against Apple with prejudice because it does not state legally recognized claims, and because the facts alleged foreclose Plaintiffs' federal and state statutory claims.

*First*, Plaintiffs' Section 1983 claim fails because that statute applies only to lawsuits based on conduct under color of *state or local* law, and the Complaint alleges conduct under the direction of the *federal* government.

*Second*, the Complaint comes nowhere close to alleging facts sufficient to transform Apple from a private company into a federal government actor, which forecloses Plaintiffs' First Amendment claim.

***Third***, the Civil Rights Act claim fails because that statute governs state and local (not federal) conduct, and because the Civil Rights Act protects against alleged voter discrimination based on protected classes, like race, which Plaintiffs do not allege against Apple.

***Fourth***, Section 230 of the Communications Decency Act bars each of Plaintiffs' claims because the Complaint admittedly seeks to hold Apple liable for its supposed publication decisions concerning third-party content.

***Fifth***, the Court should dismiss Plaintiffs' Unruh Civil Rights Act claim because it fails to establish statutory standing, and because Plaintiffs concede that they are not members of any recognized protected class under that California statute.

***Lastly***, Plaintiffs' remaining claims for injunctive and declaratory relief fail because all of Plaintiffs' underlying causes of action fail as a matter of law.

For these reasons, the Court should dismiss Plaintiffs' claims against Apple with prejudice.

## **BACKGROUND**

Plaintiffs Richard Jackson, Julie Briggs, and Gregg Buchwalter sued Apple and eleven other defendants on behalf of a putative class of "more than 72 million United States citizens" who voted for former President Donald J. Trump in 2020 and are the supposed "political enemies" of the Democratic Party. (Compl. ¶ 85.)

### A.     Plaintiffs Allege That Federal Officials Orchestrated A "Censorship Scheme."

Plaintiffs allege Apple is part of a "vast Censorship Scheme" that involved the Administration of President Joe Biden "collud[ing]" with or "coerc[ing]" the Defendants[2] to "censor and suppress lawfully protected speech and communications"

---

[2] "Defendants" include Twitter, Inc., Google, LLC, Alphabet, Inc., Meta Platforms, Inc., Facebook, Inc., Instagram, Inc., YouTube, Inc., Apple Inc., the American Federation of Teachers, National Education Association, National School Board Association, and the Democratic National Committee.

by conservative speakers. (*Id.* ¶ 4; *see also* ¶¶ 3, 5, 9.) As part of this supposed conspiracy, federal officials have purportedly threatened adverse action against companies that do not join the "Censorship Scheme." (*Id.* ¶¶ 183-199.) Plaintiffs describe the scheme as the federal government and the Democratic National Committee ("DNC") "collud[ing] with and/or coerc[ing] social media companies, internet retailers and distributors, public school teacher unions and school board associations . . . to suppress and censor disfavored speakers, viewpoints[,] and content on social media platforms.'" (*Id.* ¶ 3.)

Despite alleging that they and the purported class *already* voted for Donald Trump, (*see id.* ¶ 85), Plaintiffs somehow contend Defendants harmed them because they "lost their right to vote without outside interference in the 2020 and 2022 national elections." (*Id.* ¶ 37.) Plaintiffs claim they "have also been irreparably harmed" by Defendants' "censorship and suppression of 'disfavored' speech," but they never explain the nature of that irreparable harm or Apple's role in it. (*Id.*)

### B.   Plaintiffs Make No Specific Allegations Against Apple.

The Complaint loosely alleges that Apple is "acting under color of law" and "engaging in the Censorship Scheme on behalf of the Biden Administration." (*Id.* ¶ 67.) But no allegations describe specific conduct by Apple. At most, the Complaint occasionally lumps Apple with other Defendants—but even those allegations are vague and conclusory:

- The "internet retailer defendants" allegedly "refused and continue to refuse to distribute books, articles, movies, audios and other communications written or published by conservative or 'disfavored' speakers under the direction of the federal government and the Biden Administration's Orwellian guise of 'misinformation.'" (*Id.* ¶ 5.) The Complaint does not allege a single example of Apple "refusing" to distribute any content or acting "under the direction" of the federal government.

- Federal officials allegedly "actively partnered" with "distributors of content like Amazon and Apple[] to censor speech critical of government policy," (*id.* ¶ 30), but Plaintiffs never explain how this alleged coordination occurred.

- Defendants allegedly collectively oversaw the Censorship Scheme, in part, by "falsely labeling content 'dis-information,' 'mis-information,' and 'mal-information.'" (*Id.* ¶ 7). Again, the Complaint never articulates Apple's involvement in any scheme.

- Federal officials allegedly had "secret weekly meetings with" some named Defendants and the "internet retailer giants named as defendants" regarding "misinformation," (*id.* ¶ 12), which somehow equates to censorship of conservative speakers. (*See id.* ¶ 7.) Yet the Complaint says absolutely nothing about Apple's involvement, let alone conduct that violates any law.

