GLENN ROTHNER (CSB No. 67353)
E-mail:  grothner@rsglabor.com
ELI NADURIS-WEISSMAN (CSB No. 254788)
E-mail:  enaduris-weissman@rsglabor.com
ROTHNER, SEGALL & GREENSTONE
510 South Marengo Avenue
Pasadena, CA  91101
Telephone:   (626) 796-7555
Facsimile:   (626) 577-0124

Attorneys for Defendants
American Federation of Teachers and
National Education Association

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD JACKSON, et al., | CASE NO. 2:22-cv-09438 AB (MAA) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANTS AMERICAN FEDERATION OF TEACHERS AND NATIONAL EDUCATION ASSOCIATION** |
| v. | |
| TWITTER, INC., et al., | |
| Defendants. | |

Date:        June 9, 2023
Time:        10:00 a.m.
Courtroom:  7B
Judge:       Hon. André Birotte Jr.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... iii

I.     INTRODUCTION ................................................................................... 1

II.    BACKGROUND: THE ALLEGATIONS AGAINST THE
       UNIONS .................................................................................................. 2

III.   ARGUMENT ........................................................................................... 4

       A.    The Unions Join in Apple's Motion to Dismiss. ......................... 4

             1.    Plaintiffs do not have Article III standing. ...................... 4

             2.    Plaintiffs' section 1983 claim fails because they do not
                   allege that Apple acted in concert with state or local
                   officials, and Apple is not a state actor. ......................... 4

             3.    Plaintiffs' Civil Rights Act claim fails because they do
                   not allege that Apple acted under the color of state law,
                   discriminated against anyone based on race, or violated
                   the Civil Rights Act. ........................................................ 4

             4.    Plaintiffs do not state a claim under California's Unruh
                   Civil Rights Act. ............................................................... 4

             5.    Plaintiffs have no independent injunctive or declaratory
                   relief claims. ...................................................................... 5

       B.    The Complaint Fails to State a Claim Against the Unions:
             Under the *Noerr-Pennington* Doctrine, the Unions Are
             Immune from Liability for Their First Amendment-Protected
             Petitioning Activity. ..................................................................... 5

             1.    The Plaintiffs' Lawsuit Burdens the Unions'
                   Petitioning Activity. ......................................................... 7

             2.    The Unions' Alleged Activities Are of the Type the
                   *Noerr-Pennington* Doctrine Protects. .............................. 8

                   a.    Lobbying Government Officials and Agencies
                         For, or Against, Government Action. ..................... 8

                   b.    Gathering Public Support for a Political Cause. ..... 9

                   c.    Using Allegedly False Information. ...................... 10

                   d.    Making Financial Campaign Contributions. ........ 11

             3.    The "Sham" Exception to the *Noerr-Pennington*
                   Doctrine Does Not Apply Here. ...................................... 12

i

# TABLE OF CONTENTS
(continued)

Page

    C.    Plaintiffs Cannot Plead Around Petition Immunity; Leave to Amend Should Not Be Granted. ........................................................ 12

IV.    CONCLUSION ................................................................................. 13

CERTIFICATE OF WORD COUNT ...................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Agricultural Water v. Occidental Oil & Gas Corp.*,
   235 F. Supp. 3d 1132 (E.D. Cal. 2017) ........................................................ 8, 11

*In re Airport Car Rental Antitrust Litig.*,
   766 F.2d 1292 (9th Cir.1985) .......................................................................... 5

*Allied Tube & Conduit Corp. v. Indian Head*,
   486 U.S. 492 (1988) ...................................................................................... 6, 9

*Boone v. Redevelopment Agency of City of San Jose*,
   841 F.2d 886 (9th Cir. 1988) ..................................................................... 5, 6, 11

*Borges v. County of Mendocino*,
   506 F. Supp. 3d 989 (N.D. Cal. 2020) ............................................................ 10

*Eastern R. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961) ............................................................................... *passim*

*Empress LLC v. City and County of San Francisco*,
   419 F. 3d 1052 (9th Cir. 2005) ......................................................................... 9

*Evans Hotels, LLC v. Unite Here Local 30*,
   433 F. Supp. 3d 1130 (2020) ......................................................................... 6, 9

*Franchise Realty Interstate Corp. v. San Francisco Local Joint
   Executive Bd.*,
   542 F.2d 1076 (9th Cir. 1976) ................................................................... 5, 8, 9

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) .......................................................................................... 12

