Stephen J. Kaufman, Bar No. 131605
*skaufman@kaufmanlegalgroup.com*
Gary S. Winuk, Bar No. 190313
*gwinuk@kaufmanlegalgroup.com*
**KAUFMAN LEGAL GROUP, APC**
777 S. Figueroa Street, Suite 4050
Los Angeles, CA 90017
Tel: (213) 452-6565
Fax: (213) 452-6575

*Counsel for Defendant DNC Services Corporation*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN DIVISIONRICHARD JACKSON, JULIE BRIGGS, and GREGG BUCHWALTER, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., a Delaware corporation; GOOGLE, LLC, a limited liability company; ALPHABET, INC., a Delaware corporation; META PLATFORMS, INC., a corporation doing business as "META" and "FACEBOOK, INC."; INSTAGRAM, INC., a Delaware corporation; AMAZON, INC. a Delaware corporation; YOU TUBE, INC., a Delaware corporation; APPLE, INC., a Delaware Corporation; AMERICAN FEDERATION OF TEACHERS; NATIONAL EDUCATION ASSOCIATION; NATIONAL SCHOOL BOARD ASSOCIATION; DNC SERVICES CORPORATION, a corporation doing business nationwide as "THE DEMOCRATIC NATIONAL COMMITTEE" OR "DNC,"<br><br>Defendants. | CASE NO.: 2:22-cv-09438-AB-MAA<br><br>**DEFENDANT DNC SERVICES CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Proposed Order filed concurrently herewith]<br><br>Hearing Date: June 9, 2023<br>Hearing Time: 10:00 a.m.<br>Location: 7B<br><br>Honorable Judge Andre Birotte Jr.<br>United States District Judge |

# TABLE OF CONTENTS

I.   Introduction ............................................................................................. 1

II.  Background .............................................................................................. 1

III. Argument ................................................................................................. 6

  A.   Plaintiffs lack standing to sue DNC. ................................................. 6

    1.   Legal standard ............................................................................ 6

    2.   Plaintiffs fail to allege a particularized injury-in-fact. ................... 7

    3.   Plaintiffs fail to establish traceability. ......................................... 8

    4.   Plaintiffs fail to establish redressability. ...................................... 9

  B.   Plaintiffs fail to state a claim for relief. .......................................... 10

    1.   Plaintiffs fail to state a First Amendment claim. ........................ 11

    2.   Plaintiffs fail to state a Civil Rights Act claim. .......................... 13

    3.   Plaintiffs fail to state a California Unruh Act Claim. .................. 13

  C.   Plaintiffs' complaint is insufficiently cogent under Rule 8. .............. 15

  D.   The Court should dismiss the Complaint with prejudice. .................. 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*, \
    556 U.S. 662, 678 (2009) ........................................................................... 11

*Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*,
    10 F.4th 937, 943 (9th Cir. 2021) ............................................................... 9

*Az. Att'ys for Crim. Just. v. Brnovich*, No. 20-16293,
    2021 WL 3743888, at *2 (9th Cir. Aug. 24, 2021) ................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555 (2007) ........................................................................... 16

*Brennon B. v. Super. Ct. of Contra Costa Cnty.*,
    513 P.3d 971, 980 (Cal. 2022) ................................................................... 14

*Burns v. County of King*,
    883 F.2d 819, 821 (9th Cir. 1989) ....................................................... 11, 13

*Calzone v. Hawley*,
    866 F.3d 866, 869 (8th Cir. 2017) ............................................................. 10

*Castellanos v. City of Reno*, Case No. 3:19-cv-693,
    2022 WL 4345294, --F.Supp.3d--, at * 13 (D. Nev. Sept. 19, 2022) ..... 8, 10

*Chandler v. State Mut. Auto Ins. Co.*,
    598 F.3d 1115, 1121-22 (9th Cir. 2010) ...................................................... 6

*Colins v. Womancare*,
    878 F.2d 1145, 1147 (9th Cir. 1989) ......................................................... 11

*Developments in the Law – State Action and the Public/Private Distinction*,
    123 HARV. L. REV. 1248, 1255 (2010) ........................................................ 12

*Eminence Captial, LLC v. Aspeon, Inc*
    *316 F.3d 1048, 1052 (9th Cir. 2003*. ........................................................ 16

*Gillibeau v. City of Richmond*,
    417 F.2d 426, 431 (9th Cir. 1969) ............................................................. 16

*Golinsky v. Bryan*, No. 87-2588,
    1988 U.S. App. LEXIS 22508, at *2 (9th Cir. Oct. 18, 1988) ................ 8, 10

*.Harris v. Wash. Mut. Bank*, Case No. 10-cv-06743,
    2012 WL 13005648, at *2 (C.D. Cal. July 5, 2012). ................................... 5