## C. Plaintiffs' Unsupported Claims And Requested Relief.

Plaintiffs' causes of action against Apple are: (1) a Section 1983 claim, alleging Defendants violated Plaintiffs' First Amendment rights by "censoring and suppressing lawfully protected speech of Plaintiffs, the Putative Class[,] and other Americans," (*see id.* ¶ 382); (2) a Civil Rights Act of 1964 claim, alleging that Defendants "interfered with Plaintiffs' and the Putative Class's voting rights" by "diluting the value of their vote [sic] in the 2020 and 2022 elections," (*see id.* ¶ 388); (3) a California Unruh Act claim, alleging that Defendants "deprived" Plaintiffs of Defendants' "goods and services by censoring and suppressing what they were allowed to publish, sell, see, read[,] or hear on Defendants' respective platforms," (*see id.* ¶ 397); (4) an injunctive relief claim, (*see id.* ¶ 401 (p. 133)); and (5) a declaratory relief claim under California and federal law, (*see id.* ¶ 404).

# I.    RULE 12 DISMISSAL STANDARDS.

A "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To survive a Rule 12(b)(1) motion to dismiss, "[a] plaintiff bears the burden of establishing standing." *Dozier v. Walmart Inc.*, No. CV2005286, 2021 WL 1534973, at *3 (C.D. Cal. Mar. 5, 2021) (Birotte, J.).

Additionally, courts should dismiss claims as a matter of law under Rule 12(b)(6) when a complaint lacks either "a cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." *Semerjyan v. SEIU Loc. 2015*, 489 F. Supp. 3d 1048, 1054 (C.D. Cal. 2020) (Birotte, J.) (citation omitted). Plaintiffs must plead factual allegations that "plausibly (not merely conceivably) entitle plaintiff to relief." *Maya*, 658 F.3d at 1067-68. A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring more than a "sheer possibility" or "formulaic recitation" of the claim elements). Courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quotation marks omitted).

# II.    PLAINTIFFS DO NOT HAVE ARTICLE III STANDING.

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983). Specifically, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) . . . not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180-81 (2000). "[B]lanket statements unanchored to credible evidence" cannot establish

standing. *See Vogel v. Sym Props., LLC*, No. CV 15-09855, 2017 WL 4586348, at *8 (C.D. Cal. Aug. 4, 2017) (Birotte, J.). As discussed below, Plaintiffs have not satisfied their burden under Article III.

### A.    Plaintiffs Have Not Alleged That They Suffered An Injury-In-Fact.

The Complaint does not allege that Plaintiffs suffered any injury, much less a concrete and particularized injury. A "concrete" injury must be "de facto"—it must actually exist. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (quotation marks omitted). Here, Plaintiffs allege nothing more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action," not concrete and particularized harm. *Iqbal*, 556 U.S. at 678. The Court should not accept such recitations as true on a motion to dismiss. *See id.* at 678-79 (setting forth minimum federal pleading standards).

Aside from Plaintiffs' vague assertions about censorship and voter interference, there are no specific allegations Apple *ever* censored any Plaintiff's speech or abridged their right to vote (or that Apple censored *anyone's* speech or abridged *anyone's* right to vote). The Complaint merely repeats the same boilerplate injury allegation that each Plaintiff has been "been unconstitutionally burdened by Defendants' continuing unlawful censorship and suppression of conservative or 'disfavored' viewpoints and what [they] choose[] to read, see, say or hear." (*See* Compl. ¶¶ 57-59.) While Plaintiffs make conclusory allegations that "[a]ll the members of the class have sustained economic damage arising out of the common course of conduct alleged," their Complaint includes no facts to support that assertion. (*See id.* ¶ 92.) The Complaint also repeatedly asserts that the Defendants' activities "cause[d] Plaintiffs irreparable harm" but never articulates what harm Plaintiffs experienced. (*See, e.g.*, *id.* ¶¶ 338, 404; *see also id.* ¶¶ 384, 386, 389.) Such conclusory allegations cannot satisfy the injury-in-fact requirement. *See Flores v. Adir Int'l, LLC*, No. CV 15–00076, 2015 WL 12806476, at *2 (C.D. Cal. May 8, 2015) (Birotte, J.) (holding that where "[p]laintiff fail[ed] to allege any indirect or

contextual facts" to support allegations against defendant, the allegations were "little more than speculation").