*Sacay v. Rsch. Found. of City Univ. of New York*,
   44 F. Supp. 2d 505 (E.D.N.Y. 1999) ................................................................ 1

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ............................................................................ 6

*Staley v. Gilead Scis., Inc.*,
   No. 19-CV-02573-EMC, 2020 WL 5507555 (N.D. Cal. July 29,
   2020) ............................................................................................................... 12

*United Mine Workers v. Pennington*,
   381 U.S. 657 (1965) .................................................................................. 1, 5, 9

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ......................................................................... 12

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Federal Statutes**

Civil Rights Act ........................................................................... 4

42 U.S.C. section 1983 ................................................................. 4


**California Statutes**

Unruh Civil Rights Act ............................................................. 4, 5


**Constitutional Provisions**

First Amendment ................................................................. 6, 9, 10

First Amendment's Petition Clause ..................................... *passim*


**Federal Rules**

Federal Rules of Appellate Procedure, Rule 28 ........................... 1

Federal Rules of Civil Procedure, Rule 12 .................................. 4

## I.    INTRODUCTION

While politics often makes strange bedfellows, an alliance of the many disparate entities posited by Plaintiffs, if supported by factual allegations that plausibly entitle Plaintiffs to relief, would be among the oddest. That the Complaint provides no such facts is only one of many grounds for its dismissal.

Because several of the grounds for dismissal apply equally to most or all Defendants, Defendants American Federation of Teachers ("AFT") and National Education Association ("NEA") (collectively, "the Unions") will not burden the Court with repetition of the arguments advanced by Apple Inc. ("Apple") in its first-to-be-filed motion to dismiss. Rather, at the outset of the Argument section of this brief, we will identify the grounds advanced by Apple that apply equally to the Unions, along with a brief explanation of why Apple and the Unions are similarly situated as to those grounds, and note our joinder in Apple's arguments.[1]

One ground for dismissal, however, is unique to the Unions: the *Noerr-Pennington* doctrine, which holds that under the First Amendment's Petition Clause, speech and conduct intended to influence governmental agencies and officers is immune from liability.[2] Pleading their way to relief that would trample the Unions' petitioning rights, Plaintiffs frame a theory involving discrimination which assumes that a private party must even-handedly make available information

---

[1] *See Sacay v. Rsch. Found. of City Univ. of New York*, 44 F. Supp. 2d 505, 510 (E.D.N.Y. 1999) (granting request to join in motion where the arguments proffered by one or more defendants applied equally to co-defendants and there was no prejudice to the plaintiff); c*f.* Fed. R. App. P. 28 ("In a case involving more than one appellant or appellee . . . any number of appellants or appellees may join in a brief, and any party may adopt by reference a part of another's brief.").

[2] The *Noerr-Pennington* doctrine derives from *Eastern R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). We cite both decisions in the body of this brief.

favoring both sides of political and policy debates; refrain from using the political process, including campaign contributions, to achieve their goals; and muzzle themselves with regard to the wisdom and consequences of policy initiatives, which in this case impact public school curriculum and safety. Every factual allegation and theory of relief against the Unions crashes headlong into the immunity afforded under the Petition Clause and the *Noerr-Pennington doctrine*.

## II.    BACKGROUND: THE ALLEGATIONS AGAINST THE UNIONS

In the broadest of strokes, Plaintiffs allege that the Unions "colluded with" the social media company defendants, the search engine defendants, Amazon, Apple, the National School Boards Association, and the DNC "to suppress and censor disfavored speakers, viewpoints and content." Compl., ¶ 3.

With only a nod toward specificity, Plaintiffs explain that the AFT's President, "in collusion with" the Biden administration, "suppress[ed] . . . complaints made by parents in the public square about . . . teaching 'critical race theory,' . . . the consequences of long school closures, Covid 19 vaccine efficacy, [and] . . . the availability of gender altering surgery options that students are instructed to conceal from their own parents." *Id*., ¶ 6.

Further, Plaintiffs allege that the "Censorship Scheme" included "public school teacher unions and school board associations," Defendants AFT, NEA, and the National School Boards Association ("NSBA"), who colluded with the Biden Administration in order "to ma[k]e and continue to make policy directives for American public schools and their students" on issues such as the teaching of "critical race theory," "the necessity and public health consequences of long school closures, Covid 19 vaccine efficacy, or the adverse effects of teaching five year old children highly sexualized matters, including the availability of gender altering surgery options." Compl., ¶¶ 3, 6, 7, 15, 39, 401.