*Harrison v. City of Rancho Mirage*,
  243 Cal. App. 4th 162, 173 (2015) ................................................................ 14

*In re Hydroxycut Mktg. & Sales Pracs. Litig.*,
  801 F. Supp. 2d 993, 1002 (S.D. Cal. 2011)................................................... 7

*Lance v. Coffman*,
  549 U.S. 437, 439 (2007)................................................................................ 7

*Leeson v. Transamerica Disability Income Plan*,
  671 F.3d 969, 975 n.12 (9th Cir. 2012) .................................................... 6, 15

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922, 937 (1982)............................................................................. 11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555, 560–61 (1992).................................................................. 6, 7, 9

*Maya v. Centex Corp.*,
  658 F.3d 1060, 1067 (9th Cir. 2011) ....................................................... 6, 11

*Randall v. Orange County Council*,
  17 Cal. 4th 736, 744 (1998) ........................................................................ 15

*Spokeo, Inc. v. Robins*,
  578 U.S. 330, 338 (2016).............................................................................. 7

*Sprewell v. Golden State Warriors*,
  266 F.3d 979, 988 (9th Cir. 2001) ............................................................... 11

*Thurston v. Omni Hotels Mgmt. Corp.*,
  284 Cal. Rptr. 3d 341, 346 (2021) ............................................................... 14

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190, 2205 (2021)........................................................................ 6

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715, 726 (1966)............................................................................. 15

*United States v. Morrison*,
  529 U.S. 598, 622 (2000).............................................................................. 12

*Villegas v. Gilroy Garlic Festival Ass'n*,
  541 F.3d 950, 954 (9th Cir. 2008) ............................................................... 11

*Williams v. Twitter*, No. 20STCV41
  458 (Super. Ct. L.A. County, 2022) .............................................................. 2

*Wit v. United Behav. Health*,
   58 F.4th 1080, 1093 (9th Cir. 2023) .................................................................... 9

*Wolfson v. Brammer*,
   616 F.3d 1045, 1056 (9th Cir. 2010) .................................................................. 10

**Other Authorities**

28 U.S.C.
   Sectioin 1367 ....................................................................................................... 15

52 U.S.C.
   Sectioin 30101 ............................................................................................... 13, 14

California Civil Code
   Sectioin 51. .......................................................................................................... 14

Federal Rules of Civil Procedure
   Section 8 and 12 ........................................................................................ 1, 15, 16

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

PLEASE TAKE NOTICE that on June 9, 2023, at 10:00 a.m., or as soon thereafter as this matter may be heard, pursuant to Rules 12(b)(1), 12(b)(6), and 8(a) and (d) of the Federal Rules of Civil Procedure, Defendant DNC Services Corporation ("DNC") will, and hereby does, move this Court for an order dismissing, with prejudice, the Complaint filed by Plaintiffs. This Motion is brought on the following grounds: First, Plaintiffs do not allege facts sufficient to state an injury-in-fact that is traceable to DNC and redressable by this Court, and this Court therefore lacks subject-matter jurisdiction over this action. Fed. R. Civ. P. 12(b)(1). Second, the Complaint fails to allege sufficient facts to state a claim. Fed. R. Civ. P. 12(b)(6). Third, the Complaint fails to comply with the requirement that it be "a short and plain statement of the claim showing that the pleader is entitled to relief" and contain allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a), (d).

This motion will be made in Courtroom 7B of the United States Courthouse located at 255 East Temple Street in Los Angeles, California before the Honorable Andre Birotte, Jr., United States District Judge. This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the DNC's Request for Judicial Notice, the files and records in this case, and such other evidence or argument as the court may consider. This motion follows the conference of counsel pursuant to Local Rule 7-3, which took place on April 19, 2023. DNC initiated the meet-and-confer process with an email on April 14, 2023,

///

///

///

///

DEFENDANT DNC'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

and concluded the process with a phone conversation on April 19, 2023. (See Decl. Gary S. Winuk, ¶ 2.)


Dated: April 26, 2023

                                    Respectfully submitted,

                                      KAUFMAN LEGAL GROUP, APC


                                      By: */s/ Stephen J. Kaufman*
                                      Stephen J. Kaufman
                                      Gary S. Winuk

                                      Attorneys for Defendant
                                      *DNC Service Corporation*

DEFENDANT DNC'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DNC'S MOTION TO DISMISS

### I.    Introduction

Defendant DNC Services Corporation ("DNC") hereby moves under Rules 12(b)(1), 12(b)(6), and 8(a) and (d) of the Federal Rules of Civil Procedure for dismissal of Plaintiffs' Complaint for damages, declaratory, and injunctive relief ("Complaint") (ECF No. 1) in its entirety and with prejudice.