The Complaint also alleges that because of Defendants' supposed "Censorship Scheme, Plaintiffs and the Putative Class have . . . lost their right to vote without outside interference in the 2020 and 2022 national elections," because the "Censorship Scheme" diluted their votes. (Compl. ¶ 37.) Such allegations cannot constitute an injury-in-fact because Plaintiffs concede that they are "registered Republicans . . . *who voted for someone other than President Biden*." (*Id.* ¶ 85 (emphasis added).) There is no possible injury alleged. Rather than allege any injury suffered by the named Plaintiffs, the Complaint merely alludes to unidentified restrictions on the speech of third parties to support Plaintiffs' supposed First Amendment claim. (*See id.* ¶¶ 96-100, 153, 159.) To satisfy Article III standing, however, Plaintiffs "cannot rest [their] claim to relief on the legal rights or interests of third parties"—they must have their own concrete and particularized injury. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560 (9th Cir. 2010) ("When a named plaintiff has no cognizable claim for relief, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail." (internal quotation marks omitted)). "[A] plaintiff may only bring a claim on his own behalf, and may not raise claims based on the rights of another party." *MAO-MSO Recovery II, LLC v. Mercury Gen.*, No. CV 17-02525, 2018 WL 3357493, at *3 (C.D. Cal. May 23, 2018) (Birotte, J.) (citation omitted). Plaintiffs therefore fail to allege harm to themselves and cannot premise their claims on alleged harm to third parties.

### B.     Plaintiffs' Alleged Harm Is Neither Traceable To Apple Nor Redressable By The Court.

Even assuming Plaintiffs' ambiguous and conclusory claims of harm were legally sufficient (they are not), Plaintiffs' Complaint fails to allege that any harm was caused by Apple or is redressable by the Court. "[T]he fairly traceable and

redressability components for standing overlap and are two facets of a single causation requirement." *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022) (quoting *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013) (internal quotation marks omitted)), *cert. denied*, 143 S. Ct. 525 (2022). Traceability "examines the connection between the alleged misconduct and injury, whereas redressability analyzes the connection between the alleged injury and requested judicial relief." *Bellon*, 732 F.3d at 1146.

To establish traceability, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). Thus, the Complaint must *causally connect* Plaintiffs' alleged harms to some alleged conduct by Apple.

As discussed above, the Complaint has no factual allegation that Apple's conduct caused an injury to any named Plaintiff. Plaintiffs simply contend that the DNC and the Biden Administration "weaponized" federal agencies "to coerce and direct the private-party defendants" to "censor and suppress lawfully protected speech and communications of disfavored . . . speakers, viewpoints, and content on social media platforms." (Compl. ¶ 4.) But the Complaint does not explain how Apple: (1) ever participated in such a scheme, (2) was coerced by the federal government, or (3) engaged in conduct that caused any named Plaintiff harm. Instead, the Complaint vaguely alleges that "internet retailer defendants," including Apple, refused to distribute unspecified books, articles, movies, and other media by unspecified conservatives. (*Id.* ¶ 5.) Plaintiffs also generally assert that Defendants censored speech (without identifying the speech or how it was censored). (*Id.* ¶ 7.) But Plaintiffs never connect Apple's purported censorship or refusal to distribute media to any alleged harm to any named Plaintiff. This deficient showing does not satisfy Article III standing.

And Plaintiffs cannot satisfy Article III standing (or Rule 8) by lumping the

conduct of all Defendants together, forcing each Defendant and the Court to untangle their web of allegations to guess which allegation applies to which Defendant. *See, e.g.*, *McCrudden v. DeMarco*, No. 22-cv-00407, 2022 WL 2784764, at *4 (C.D. Cal. June 2, 2022) (noting that "[a] plaintiff who sues multiple defendants must allege the basis of his claim against each defendant." (quotation marks omitted) (alternation in original)); *Salazar v. Cnty. of Orange*, 564 F. App'x 322, 322 (9th Cir. 2014) (affirming the district court's decision that "a fatal flaw" with a plaintiff's complaint was that they "impermissibly lump[ed] together claims and defendants" (internal quotation marks omitted)). Here, Plaintiffs' Complaint alleging that "everyone did everything" should be dismissed. *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).

Besides not alleging that Apple participated in any censorship scheme, the named Plaintiffs fail to allege that they used any Apple products or services, such that any hypothetical harm from the "Censorship Scheme" is fairly traceable to Apple. *See Mayall v. USA Water Polo, Inc.*, 174 F. Supp. 3d 1220, 1225 (C.D. Cal. 2016) (finding lack of causation where "Plaintiff hasn't alleged that [Plaintiff] is currently playing on a team governed by [Defendant's] rules and policies"). Thus, Plaintiffs fail to meet the traceability requirement.

Similarly, Plaintiffs do not meet the redressability requirement because a ruling against Apple would not remedy the alleged 2020 and 2022 "voter interference," or the generalized allegations of harm from a purported "Censorship Scheme." There is no way to redress the unidentified harms with damages, an injunction, a declaration, or any other conceivable relief because Plaintiffs admit they successfully voted for their desired candidates. *Compare* (Compl. ¶ 85 (referencing a proposed class of "more than 72 million United States citizens *who voted* for former President Donald J. Trump" (emphasis added)) *with Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability

requirement."). And, as explained above, Plaintiffs never causally connect their alleged harm to any conduct by *Apple*, and thus no decision by the Court against Apple could redress any alleged harm.