/ / /

1    For no apparent purpose, and without any details suggesting plausibility,

2    Plaintiffs allege also that: "The federal government also actively partnered with the

3    defendant teacher unions and defendant the National School Board Association

4    ("NSBA"). The federal government and Biden Administration have in fact been

5    pulling the strings of these alleged 'private party' defendants for years." Compl.,

6    ¶ 30.

7    These are the only allegations that pertain to all of the education Defendants,

8    the AFT, the NEA, and the NSBA, all of which are conclusory and insufficient to

9    state a plausible claim.[3]

10    As to the AFT, Plaintiffs allege also that,

11

12    the AFT contributed over $2 million to the Democratic Party

13    in 2020 alone for the purpose of gaining access to meetings

14    with the leaders of the CDC, DOJ and FBI to help formulate,

15    direct and dictate the CDC's and United States' public health

16    policy with respect to mask policies, closing all public schools

17    despite scientific evidence that it was wholly unnecessary and

18    more tragically, how, when and whether public schools would

19    ever reopen again for teaching kids one on one in light of the

20    ongoing "Covid 19 Pandemic."

21

22    Compl., ¶ 69.

23    / / /

24    / / /

25    / / /

26

27    [3] Even if one were to conjure a factual basis to support these allegations, there would be no viable claim because it would involve activity protected under the *Noerr-Pennington* doctrine.

28

3

## III.   ARGUMENT

### A.   The Unions Join in Apple's Motion to Dismiss.

In addition to joining in Apple's description of the Rule 12 dismissal standards, the Unions join in Apple's motion to dismiss as to the following grounds for the following reasons:

#### 1.   Plaintiffs do not have Article III standing.

The Unions and Apple are similarly situated regarding this ground, as the argument addresses deficiencies in the Complaint, Docket No. 34, pp. 5-10, a point that applies to all defendants across-the-board.

#### 2.   Plaintiffs' section 1983 claim fails because they do not allege that Apple acted in concert with state or local officials, and Apple is not a state actor.

The Unions and Apple are similarly situated regarding this ground, as the argument addresses matters of law that demonstrate Plaintiffs' inability to invoke section 1983 here, Docket No. 34, pp. 10-15, a point that applies to all defendants across-the-board.

#### 3.   Plaintiffs' Civil Rights Act claim fails because they do not allege that Apple acted under the color of state law, discriminated against anyone based on race, or violated the Civil Rights Act.

The Unions and Apple are similarly situated regarding this ground, as the argument addresses matters of law that demonstrate Plaintiffs' inability to invoke the Civil Rights Act here, Docket No. 34, pp. 15-17, a point that applies to all defendants across-the-board.

#### 4.   Plaintiffs do not state a claim under California's Unruh Civil Rights Act.

The Unions and Apple are similarly situated regarding this ground, as the argument addresses matters of law that demonstrate Plaintiffs' inability to invoke

1   the Unruh Civil Rights Act here because Plaintiffs lack standing, they do not allege

2   intentional discrimination, and political viewpoint is not a protected class, Docket

3   No. 34, pp. 19-21, points that apply to all defendants across-the-board.

4           **5.     Plaintiffs have no independent injunctive or declaratory**

5                  **relief claims.**

6           The Unions and Apple are similarly situated regarding this ground, as the

7   argument addresses deficiencies in the Complaint, Docket No. 21-22, points that

8   apply to all defendants across-the-board.

9       **B.    The Complaint Fails to State a Claim Against the Unions:  Under**

10          **the *Noerr-Pennington* Doctrine, the Unions Are Immune from**

11          **Liability for Their First Amendment-Protected Petitioning**

12          **Activity.**

13          The crux of the factual allegations on which Plaintiffs base their allegations

14  against the AFT and the NEA involve First Amendment-protected petitioning

15  activity. But under the *Noerr-Pennington* doctrine, those who petition any branch

16  of the government for redress are immune from liability for their petitioning

17  conduct. *See E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127,

18  135 (1961) (applying the doctrine to legislative lobbying); *United Mine Workers v.*

19  *Pennington*, 381 U.S. 657, 670 (1965) (applying the doctrine to petitioning the

20  executive branch).