The Complaint should be dismissed for several reasons: *First*, the Court lacks subject-matter jurisdiction over the claims against the DNC, because Plaintiffs lack standing to sue them. *Second*, Plaintiffs fail to plead a single claim against DNC that is sufficient to satisfy Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiffs allege that the DNC was party to a "vast censorship scheme" to deprive Plaintiffs and over 72 million Republican voters who supported President Trump of their free speech rights.  Yet, Plaintiffs' 136-page conspiracy laden Complaint lacks any factual allegations tying the DNC to the alleged harms suffered by Plaintiffs.

*Third*, Plaintiffs' sprawling Complaint fails to allege clear and concise claims, and, as such, it deprives DNC of fair notice of Plaintiffs' claims and the grounds for these claims. Consequently, the Court should dismiss the Complaint with prejudice because any amendments would be futile, and because Plaintiffs have already wasted enough judicial and party resources in litigating and abandoning their similarly frivolous state court claims in a prior action filed in Los Angeles Superior Court.

### II.    Background

Defendant DNC is the national committee of the Democratic Party.  It is a political organization created in accordance with the Federal Election Campaign Act (FECA) of 1971, as amended, and is responsible for the day-to-day operations

of the Party at the national level.  As Plaintiffs themselves state in their Complaint, "[w]hile the DNC provides support for party candidates, it does not have direct authority over elected officials."  Compl. ¶ 73.

Nonetheless, Plaintiffs have sued DNC and eleven other defendants as part of an alleged "vast Censorship Scheme," Compl. ¶ 3, to "censor and suppress lawfully protected speech and communications," Compl. ¶ 4, of a putative class of "**[m]ore than 72 million registered Republicans nationwide**" who voted for former President Trump in the 2020 presidential election.  Compl. ¶ 85 (original emphasis).  Plaintiffs' rambling Complaint describes this "vast" scheme as the DNC and the federal government "collud[ing] with and/or coerc[ing] social media companies, internet retailers and distributors, public school teacher unions and school board associations . . . to suppress and censor disfavored speakers, viewpoints and content on social media platforms . . . ."  Compl. ¶ 3.  However, Plaintiffs have not alleged any facts stating how the DNC deprived Plaintiffs of their free speech rights or colluded with any of the other defendants to do so.

This is not the first time Plaintiffs have tried to raise these frivolous claims against the DNC. In October of 2020, Plaintiff Richard Jackson, along with Kellie Williams—who is not a named party in the instant case—filed a substantially similar putative class action suit against DNC and many of the same defendants named in the instant case, in a Los Angeles County Superior Court case intitled *Williams v. Twitter*, No. 20STCV41458 (Super. Ct. L.A. County, 2022) ("*Williams* Complaint"). A copy of the amended complaint in that case is attached to Defendant DNC's Request for Judicial Notice as Exhibit 1. That lawsuit, like the instant case, alleged that the defendants engaged in a vast yet ill-defined conspiracy to censor the speech of Trump-supporting Republicans. *See* First Am. Compl., Req. Judicial Notice, Ex. 1 ¶¶ 4–5, 25-29. As explained below, Plaintiffs ultimately dismissed that case after wasting two years' worth of court and party resources. *See*

DEFENDANT DNC'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

*generally* Req. Dismissal, Req. Judicial Notice, Ex. 2. Because *Williams* was a putative class action, it was originally assigned to the Complex Division of the Los Angeles County Superior Court. *See* November 17, 2020 Min. Order, Req. Judicial Notice, Ex. 3.[1] However, the Superior Court—almost certainly recognizing the frivolity of the *Williams* Complaint—removed the matter from the Complex Division *sua sponte*. *See* October 13, 2021 Min. Order, Req. Judicial Notice, Ex. 4.[2]

After the Superior Court held that the *Williams* Complaint was not properly before the Complex Division, DNC and the other defendants filed multiple joint and individual demurrers seeking to dismiss it with prejudice. Those motions were fully briefed, but never adjudicated because shortly before oral argument Jackson and Williams voluntarily dismissed their case. *See* Req. Dismissal, Req. Judicial Notice, Ex. 2.

Jackson, now joined by Julie Briggs and Greg Buchwalter, is back for a second bite at the apple, this time trying his luck in federal court. Jackson's new Complaint includes some of the same claims as alleged in *Williams*, as well as almost one-hundred pages of language (including factual allegations) lifted, nearly verbatim, from *Missouri v. Biden*, an action filed against federal government officials by the Missouri and Louisiana Attorneys General ("*Missouri* Complaint"), that is presently pending in the Eastern District of Missouri.[3] Plaintiffs were so

---

[1] Under California Rule of Court 3.400(a), "[a] 'complex case' is an action that requires exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel."