The Court should therefore dismiss Plaintiffs' Complaint for lack of Article III standing.

## III. PLAINTIFFS' SECTION 1983 CLAIM FAILS BECAUSE THEY DO NOT ALLEGE THAT APPLE ACTED IN CONCERT WITH STATE OR LOCAL OFFICIALS, AND APPLE IS NOT A STATE ACTOR.

Even if Plaintiffs could establish standing, their Section 1983 claim still fails for three independent reasons. *First*, Section 1983 does not apply to acts by *federal* officials or private parties alleged to have acted in concert with *federal* officials. *Second*, the Supreme Court has expressly rejected common law damages claims based on federal officials or private parties' alleged infringement of a plaintiff's First Amendment rights, which Plaintiffs cannot cure through an amendment. *Third*, Apple is a private entity that is not subject to claims under the First Amendment.

### A. Plaintiffs' Claim That Apple Acted In Concert With Federal Officials Is Not Actionable Under Section 1983.

To bring a Section 1983 claim, a plaintiff must show that the defendant acted "under color of any statute, ordinance, regulation, custom, or usage, of any *State or Territory*." 42 U.S.C. § 1983 (emphasis added). Section 1983 is not a standalone cause of action but "a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by *state and local officials*." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (emphasis added). It applies only where a defendant engaged in a "[m]isuse of *power, possessed by virtue of state law* and *made possible only because the wrongdoer is clothed with the authority of state law*.'" *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995) (quotation marks omitted) (emphasis added). Thus, Section 1983's "under color of state law" requirement "provides no

cause of action against federal agents acting under color of federal law." *Magassa v. Mayorkas*, 52 F.4th 1156, 1163 (9th Cir. 2022) (quoting *Billings*, 57 F.3d at 801).

Here, the Complaint does not allege conduct by state or local officials or acts committed by private parties under state law or local authority. Rather, Plaintiffs allege that President Biden and *federal* officials have "weaponized" federal agencies to "censor and suppress lawfully protected speech" (Compl. ¶ 4.) Because "federal agencies and officers are facially exempt from section 1983 liability," Plaintiffs' Section 1983 claim premised on the acts of federal officials must be dismissed with prejudice. *See Hindes v. FDIC*, 137 F.3d 148, 158 (3d Cir. 1998) ("[F]ederal agencies are not 'persons' subject to section 1983.").

### B. Because Plaintiffs Cannot Sue The Federal Government Or Private Parties For Damages For First Amendment Violations, Any Amendment To Plaintiffs' Section 1983 Claim Would Be Futile.

Plaintiffs cannot salvage their First Amendment claim against Apple. Even if Plaintiffs were given the opportunity to replead their First Amendment claim, the law does not recognize a general "cause of action directly under the United States Constitution." *Azul-Pacifico, Inc. v. City of L.A.*, 973 F.2d 704, 705 (9th Cir. 1992). And the Supreme Court has recognized only a narrow set of circumstances where a plaintiff can sue a federal government official for violating their constitutional rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 391-92 (1971).

Plaintiffs cannot state a claim against Apple under *Bivens* for two reasons. *First*, "there is no *Bivens* action for First Amendment" claims against the federal government. *See Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022); *see also Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). *Second*, the Supreme Court expressly rejected extending *Bivens*' "limited holding to confer a right of action for damages against private entities acting under color of federal law." *Corr. Servs. Corp. v. Malesko*, 534 U.S.

61, 66 (2001). Because there is no path to replead their First Amendment damages claim against Apple under *Bivens*, the Court should dismiss Plaintiffs' Section 1983 claim with prejudice.

### C.  Because Apple Is A Private Entity, And Not A State Actor, Plaintiffs Also Cannot Sue Apple For Injunctive Relief.

In addition to being barred from recovering damages against Apple for any alleged First Amendment violations, Plaintiffs are also prohibited from suing Apple for injunctive relief. The "Free Speech Clause prohibits only *governmental abridgment of speech*." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (emphasis added). At bottom, "the inquiry is always whether the defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir.) (quotation marks omitted), *cert. denied*, 142 S. Ct. 337 (2021).

The Ninth Circuit recently held that a social media company's content-moderation decisions were *not* state action because the company "did not exercise a state-conferred right or enforce a state-imposed rule." *O'Handley v. Weber*, 62 F.4th 1145, 1160 (9th Cir. 2023). And courts may consider a private entity a state actor only if the entity meets one of four narrow tests: "(1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (quotation marks omitted). None of the exceptions apply here.

### 1.  Apple cannot meet the "public function" test because it does not perform a traditionally exclusive government function.