21          In particular, the *Noerr-Pennington* doctrine protects petitioning activity that

22  includes meeting privately with government officials, *In re Airport Car Rental*

23  *Antitrust Litig.*, 766 F.2d 1292, 1295 (9th Cir.1985); and "petition[ing] an

24  administrative agency to take official action," *Franchise Realty Interstate Corp. v.*

25  *San Francisco Local Joint Executive Bd.*, 542 F.2d 1076, 1082 (9th Cir. 1976). As

26  the Ninth Circuit noted in *Boone v. Redevelopment Agency of City of San Jose*, 841

27  F.2d 886, 894 (9th Cir. 1988):

28  / / /

1
2
3
4
5
6

> Successful petitioning of government often depends on the
> development of close relations between government officials
> and those who seek government benefits. Indeed, cultivating
> close ties with government officials is the essence of lobbying.
> Such conduct certainly falls within the ambit of the *Noerr–*
> *Pennington* doctrine.

7

8
9

Thus, "allegations of shadowy secret meetings and covert agreements do not take [a] claim outside of *Noerr–Pennington*." *Id*.[4]

10
11
12
13
14
15
16

Further, "[t]o give adequate 'breathing space to the right of petition,' *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 932 (9th Cir. 2006) (internal citation omitted), the *Noerr-Pennington* doctrine also protects conduct that is 'incidental to a valid effort to influence governmental action.'" *Evans Hotels, LLC v. Unite Here Local 30*, 433 F. Supp. 3d 1130, 1145-47 (2020) ("negative publicity campaign" against redevelopment project protected) (citing *Allied Tube & Conduit Corp. v. Indian Head*, 486 U.S. 492, 499 (1988)).

17
18
19
20

As we next show, Plaintiffs' allegations against the Union Defendants go to the heart of the Unions' right of petition,[5] and Plaintiffs' claims plainly burden the Unions' right to engage with governmental officials regarding the matters of great public importance as to which Plaintiffs and the Unions are at odds.

21
22
23
24
25
26

---

[4] As was true in *Boone*, Plaintiffs here "have not alleged the nature of [any] secret agreements and secret meetings, nor have they identified the 'key . . . officials' allegedly involved. Moreover, they have not alleged that these activities were either illegal or outside the 'traditional protection[s] afforded this activity by the First Amendment.' Most notably, the[y] did not allege that these activities were perpetrated for reasons other than legitimate petitioning of government." *Id*. (internal citation omitted.)

27
28

[5] The First Amendment's Petition Clause reads as follows: "Congress shall make no law . . . abridging the . . . right of the people . . . to petition the Government for a redress of grievances."

**1.    The Plaintiffs' Lawsuit Burdens the Unions' Petitioning Activity.**

Plaintiffs' allegations[6] target:

(1)    a vast "Censorship Scheme," undertaken "in collusion with" the Biden administration and all of the other Defendants, to "suppress . . . complaints made by parents in the public square about . . . teaching 'critical race theory,' . . . the consequences of long school closures, Covid 19 vaccine efficacy, [and] . . . the availability of gender altering surgery options that students are instructed to conceal from their own parents." Compl., ¶¶ 3, 6, 7, 15, 39, 401; and

(2)    the AFT's purported contribution $2 million to the Democratic Party in 2020 for the purpose of gaining access to meetings with the leaders of the CDC, DOJ and FBI to help formulate, direct and dictate the CDC's and United States' public health policy with respect to masks and the closing and reopening of public schools in light of the ongoing Covid-19 Pandemic.

Were Plaintiffs to succeed in this case, they would burden the Unions' participation in these activities and, more broadly, the Unions' ability going forward to participate in policy meetings with governmental agencies in order to help shape public policy, to lobby public officials at all levels regarding the content of public schools' curricula, to make campaign contributions, and to oppose

---

[6] As is required, the AFT and the NEA assume the truth of Plaintiffs' allegations for purposes of this motion to dismiss, no matter how exaggerated or factually inaccurate they may be.

policies advocated by persons whose views mirror those of former President Trump. There can be no greater deterrent to exercise of the right to petition governmental actors and entities, and to express political views in support of such petitioning, than exposing parties that engage in such constitutionally protected activity to liability.  We next turn to that protected activity.

### 2.      The Unions' Alleged Activities Are of the Type the *Noerr-Pennington* Doctrine Protects.

Under the First Amendment's Petition Clause, the state and federal courts have unequivocally established that an entity engages in protected petitioning activity when it (1) lobbies government officials and agencies, whether publicly or in private; (2) uses even allegedly false information when lobbying; (3) campaigns to gather public support; and (4) makes campaign contributions.