[2] Jackson and Williams filed a motion to transfer the case back to the Complex Division on May 31, 2022. The Superior Court denied that motion on July 22, 2022. *See* Order, Req. Judicial Notice, Ex. 5.

[3] Plaintiffs admit that their Complaint "cull[s]" "facts" from the "Second Amended Complaint filed in the AG Lawsuit and" these facts "are incorporated into this Complaint by reference." Compl. 33 n.1. In less oblique terms, Plaintiffs copied and pasted much of the Second Amended Complaint filed in *Missouri v. Biden*, using

careless in their cut and pasting from the *Missouri* Complaint that they even failed to remove allegations specific to persons who are plaintiffs in the *Missouri* Complaint but not parties here. *See* Compl. ¶¶ 159, 336 (referring to "Plaintiff Kulldorff" and "Plaintiff Hoft" who are not Plaintiffs in this case but are Plaintiffs in *Missouri v. Biden*). Unlike this case, the *Missouri* Complaint does *not* name any non-government official defendants.

As a result of Plaintiffs' mashup of the *Williams* and *Missouri* Complaints, the Complaint before this Court includes an assortment of non-specific, conspiracy-laden allegations that DNC is party to a purported "vast Censorship Scheme" wherein the government allegedly worked in concert with the DNC to coerce various social media platforms into censoring "MAGA-Republican" speech on a litany of topics. Those topics include concerns "about teaching . . . 'critical race theory' to students without the knowledge or consent of their parents," Compl. ¶ 6; a *New York Post* article regarding a laptop in the possession of a pawn shop owner that Plaintiffs believe belonged to Hunter Biden, *id.* at ¶¶ 19–21, 135–40; the theory that a lab-leak was the origin of COVID-19, *id.* at ¶¶ 141–50; speech challenging the efficacy of mask mandates and COVID-19 lockdowns, *id.* at ¶¶151–62; and allegations about a lack of election integrity and claims that voting by mail poses "a major election-security issue," *id.* at ¶¶ 77, 163–68). Plaintiffs do **not** allege that: (1) any of the named Plaintiffs attempted to engage in speech on these topics; (2) their speech was suppressed by anyone, let alone the named defendants in this action; or (3) their speech was suppressed at the behest of DNC.

Moreover, much of Plaintiff's ire is directed not to Defendants' efforts to censor Plaintiffs, but to alleged propaganda "asserted" by the DNC and other Defendants with which Plaintiffs apparently disagree. *See, e.g.*, Compl. ¶ 77. These

---

almost the exact same language in pages 33 through 127 of their Complaint, changing only a handful of words along the way.

statements include Defendant's alleged "assert[ions]" that: (1) "[t]here were no 'riots' or property damage that occurred during the Summer of 2020 that were instigated by democratic political organizations known as 'Antifa' and 'Black Lives Matter' in democratic controlled cities such as Minneapolis and Portland and New York;- just 'peaceful protests'"; (2) "[t]here was and is no 'crisis' at the wide-open Mexican-United States border caused by the Biden Administration's open border policy"; and (3) "President Trump and his lawyers provided 'no evidence' of election fraud." *Id.* at ¶ 77.

As was true of the *Williams* Complaint, Plaintiffs style this lawsuit as a class action, defining the Putative Class to include "[m]ore than 72 million registered Republicans nationwide," along with anyone "who voted for someone other than President Biden," as well as all "conservative-leaning speakers and/or MAGA Republicans who chose to dispute, disagree or challenge Democratic Party policies, dogma and propaganda." *Id.* at ¶ 85.

On behalf of this Putative Class, Plaintiffs assert multiple causes of action. First, they claim Defendant violated their federal civil rights by suppressing lawfully protected speech. *Id.* at ¶¶ 382–86. Second, they assert Defendant violated the Civil Rights Act of 1964 and Plaintiffs' Fifth and Fourteenth Amendment rights, by "interfer[ing] with Plaintiffs' and the Putative Class's voting rights" and "diluting the value of their vote in the 2020 and 2022 elections." *Id.* at ¶¶ 387–90. Third, they claim Defendant violated the California Unruh Act by engaging in discriminatory business practices. *Id.* at ¶¶ 391–401[4]. In setting out these claims,

---

[4] Plaintiffs also categorize their requested remedies of declaratory and injunctive relief as separate causes of action. *See* Compl. ¶¶ 398–405. The remedies of injunctive and declaratory relief are not independent causes of action under California law. *Harris v. Wash. Mut. Bank*, Case No. 10-cv-06743, 2012 WL 13005648, at *2 (C.D. Cal. July 5, 2012). Therefore, in the event the Court grants DNC's Motion and dismisses Plaintiff's first, second, and third causes of actions, Plaintiff's injunctive and declaratory relief claims should be dismissed as well.