To satisfy the public function test, "the relevant function" performed by the private-party defendant "must have been 'traditionally the exclusive prerogative of the state.'" *Prager Univ. v. Google LLC*, 951 F.3d 991, 998 (9th Cir. 2020) (citation and alteration omitted). In *Prager*, the Ninth Circuit affirmed the district court's

dismissal of a plaintiff's bid to convert YouTube's content curation into a First Amendment violation because "[d]espite YouTube's ubiquity and its role as a public-facing platform, it remains a private forum, not a public forum subject to judicial scrutiny under the First Amendment." *Id.* at 995. Digital services platforms are not part of "the lean list of the 'very few' recognized public functions [that] includes 'running elections,' 'operating a company town,' and not much else." *Id.* at 998 (quoting *Halleck*, 139 S. Ct. at 1929). As a digital services platform, Apple cannot meet the "public function" test.

### 2. Apple's alleged conduct cannot meet the joint action or governmental nexus test because it did not willfully or substantially cooperate with federal officials.

The joint action and governmental nexus tests "may be satisfied where the court finds a sufficiently close nexus between the state and the private actor so that the action of the latter may be fairly treated as that of the State itself," or "the State has so far insinuated into a position of interdependence with the private party that it was a joint participant in the enterprise." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020) (internal quotation marks and alteration omitted), *cert. denied*, 142 S. Ct. 69 (2021). To meet this high bar, Plaintiffs must allege that: (1) Apple is a "*willful* participant in joint action with the state or its agents," *see George v. Pac.-CSC Work Furlough*, 91 F.3d 1227, 1231 (9th Cir. 1996) (emphasis added) (quotation marks and alteration omitted); (2) there was "a substantial degree of cooperation" between Apple and federal officials, *see Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002); and (3) Apple "share[d] with the public entity the goal of violating a plaintiff's constitutional rights," *see id.*

Here, Plaintiffs allege no facts showing that Apple participated in the alleged "Censorship Scheme," much less that Apple willfully or substantially cooperated with the federal government to allegedly violate Plaintiffs' First Amendment rights. Rather, Plaintiffs allege that the "private-party [d]efendants" have "conspired and

colluded to suppress" their First Amendment right "to freedom of expression on social-media platforms, and to be exposed to free expression on such platforms." (Compl. ¶ 169.) Other than this conclusory allegation, Plaintiffs fail to state any factual allegations that Apple "conspired" or "colluded" with anyone. Instead, Plaintiffs repeatedly lump Apple in with other Defendants' alleged conduct to support their claims. These blanket conclusions and lumping together groups of Defendants do not plausibly allege *Apple's* willful conduct or substantial cooperation with federal officials to violate Plaintiffs' rights. *See Destfino*, 630 F.3d at 958. Thus, Plaintiffs fail to satisfy both the joint action and governmental nexus tests. *See DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000) ("[A] bare allegation of such joint action will not overcome a motion to dismiss").

### 3. Apple cannot meet the "state compulsion" test because federal officials did not dictate that Apple censor any Plaintiff's speech.

Courts can find state compulsion only "when the government *compels* the private entity *to take a particular action*." *Halleck*, 139 S. Ct. at 1928 (citation omitted and emphasis added). Merely "being regulated by the State does not make one a state actor." *Id.* at 1932. To meet their burden, Plaintiffs must show that the federal government "exercised coercive power" or "provided such significant encouragement" that Apple's actions are tantamount to federal government conduct. *See Children's Health Def. v. Facebook Inc.*, 546 F. Supp. 3d 909, 932 (N.D. Cal. 2021) (quotation marks omitted). Further, the federal government must have "*dictate[d] the decision*" that Apple *censor each Plaintiff's speech* for state compulsion to exist. *See Blum v. Yaretsky*, 457 U.S. 991, 1010 (1982) (emphasis added). The Complaint has no such allegations.

Plaintiffs cannot convert alleged "censorship" into state action solely because some federal officials have made public statements about potential future regulation or investigation of the tech industry. Plaintiffs try to morph statements from President

Biden (*see* Compl. ¶ 229), Congressmembers (*see id.* ¶¶ 185-186, 275-280), and federal government appointees (*see id.* ¶¶ 201-213, 215-226, 237-249, 282-289) about potential regulation into a claim that "[t]he federal government and Biden [a]dministration have in fact coerced or induced" the "private party defendants" into "censoring expression of a lawful viewpoint pursuant to the Censorship Scheme" (Compl. ¶ 41). These alleged requests to stem the flow of misinformation are not state compulsion. *See Zhou v. Breed*, No. 21-15554, 2022 WL 135815, at *1 (9th Cir. Jan. 14, 2022) ("The mere fact that [Mayor] Breed or other public officials criticized a billboard or called for its removal . . . does not make that billboard's subsequent removal by a private party state action."). Even if Plaintiffs had plausibly pleaded that those statements coerced Apple to take any action, Plaintiffs have failed to *specifically allege* that the vague statements from federal officials coerced any actions *as to Plaintiffs*. *See Children's Health Def.*, 546 F. Supp. 3d at 944 (rejecting a government coercion argument because a plaintiff made "no allegations that any public official pressured [the private entity] to take any specific actions regarding [plaintiff]'s page").