### a.      Lobbying Government Officials and Agencies For, or Against, Government Action.

The Petition Clause protects advocacy before government officials and agencies in an attempt to influence government action in support of or against a given agenda. *See, e.g., Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers et al.*, 542 F.2d 1076, 1080 (9th Cir. 1976) (holding that *Noerr-Pennington* protects a joint appearance by a labor union and a restaurant employer association to oppose a restaurant chain's permit applications before a city board).

Plaintiffs allege that the Unions exercise their "access" by meeting with officials of various federal governmental agency officials. Such conduct is clearly speech, *i.e*., lobbying. Such activity is protected under *Noerr-Pennington* even where the lobbying efforts include private or "closed-door" meetings. *See, e.g., Committee to Protect our Agricultural Water v. Occidental Oil & Gas Corp*., 235 F. Supp. 3d 1132, 1157-58 (E.D. Cal. 2017) (holding private corporations' "closed door meetings" with government officials were protected petitioning activities);

1    *Empress LLC v. City and County of San Francisco*, 419 F. 3d 1052 (9th Cir. 2005)

2    (holding private discussions with city officials was protected petitioning activity);

3    *United Mine Workers v. Pennington*, 381 U.S. 657, 669-70 (1965) (holding in the

4    context of labor union's approach to the Secretary of Labor that "*Noerr* shields a

5    concerted effort to influence public officials regardless of intent or purpose").

6            Thus, the Unions have the right to meet with and appear before public

7    bodies and officials to advocate for teachers' and students' interests, including with

8    regard to public school curriculum and school safety. Under no theory that

9    comports with the First Amendment are the Unions' petitioning rights constrained,

10   as Plaintiffs would have it, by a duty of silence, neutrality, or a fairness doctrine.[7]

11           **b.    Gathering Public Support for a Political Cause.**

12           An entity's petitioning rights under the First Amendment also include

13   attempts to influence government action *indirectly* by encouraging the public to

14   participate in a cause the petitioner champions. "A publicity campaign directed at

15   the general public, seeking legislation or executive action, enjoys antitrust

16   immunity . . . ." *Allied Tube & Conduit Corp. v. Indian Head, Inc*., 486 U.S. 492,

17   499–500 (1988) (citing *Noerr, supra*, 365 U.S., at 140–141); *see, e.g., Evans Hotel*

18   *v. Unite Here Local 30*, 433 F. Supp. 3d 1130, 1144-47 (S.D. Cal. 2020) (holding

19   that threatening a "negative publicity campaign" against a lease amendment and

20   redevelopment project was protected petitioning activity); *Franchise Realty*

21   *Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary*

22   *Workers et al.*, 542 F.2d 1076 (9th Cir. 1976) (holding that soliciting others to

23   attend a city board meeting was protected petitioning).

24   / / /

25

26   [7] Plaintiffs' prayer includes a request for "a temporary restraining order and order
     to show cause re issuance of preliminary and permanent injunction enjoining
27   Defendants and each of them, from continuing to violate Plaintiffs' constitutional
     rights by virtue of their Censorship Scheme . . . ." Compl., p. 135, item 3.
28

Here, Plaintiffs allege that the Unions engaged in similar publicity campaigns when they "suppress[ed] . . . complaints made by parents in the public square" on all of the hot button political topics Plaintiffs' Complaint itemizes. Compl., ¶ 6. Plaintiffs allege further that, "the private party defendants [were enlisted by the] DNC . . . in early 2020 and [it] continued to use [them] as 'proxies' or 'conduits' for the Democratic Party (with the mainstream media) to create a one-party system and . . . to quash, suppress and stifle any and all opposition." Compl., ¶ 401 (the first ¶ 401, on page 131). Assuming these far-fetched allegations are true, the *Noerr-Pennington* doctrine protects the Unions' efforts to "enlist," *i.e.*, *solicit*, the general public to support its policy agendas. And the same protection applies to the Unions' alleged advocacy of "de-platforming" [*sic*], and "suppress[ing]," "stifl[ing]," and "exiling" from social media views the Unions believe are contrary to the best interests of teachers and students. Compl., ¶ 76.

### c.      Using Allegedly False Information.

Advocating for policy or political change is protected petitioning activity, *even if* one uses allegedly false or misleading information to influence government actors or agencies. *See*, *e.g.*, *Borges v. County of Mendocino*, 506 F. Supp. 3d 989, 1002 (N.D. Cal. 2020) (holding that citizens' allegedly false claims to county officials that a medical marijuana business created water diversion was protected petitioning activity). To hold otherwise would subject the exercise of First Amendment rights to a test of correctness rather than the test of further investigation and public discourse.