Plaintiffs never explain, except in the most conclusory terms, what DNC has done, or how DNC could be responsible for Plaintiffs' claims of alleged censorship, harm to their voting rights, or discrimination through business practices.

## III.   Argument

### A.   Plaintiffs lack standing to sue DNC.

Plaintiffs fail to allege any facts that could sustain a finding (1) that Plaintiffs have suffered a concrete and cognizable injury-in-fact, (2) that any such injury is fairly traceable to DNC, or (3) that any such injury is likely to be redressed by the relief that Plaintiffs seek. Failure to assert any one of these elements is fatal to Plaintiffs' standing.

#### 1.  Legal standard

A plaintiff who files a lawsuit in federal court "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Failure to do so deprives the court of subject-matter jurisdiction over the lawsuit, requiring the court to dismiss the action. *Chandler v. State Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010); *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) ("'[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety[,]' including pendant state law claims.").

Standing requires (1) a concrete and particularized, actual or imminent injury-in-fact; (2) that is traceable to the challenged actions of the defendant; and (3) is likely to be redressed with a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "Only those plaintiffs who have been *concretely harmed* by a defendant's [] violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). The plaintiff bears the burden of proving each element of the standing

requirements, and, to meet its burden in the pleading stage, the plaintiff must "clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alterations and quotation marks omitted).

### 2. Plaintiffs fail to allege a particularized injury-in-fact.

Instead of alleging any particularized injury-in-fact as to each named Plaintiff, Plaintiffs assert generalized grievances without alleging how (or even whether) each of the named Plaintiffs has been personally and individually harmed. This is not enough to confer standing.

An injury-in-fact is particularized when it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. This same standard applies in class action litigation as it would in any other case. *See In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 801 F. Supp. 2d 993, 1002 (S.D. Cal. 2011) (citing *Lujan* and applying the same standard in a class action litigation against a medication manufacturer). In cases styled as civil rights actions (like this one), generalized grievances about the government, "claiming only harm to [plaintiff's] and every citizen's interest . . . and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (quoting *Lujan*, 504 U.S. at 573-74).

Boiled down, Plaintiffs allege three generalized grievances which purportedly originated due to some government action: (1) the Putative Class of 72 million registered Republicans either "lost their right to vote without outside interference in the 2020 and 2022 national elections," Compl. ¶ 37, or their right to vote was "diluted" because of such alleged interference, Compl. ¶ 388; (2) the Putative Class was either censored, banned or "shadow-banned" from social-media platforms, or "had [undefined] impermissible burdens placed on them by Defendants" for engaging in certain speech, Compl. ¶¶ 46- 47; *see also* Compl. ¶¶

57–60; and (3) "[a]ll members of the [putative] class have sustained economic damage" from the Defendants' actions, Compl. ¶ 92.

However, Plaintiffs fail to allege how any of the named Plaintiffs have been *personally* injured with any specificity. The only specific factual allegations about Plaintiffs Jackson, Briggs, and Buchwalter are as follows: All three are "registered Republican[s] with conservative viewpoints who consider[] [themselves] to be . . . so-called 'MAGA Republican[s].'" Compl. ¶¶ 57-59.[5] Plaintiffs do not make any specific allegation of fact as to Jackson, Briggs, or Buckwalter which might shed light on what speech they engaged in, which Defendants—if any—censored their speech, how their speech was allegedly censored, or when such censorship allegedly occurred. Beyond the three spartan and virtually identical paragraphs introducing Jackson, Briggs, and Buckwalter, Plaintiffs make no mention of them anywhere else in the 137-page Complaint.

### 3.  Plaintiffs fail to establish traceability.

Here, because Plaintiffs have not alleged any concrete or particularized injury, they cannot possibly satisfy the traceability element of standing. *Golinsky v. Bryan*, No. 87-2588, 1988 U.S. App. LEXIS 22508, at *2 (9th Cir. Oct. 18, 1988) (holding that because the plaintiffs did not articulate an injury, they "suffered no injury-in-fact fairly traceable to [the defendant's] conduct"); *Castellanos v. City of Reno*, Case No. 3:19-cv-693, 2022 WL 4345294, --F.Supp.3d--, at * 13 (D. Nev. Sept. 19, 2022) ("The Court's conclusion regarding injury also leads the Court to conclude Plaintiffs fail to show traceability and redressability because there is no injury in fact to be traced to the [defendant's] conduct nor one that may be

---

[5] Plaintiffs' assertion that each named Plaintiff "was and continues to be deprived of his First Amendment rights as a result of the Censorship Scheme and in particular, has been unconstitutionally burdened by Defendants' continuing unlawful censorship and suppression of conservative or 'disfavored' viewpoints and what he chooses to read, see, say or hear in the public square," is a legal conclusion. Compl. ¶¶ 57-59.