Thus, the Court should dismiss Plaintiffs' Section 1983 claim with prejudice.

## IV.  PLAINTIFFS' CIVIL RIGHTS ACT CLAIM FAILS BECAUSE THEY DO NOT ALLEGE THAT APPLE ACTED UNDER THE COLOR OF STATE LAW, DISCRIMINATED AGAINST ANYONE BASED ON RACE, OR VIOLATED THE CIVIL RIGHTS ACT.

The Court should dismiss Plaintiffs' Civil Rights Act of 1964 claim based on Defendants allegedly "diluting the value of [Plaintiffs'] vote in the 2020 and 2022 elections," (*see* Compl. ¶ 388), because it is not based on any alleged state action, is not based on any alleged racial discrimination, and there is no cause of action for generalized "election interference" under the Act.[3] As a result, Plaintiffs' Civil Rights

---

[3] Moreover, the only basis upon which a plaintiff can assert voter-dilution claims under the Voting Rights Act of 1965 (which Plaintiffs never alleged) is also "on account of race or color or . . . language minority." *Bartlett v. Strickland*, 556 U.S. 1,

Act cause of action for the "more than 72 million United States citizens who voted for former President Donald J. Trump" should be dismissed with prejudice for three independent reasons. (*See* Compl. ¶¶ 85, 388.) *First*, Plaintiffs do not allege that Apple acted under "color of law." *See* 52 U.S.C. § 10101(a). *Second*, Plaintiffs do not allege disparate treatment based on "race, color, or previous condition of servitude." *id.* § 10101(a)(1). *Third*, Plaintiffs do not allege that Apple engaged in the three acts banned by the Civil Rights Act. *See id.* § 10101(a)(2).

### A.   Plaintiffs' Civil Rights Act Claim Fails Because They Have Not Alleged That Apple Acted Under State or Local Authority.

The voting rights provisions of the Civil Rights Act apply only to those acting under color of state and local law. 52 U.S.C. § 10101(a)(1). When Congress passed the Act, it sought to "protect[] against any discrimination by a State, its laws, its customs, or its officials in any way" under the Fifteenth Amendment. *United States. v. Mississippi*, 380 U.S. 128, 138 (1965). To invoke the protections of the Civil Rights Act, "[t]he conduct complained of must [be] done by *some person acting under color of state or local law*." *Christman v. Pennsylvania*, 275 F. Supp. 434, 435 (W.D. Pa. 1967) (emphasis added). Because Plaintiffs allege that the federal government directed the "Censorship Scheme," not any state or local government, their Civil Rights Act claim fails as a matter of law. The Court should therefore dismiss the claim with prejudice.

### B.   Plaintiffs Do Not Allege Race-Based Discrimination.

The Civil Rights Act prohibits state or local efforts to prevent otherwise eligible citizens from voting based on "race, color, or previous condition of servitude." 52 U.S.C. § 10101(a)(1). Congress designed these provisions to protect citizens from discrimination based on race. *See Mississippi*, 380 U.S. at 138. Plaintiffs do not allege that Apple, or any state actor, prevented them from voting

---

11 (2009) (alteration omitted) (detailing the elements for stating vote-dilution claim under Section 2 of the Voting Rights Act).

based on their "race, color, or previous condition of servitude." 52 U.S.C. § 10101(a)(1). Indeed, Plaintiffs allege they were among the "more than 72 million United States citizens *who voted* for former President Donald J. Trump" (*see* Compl. ¶ 85 (emphasis added)) but believe their already-cast votes were interfered with based on their political viewpoints, not race. In so doing, Plaintiffs seek to expand the Civil Rights Act into new terrain, protecting voters from alleged political viewpoint-based discrimination divorced from "race, color, or previous condition of servitude." The statute was not meant to afford Plaintiffs any such protections nor permit a suit against a private party absent allegations that that party acted under color of state or local law to take actions prohibited under the Act. Thus, the Court should dismiss this claim with prejudice.

### C. Plaintiffs Do Not Allege That Apple Engaged In Conduct Prohibited By The Civil Rights Act.

Even if Plaintiffs' claim were not already barred their claim would still fail as the Complaint does not mention the three classes of voting-related conduct prohibited by the Civil Rights Act. There is no generalized voting interference claim under the Civil Rights Act. *See* 52 U.S.C. § 10101(a). Instead, the Act specifically prohibits state or local officials "acting under color of law" from: (1) applying a different "standard, practice, or procedure" to qualify as a voter based on the citizen's race, 52 U.S.C. § 10101(a)(2)(A); (2) "deny[ing] the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting," *id.* § 10101(a)(2)(B); or (3) "employ[ing] any literacy test as a qualification for voting in any election," *id.* § 10101(a)(2)(C). Plaintiffs' Complaint is devoid of facts relating to these three classes of conduct, and the Court should therefore dismiss their Civil Rights Act claim with prejudice.[4]

---

[4] Any amendment to Plaintiffs' claim to sue under the Voting Rights Act would be futile because, as described above, Plaintiffs do not make any allegation of a race-

## V.     SECTION 230 OF THE COMMUNICATIONS DECENCY ACT BARS EACH OF PLAINTIFFS' CLAIMS BECAUSE THEY SEEK TO HOLD APPLE LIABLE AS A PUBLISHER OF THIRD-PARTY CONTENT.