As the Supreme Court pointed out in *Noerr*, attempts to influence public officials may occasionally result in "deception of the public, manufacture of bogus sources of reference, [and] distortion of public sources of information.... While we do not condone misrepresentations, we trust that the council and agency, acting in the public sphere, can "accommodate false statements and reveal their falsity." *Borges v. County of Mendocino*, 506 F. Supp. 3d at 1002 (citing and quoting

10

1 | *Boone v. Redevelopment Agency of City of San Jose ("Boone")*, 841 F.2d 886, 894
2 | (9th Cir. 1988)).

3 |       Here, Plaintiffs allege, for example, that,

4 |

5 |         Defendants have also created and continue to create a false
6 |       narrative of reality that always favors the Democratic Party in order to
7 |       prioritize its policy dictates (including its maniacal "climate change"
8 |       agenda) and to "gaslight" the American people into believing
9 |       whatever the Democratic Party says or claims the truth is, even when
10 |       they know that what is being promulgated to the public is patently
11 |       false.

12 |

13 | Compl., ¶ 52. Whatever the truth or falsity of either side's views, this Court should
14 | not accept Plaintiffs' invitation to intervene either as arbiter of truth and falsity or
15 | to deny the protection of speech afforded by the *Noerr-Pennington* doctrine.

16 |       **d.**    **Making Financial Campaign Contributions.**

17 |       An entity also engages in petitioning activity protected under the *Noerr-*
18 | *Pennington* doctrine by making financial campaign contributions to public officials
19 | or political organizations. *Boone,* 841 F.2d at 895 (holding that campaign
20 | contribution payments are a form of petitioning activity); *Committee to Protect our*
21 | *Agricultural Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132 (E.D.
22 | Cal. 2017) (same).

23 |       Here, Plaintiffs allege that AFT contributed over $2 million to the
24 | Democratic Party in 2020. Compl., ¶ 69. Nothing more need be said regarding its
25 | right under the Petition Clause to do so.

26 | / / /
27 | / / /
28 | / / /

11

### 3. The "Sham" Exception to the *Noerr-Pennington* Doctrine Does Not Apply Here.

"*Noerr* . . . withheld immunity from 'sham' activities . . . when petitioning activity, 'ostensibly directed toward influencing governmental action, is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor.'" *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). But the AFT's lobbying efforts alleged in the Complaint have nothing to do with competition in a commercial sense; they involve competition in the realm of policy, and Plaintiffs implicitly admit that the AFT genuinely lobbied governmental officials to take governmental action on its policy positions, Compl., ¶ 6, not for whatever benefit might conceivably be derived from merely *invoking* the lobbying process.

Thus, the sham exception does not preclude application of the *Noerr-Pennington* doctrine to the Unions' petitioning activity described in the Complaint.

### C. Plaintiffs Cannot Plead Around Petition Immunity; Leave to Amend Should Not Be Granted.

Where a plaintiff shows no "basis for concluding that further amendment would not be futile," the district court may correctly dismiss the action with prejudice. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021). The Unions' activities here are protected under the *Noerr-Pennington* doctrine. Thus, leave to amend would be futile, regardless of what facts the Plaintiffs might add if given the opportunity, because legal immunity is a privilege around which the Plaintiffs cannot plead. *See, e.g.*, *Staley v. Gilead Scis., Inc.*, No. 19-CV-02573-EMC, 2020 WL 5507555, at *19 (N.D. Cal. July 29, 2020) ("Plaintiffs have not articulated any other means by which they could avoid *Noerr-Pennington* immunity here, and thus amendment would be futile.").

///

///

12

## IV.    CONCLUSION

For the foregoing reasons, Defendants AFT and NEA respectfully submit that the claims against them should be dismissed without leave to amend.


DATED:  April 21, 2023                    GLENN ROTHNER
                                          ELI NADURIS-WEISSMAN
                                          ROTHNER, SEGALL & GREENSTONE


                                          By   /s/ Glenn Rothner
                                              GLENN ROTHNER
                                          Attorneys for Defendants
                                          American Federation of Teachers and
                                          National Education Association


## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Defendants American Federation of Teachers and National Education Association, certifies that this brief contains 3,446 words, which complies with the word limit of L.R. 11-6.1.


DATED:  April 21, 2023          By   /s/ Glenn Rothner
                                    GLENN ROTHNER
                                Attorneys for Defendants
                                American Federation of Teachers and
                                National Education Association

13