DEFENDANT DNC'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

redressed by the relief sought."). But even assuming for the sake of argument that Plaintiffs' vague claims about censorship and exposure to ideas that they personally dislike or disagree with were a sufficient injury, Plaintiffs never explain how DNC could possibly be the cause of such an injury.

"An injury is 'fairly traceable' where there is a causal connection between the injury and the defendant's challenged conduct." *Wit v. United Behav. Health*, 58 F.4th 1080, 1093 (9th Cir. 2023). An injury is not fairly traceable if the "links in the proffered chain of causation 'are [] hypothetical or tenuous.'" *Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 943 (9th Cir. 2021) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)).

As to DNC, Plaintiffs admit outright that DNC "does not have direct authority over elected officials" who Plaintiffs claim conspired with social-media companies to harm Plaintiffs. Compl. ¶ 73. And Plaintiffs do not allege that DNC has any control over the social-media platforms that supposedly censored the Putative Class. The only claim Plaintiffs make is that because DNC raises funds to support Democratic candidates, including President Biden, "the DNC and its leaders . . . were motivated by money, power and greed to enter into a conspiracy and agreement to perpetrate the Censorship Scheme." Compl. ¶ 74. However, causation requires an assertion that Plaintiffs' purported injury is connected to and the result of some action by DNC. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs fail to allege anything of the sort.

### 4.  Plaintiffs fail to establish redressability.

Plaintiffs also fail to clearly allege that any purported injury-in-fact is redressable by a favorable decision against DNC.

A plaintiff establishes redressability by clearly alleging that "it is likely, although not certain, that his injury can be redressed by a favorable decision." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010). Redressability must be

established against *each defendant*. *Az. Att'ys for Crim. Just. v. Brnovich*, No. 20-16293, 2021 WL 3743888, at *2 (9th Cir. Aug. 24, 2021); *see also Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) ("Article III standing to sue each defendant also requires a showing that each defendant caused his injury and that an order of the court against each defendant could redress the injury." (citing *Lujan*, 504 U.S. at 560–61)).

Because Plaintiffs do not allege a concrete or particularized injury, let alone one that is traceable to DNC, they fail to satisfy the redressability element of standing. *See Golinsky v. Bryan*, No. 87-2588, 1988 U.S. App. LEXIS 22508, at *2 (9th Cir. Oct. 18, 1988); *Castellanos v. City of Reno*, Case No. 3:19-cv-693, 2022 WL 4345294, --F.Supp.3d--, at *13 (D. Nev. Sept. 19, 2022). Indeed, Plaintiffs admit that DNC lacks any control over the government, government officials, or private social media platforms. *See* Compl. ¶ 73 ("While the DNC provides support for party candidates, it does not have direct authority over elected officials."); Compl. ¶ 169-316 (outlining extensively the details of the alleged suppression of speech on social media platforms but failing to mention the DNC's involvement). Plaintiffs do not make any allegations that a judgment against the DNC might assuage Plaintiffs' generalized grievances. Therefore, Plaintiffs lack standing to sue DNC.

## B.   Plaintiffs fail to state a claim for relief.

Because Plaintiffs do not have Article III standing, the Court should dismiss the claims against the DNC for lack of subject-matter jurisdiction alone. However, if the Court chooses to consider the merits of Plaintiff's claims, the matter must be dismissed because each count fails to state a claim upon which relief may be granted.

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is

DEFENDANT DNC'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not blindly accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). In addition, Section 1983 conspiracy claims have a heightened pleading standard. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). To survive a motion to dismiss a claim for conspiracy to violate civil rights under Section 1983, Plaintiffs must plead specific material facts that show the existence of conspiracy. *Id.*

### 1. Plaintiffs fail to state a First Amendment claim.

Plaintiffs fail to plead sufficient facts to state a First Amendment claim (Count 1), because DNC is a private entity that does not act under the color of state law. Plaintiffs do not allege a single fact that suggests otherwise.

To prove a violation of Section 1983, the plaintiff must demonstrate that the defendant "(1) deprived [him] of a right secured by the Constitution, and (2) acted under color of state law." *Colins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989). "[A] private entity can, in certain circumstances, be subject to liability under section 1983." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 954 (9th Cir. 2008). To hold a private entity liable under Section 1983, a plaintiff must show "the conduct allegedly causing the deprivation of a federal right [was] fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

Plaintiffs do not (and cannot) allege that DNC is a state actor. DNC is a private entity that has not acted in a manner attributable to the state. Specifically, DNC is the national committee of the Democratic Party, as defined by 52 U.S.C. § 30101(14) ("The term 'national committee' means the organization which, by

virtue of the bylaws of a political party, is responsible for the day-to-day operation of the political party at the national level, as determined by the [Federal Election] Commission."). Plaintiffs concede DNC "does not have direct authority over elected officials," Comp. ¶ 73, and nowhere does the complaint allege any facts indicating that DNC is controlled by federal officials.[6]