Even assuming Plaintiffs pleaded any colorable cause of action, Section 230 of the Communications Decency Act bars their claims. Section 230(c)(1) precludes liability for "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat . . . as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo! Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009); *see* 47 U.S.C. § 230(c)(1). Each prong is easily satisfied here.

The Complaint defines Apple as an "internet retailer platform[]" (Compl. ¶ 68), and an "internet retailer[] and distributor[] of content," (*id.* ¶ 30), demonstrating that Apple is a provider of "an interactive computer service" under the statute. 47 U.S.C. § 230(f)(2) (defining an interactive computer service as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."); *see also Diep v. Apple Inc.*, No. 21-cv-10063-PJH, 2022 WL 4021776, at *5 (N.D. Cal. Sept. 2, 2022) ("Apple qualifies as an interactive computer service provider within the meaning of § 230.").

Plaintiffs seek to hold Apple liable for supposed decisions about "whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. Plaintiffs' Complaint tries to treat Apple as the publisher of third-party content. (*See, e.g.*, Compl. ¶ 3.) Plaintiffs concede the basis of their claims is suppression of third-party speech, not speech by Apple. (*See id.* ¶ 78 ("Defendants perpetrated and continue to perpetrate their Censorship Scheme . . . [by] denying authors and publishers the right to distribute and publish and sell their publications on the internet

based abridgement of their right to vote. Plaintiffs' failure to allege that Apple acted under state or local authority would also be fatal to a Voting Rights Act claim. *See* 52 U.S.C. § 10101(b). Nor do Plaintiffs allege that Apple acted to "intimidate, threaten, [or] coerce" them to interfere with their right to vote. *Id.*

retailer platforms."), *id.* ¶ 5 (defining Apple as one of the "internet retailer defendants").) Section 230 bars this exact claim.

Because Apple is immune from Plaintiffs' claims under Section 230, the Court should dismiss Plaintiffs' causes of action with prejudice. *See Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016) ("In general, [Section 230(c)(1)] protects websites from liability for material posted . . . by someone else."); *Fair Hous. Council of San Fernando Valley v. Roommates.Com LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under Section 230.").

## VI.   PLAINTIFFS DO NOT STATE A CLAIM UNDER CALIFORNIA'S UNRUH CIVIL RIGHTS ACT.

If the Court exercises supplemental jurisdiction over Plaintiffs' Unruh Civil Rights Act (the "Unruh Act") claim (and it should not),[5] it should dismiss the claim because (1) Plaintiffs do not have statutory standing to bring an Unruh Act claim, (2) Plaintiffs have not alleged that Apple intentionally discriminated against them, and (3) the Unruh Act does not apply to alleged political viewpoint discrimination.

### A.   Plaintiffs Lack Standing To Bring An Unruh Act Claim.

The Unruh Act is "confined to discriminations against recipients of the 'business establishment's . . . goods, services or facilities.'" *Smith v. BP Lubricants USA, Inc.*, 64 Cal. App. 5th 138, 149 (2021) (quotation marks omitted) (ellipsis in original). To have standing under the Act, a plaintiff "must actually suffer the discriminatory conduct." *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 175 (2007) (quotation marks omitted). For online businesses, plaintiffs must allege that they "visited the business's website, encountered discriminatory terms, and intended

---

[5] Because there are no viable federal claims, the Court should dismiss the Unruh Act claim. *See Langer v. Stern*, No. CV 19-02151, 2019 WL 7899945, at *4 (C.D. Cal. Nov. 25, 2019) (Birotte, J.) (declining to exercise supplemental jurisdiction over a plaintiff's Unruh Act claim after dismissing the federal claims).

to make use of the business's services." *White v. Square, Inc.*, 7 Cal. 5th 1019, 1032 (2019). Plaintiffs' Unruh Act claim does not establish standing for two reasons.

*First*, Plaintiffs never allege that they used any Apple products or services. The California Supreme Court has held that "there is no indication that the Legislature intended to broaden the scope of section 51 to include discriminations other than those made by a 'business establishment' in the course of furnishing goods, services or facilities to its clients, patrons or customers*." Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 500 (1970) (citation omitted). Here, Plaintiffs do not allege that they tried to access Apple's "goods, services, or facilities."