As a general matter, courts cannot hold a private entity liable for constitutional violations. *See United States v. Morrison*, 529 U.S. 598, 622 (2000) ("[T]he Fourteenth Amendment, by its very terms, prohibits only state action."); *see also Developments in the Law – State Action and the Public/Private Distinction*, 123 HARV. L. REV. 1248, 1255 (2010) ("The state action doctrine establishes a threshold requirement for judicial consideration of constitutional claims and congressional enforcement of constitutional rights: absent some action on the part of a state entity, the doctrine holds, there can be no constitutional violation.").

True enough, however, private parties can act under color of state law in specific instances in which "they willfully participate in joint action with state officials to deprive others of constitutional rights," Compl. ¶ 2. But Plaintiffs do not allege that DNC might have acted in "joint action" with state officials. Plaintiffs only make the conclusory claim that DNC is part of some ill-defined conspiracy involving "the federal government and in particular, the Biden Administration, aided and abetted by the 'mainstream media.'" Compl. ¶ 3.[7]

---

[6] Plaintiffs' complaint contains one conclusory throwaway comment that DNC's leadership is controlled by President Biden and other federal agencies but does not – and cannot – allege any facts to support that statement. Compl. ¶ 9.]

[7] *See also id.* at ¶ 7 (claiming, without explanation that, "the DNC actively participated in making [the Censorship Scheme] happen in conspiracy and collusion with the federal government, Biden Administration, the 'mainstream media,' including the internet platform and internet retailer defendants herein, other long-standing traditional Democratic Party stalwarts and allies like the defendant teachers unions and

Plaintiffs do not allege any ways in which DNC conspired with the state to deprive Plaintiffs of their constitutional rights. This utter lack of specificity is plainly insufficient to satisfy Plaintiffs' burden in alleging a conspiracy under Section 1983. *See Burns*, 883 F.2d at 821.

### 2. Plaintiffs fail to state a Civil Rights Act claim.

Plaintiffs fail to state a claim under the Civil Rights Act (Count 2) for the same reason that they fail to state a claim under the First Amendment: Plaintiffs do not (and cannot) allege that DNC is a state actor or otherwise acted under color of state law. *See* Civil Rights Act of 1964 § 101, Pub. L. No. 88-352, 78 Stat. 241 (1964) (applying to a "person acting under *color of law*") (emphasis added). DNC is a private entity. *See* discussion *supra* Section 1; 52 U.S.C. § 30101(14). And, again, Plaintiffs fail to allege sufficient facts to support a claim of conspiracy. *Burns*, 883 F.2d at 821.

### 3. Plaintiffs fail to state a California Unruh Act Claim.

Finally, Plaintiffs fail to state a claim under California's Unruh Act (Count 3), because Plaintiffs do not (and cannot) allege facts that render DNC a "business establishment" subject to the Unruh Act.[8]

Under the Unruh Act, "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their sex, race, color, religion, ancestry, national

---

school board association named as defendants herein and most importantly, the DNC's and Democratic Party's leadership, to suppress and censor disfavored speakers, viewpoints and content on social media platforms and/or barred them from the public square by falsely labeling content 'dis-information,' 'misinformation,' and 'mal-information'").

[8] Plaintiffs also do not allege any protected status that would avail them to the protections of California's Unruh Act, but since the Unruh Act does not apply to DNC, DNC leaves that argument for the other Defendants to raise.

origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

The Act was "enacted to prohibit discriminatory conduct by individual proprietors and private entities offering goods and services to the general public." *Thurston v. Omni Hotels Mgmt. Corp.*, 284 Cal. Rptr. 3d 341, 346 (2021), *review denied* (Dec. 22, 2021) (citations omitted).

The Act applies "only where an entity's activities reasonably could be found to constitute a *business establishment*." *Brennon B. v. Super. Ct. of Contra Costa Cnty.*, 513 P.3d 971, 980 (Cal. 2022) (citations and internal quotation marks omitted). The determination "of what constitutes a 'business establishment' . . . focuse[s] on attributes – performing business functions, protecting economic value, operating as the functional equivalent of a commercial enterprise, etc." *Id*. at 982 (explaining that "[e]ducating students is a task that is fundamentally different from what could fairly be described as 'regular business transactions'" (citation omitted)).

Plaintiffs do not allege that DNC is a "business establishment" within the relevant meaning of the term, nor could they. DNC is a political party organization established under the Federal Election Campaign Act. *See* 52 U.S.C. § 30101(14). And under California Supreme Court precedent, entities like DNC are not properly subject to the Unruh Act. *See, e.g.*, *Harrison v. City of Rancho Mirage*, 243 Cal. App. 4th 162, 173 (2015) (finding organization "was not a business establishment based on its [status as a] charitable, expressive and social organization," and because its "formation and activities are unrelated to the promotion or advancement of the economic or business interests of its members").