*Second*, Plaintiffs have failed to allege that Apple's alleged discriminatory conduct deterred them from using any Apple products or services. Rather, Plaintiffs merely make conclusory allegations about restrictions of unidentified third-party speech, which cannot show that Apple deterred the named Plaintiffs from buying goods or services. (*See* Compl. ¶¶ 96-100, 153, 159.); *see also White*, Cal. 5th at 1027 (distinguishing between "merely hear[ing] or read[ing] about [an alleged] discriminatory policy" and "specific allegations detailing his repeated visits" and "examination of its terms and conditions of service.").

Because Plaintiffs have failed to make these threshold allegations, they lack standing to bring an Unruh Act claim.

## B.    Plaintiffs Do Not Allege Intentional Discrimination.

Plaintiffs allege no "intentional discrimination" within the meaning of the Unruh Act. *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014). The bar for pleading intentional discrimination is high: Plaintiffs "may not 'rel[y] on the effects of a facially neutral policy on a particular group . . . to infer solely from such effects a discriminatory intent.'" *Martinez v. Cot'n Wash, Inc.*, 81 Cal. App. 5th 1026, 1036 (2022) (citations omitted) (affirming dismissal of a complaint based on the Unruh Act). Instead, Plaintiffs must plead "allegations supporting "'willful, affirmative misconduct'" with the specific intent

'to accomplish discrimination on the basis of [a protected trait].'" *Id.* (citation omitted).

Here, Plaintiffs' bare allegations of unidentified parties having limited access to unidentified content on unspecified internet platforms cannot allege the willful, affirmative misconduct required to show intentional discrimination. Plaintiffs do not plead specific allegations of Apple's intent to discriminate, and instead merely lump Defendants together, alleging they collectively waged a campaign to deny "equal access to their internet platforms . . . to express opposing political views." (Compl. ¶ 393.) This does not meet the high bar for intentional discrimination under the Unruh Act, and the Court should dismiss the claim with prejudice.

### C.    Political Viewpoint Is Not A Protected Class.

Even if Plaintiffs had alleged intentional discrimination, no court has recognized political viewpoint as a protected class under the Unruh Act. The Legislature limited the Unruh Act to discrimination based on "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status." Cal. Civ. Code § 51(b). Since the passage of the Act, "[t]he Unruh Act has not been held to protect persons based on their viewpoints," and has been held to "not protect speech." *Huber v. Biden*, No. 21-CV-06580, 2022 WL 827248, at *10 (N.D. Cal. Mar. 18, 2022), *aff'd*, No. 22-15443, 2022 WL 17818543 (9th Cir. Dec. 20, 2022). Further, no published California Court of Appeal case has extended the Unruh Act to political viewpoints, and Plaintiffs admit that political viewpoint "is not one of the enumerated grounds for relief under Civil Code section 51." (Compl. ¶ 396.) Thus, the Court should dismiss Plaintiffs' Unruh Act claim with prejudice.

## VII.   PLAINTIFFS HAVE NO INDEPENDENT INJUNCTIVE OR DECLARATORY RELIEF CLAIMS.

Because Plaintiffs have no surviving claims, their standalone injunction and declaratory relief claims also fail. (*See* Compl. ¶¶ 402, 404.) As discussed above,

each of Plaintiffs' federal and state law causes of action fail as a matter of law, and there is no independent cause of action under California law for injunctive relief. *See Neerman v. Cates*, No. CV 22-2751, 2022 WL 18278377, at *6 (C.D. Cal. Dec. 28, 2022) (dismissing a claim for injunctive and declaratory relief when plaintiffs' underlying claims failed). Plaintiffs' Declaratory Judgment Act claim similarly fails because that statute "presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Because Plaintiffs "lack[] a cause of action under a separate statute," the "Declaratory Judgment Act does not provide a cause of action." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022).

The Court therefore should dismiss Plaintiffs' injunctive and declaratory relief claims with prejudice.

## **CONCLUSION**

Plaintiffs' Complaint fails to establish Article III standing or any valid cause of action against Apple. Because of the multitude of incurable deficiencies in the Complaint, the Court should dismiss the claims with prejudice.

Dated:  April 11, 2023          JENNER & BLOCK LLP

By:  /s/ *David R. Singer*
     David R. Singer
     Precious S. Jacobs-Perry
     Gregory Washington

     Attorneys for Defendant
     Apple Inc.

APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 2:22-CV-09438 AB (MAA)

1

## CERTIFICATE OF COMPLIANCE

2        The undersigned, counsel of record for Defendant Apple Inc., certifies that this

3   brief contains 6,957 words, which complies with the word limit of L.R. 11-6.1 and

4   Standing Order 6(c).

5

6   Dated:  April 11, 2023        JENNER & BLOCK LLP

                    By:  /s/ *David R. Singer*

7                         David R. Singer

8                         Precious S. Jacobs-Perry

                      Gregory Washington

9

10                        Attorneys for Defendant

                      Apple Inc.