That the DNC conducts limited business transactions with the public—like virtually any other organization of any kind—does not change the conclusion that it is

not properly subject to the Unruh Act. *See Randall v. Orange County Council*, 17 Cal. 4th 736, 744 (1998) ("Despite the organization's limited business transactions with the public, defendant does not sell the right to participate in the activities it offers to its members" and is not "within the purview of California's public accommodation statute."). Because Plaintiffs do not allege sufficient facts to state a claim that DNC is subject to the Unruh Act, Plaintiffs fail to state a claim under Count 3.

Even if Plaintiffs' Unruh Act claim had any merit as to DNC (and it does not), this Court should not maintain supplemental jurisdiction over Count 3 if it dismisses Counts 1 and 2. Under 28 U.S.C. § 1367(a), a federal district court has "supplemental jurisdiction over all other claims that are so related to claims" that the court has original jurisdiction over "that they form part of the same case or controversy."

This Court has the discretion to decline to exercise supplemental jurisdiction over a claim if the Court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety[,] including pendent state law claims.").

## C. Plaintiffs' complaint is insufficiently cogent under Rule 8.

The Complaint violates Rule 8 of the Federal Rules of Civil Procedure, because the long-winded, meandering Complaint and its non-specific allegations leave DNC guessing what Plaintiffs believe they did or why they might be liable to Plaintiffs.

Under Rule 8(a)(2), "a pleading that states a claim for relief must contain . . . a short and plain statement showing that the pleader is entitled to relief." The allegations of the pleading "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 8

ensures that the complaint "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted). A court can dismiss a complaint under Rule 8(a) where the complaint is so "verbose, confused, and redundant that its true substance, if any, is well disguised." *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969).

On that basis, if ever there was a complaint that violated Rule 8, it is this one. In its hodgepodge of recycled language, the complaint includes factual allegations as to parties which have nothing to do with this litigation. *E.g.*, Compl. ¶¶ 6, 19-20, 135-40, 141-50, 151-62. It fails to allege any specific actions taken by DNC other than supporting messaging with which Plaintiffs disagree. *See, e.g.*, Compl. ¶¶ 15, 22, 23. And Plaintiffs never make any factual allegations that might support a claim of conspiracy in any of their causes of action, despite their liberal sprinkling of the word "conspiracy" throughout their Complaint. *See e.g.*, Compl. ¶¶ 2, 7, 74. Plaintiffs cannot establish a conspiracy on the grounds that DNC advances and engages in speech with which Plaintiffs disagree, or that DNC has provided fundraising and other support for a President for whom Plaintiffs clearly did not vote. Plaintiffs' complaint contains nothing more than these vague generalities. *E.g.*, Compl. ¶¶ 72–74, 79, 382.

## D.   The Court should dismiss the Complaint with prejudice.

When an amendment would be "futile"—as it would here—the Court can dismiss the complaint with prejudice and without giving leave to amend. *Eminence Capital LLC v. Aspeon Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (holding dismissal with prejudice and without leave to amend is appropriate when "it is clear . . . that the complaint could not be saved by amendment"). Giving leave to amend here would be futile because, regardless of the changes Plaintiffs may make to the Complaint, this Court will not be able to trace Plaintiffs' claimed harms to DNC, and it will not be able to redress Plaintiffs' claimed harms with a favorable decision against DNC. To

render Plaintiffs' allegations traceable to DNC and redressable by a favorable decision from this Court against this Defendant, certain immutable facts would have to change: DNC would need to control social-media companies and control voting. Because these facts will not change, the Court should not give Plaintiffs the opportunity to waste more of the Court's time by filing an amended complaint. The same is true of Plaintiffs' allegations on the merits, which are devoid of any sufficiently specific factual allegations as to DNC.

**IV. Conclusion**

 For the foregoing reasons, the Court should dismiss this action against DNC in its entirety with prejudice.

Dated: April 26, 2023    Respectfully submitted,

           KAUFMAN LEGAL GROUP, APC

           By*: /s/ Stephen J. Kaufman*
           Stephen J. Kaufman
           Gary S. Winuk

           Attorneys for Defendant
           *DNC Services Corporation*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant DNC Services Corporation certify that this brief contains 5,361 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 26, 2023                    KAUFMAN LEGAL GROUP, APC


                                         By: */s/ Stephen J. Kaufman*
                                         Stephen J. Kaufman
                                         Gary S. Winuk

                                         Attorneys for Defendant
                                         *DNC Services Corporation*

DEFENDANT DNC'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS