MCGUIREWOODS LLP
Tanya L. Greene (SBN 267975)
355 S. Grand Avenue, Suite 4200
Los Angeles, California 90071-3103
Telephone: (213) 457-9879
Facsimile:  (213) 457-9899
E-Mail: tgreene@mcguirewoods.com

MCGUIREWOODS LLP
Jonathan Y. Ellis (*Admitted Pro Hac Vice*)
501 Fayetteville Street, Suite 500
Raleigh, North Carolina 27601
Telephone: (919) 755-6688
Facsimile:  (919) 755-6588
E-Mail: jellis@mcguirewoods.com

Attorneys for X Corp., successor in interest to named defendant Twitter, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD JACKSON, JULIE BRIGGS, and GREGG BUCHWALTER, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TWITTER, INC., a Delaware corporation; GOOGLE, LLC, a limited liability company; ALPHABET, INC., a Delaware corporation; META PLATFORMS, INC., a corporation doing business as "META" and "FACEBOOK, INC."; INSTAGRAM, INC., a Delaware corporation; AMAZON INC., a Delaware corporation; YOUTUBE INC., a Delaware corporation; APPLE, INC., a Delaware corporation; AMERICAN FEDERATION OF TEACHERS; NATIONAL EDUCATION ASSOCIATION; NATIONAL SCHOOL BOARD ASSOCIATION; DNC SERVICES CORPORATION, a corporation doing business nationwide as, "THE DEMOCRATIC NATIONAL COMMITTEE" OR "DNC,"<br><br>Defendants. | CASE NO. 2:22-cv-09438-AB (MAA)<br><br>**X CORP., SUCCESSOR IN INTEREST TO NAMED DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE CLASS ACTION CLAIMS AND ALLEGATIONS**<br><br>Date:      June 9, 2023<br>Time:      10:00 a.m.<br>Crtrm:     7B<br><br>Complaint Filed:  December 29, 2022 |

1

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 9, 2023 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7B of the above-captioned Court, located at 350 West First Street, Los Angeles, CA 90012, X Corp., successor in interest to named defendant Twitter, Inc. ("Twitter") will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D), to strike Plaintiffs Richard Jackson, Julie Briggs, and Gregg Buchwalter's ("Plaintiffs") class action claims and allegations against Twitter in Plaintiffs' Complaint. Specifically, Twitter moves for an order striking the class action claims and allegations from the Complaint, including but not limited to the following:

1. The "Class Action Allegations" section, starting at paragraph 83 and ending at paragraph 95;

2. All paragraphs seeking to recover on behalf of the putative class, including paragraphs 38, 60, 382, 384-391, 393, 397-401, and 404;

3. All paragraphs referencing the "Putative Class" or the "Class," including paragraphs 16, 30, 31, 34-37, 47, 57, 58, and 79;

4. Prayer for relief Paragraphs 1-6.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the pleadings, records and files in this action, and upon such further oral or documentary evidence and argument as may be presented at or before the hearing and any other matter the Court may deem appropriate.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 20, 2023.

Dated: April 26, 2023          MCGUIREWOODS LLP

By: /s/ Tanya L. Greene
Tanya L. Greene
Attorneys for X Corp., successor in interest
to named defendant Twitter, Inc.

# **TABLE OF CONTENTS**

Page(s)

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 3

I.    INTRODUCTION ..................................................................... 3

II.   FACTUAL BACKGROUND .................................................. 5

    A.   Plaintiffs Allege Three Different and Distinct Censorship Schemes ................................................................................ 5

        i.    Purported Internet Platform Censorship Scheme ............. 6

        ii.   Purported Retail Censorship Scheme ............................... 7

        iii.  Purported Education Censorship Scheme ......................... 7

    B.   Plaintiffs' Putative Class Action .................................................. 8

    C.   Allegations Regarding Class Representatives ............................. 9

III.  STANDARD OF REVIEW ...................................................... 9

IV.  LEGAL ARGUMENT .......................................................... 11

    A.   The Putative Class is an Improper Fail-Safe Class ................... 12

    B.   Plaintiffs Do Not and Cannot Satisfy the Requirements of Rule 23(a) ................................................................................ 13

        i.    The Proposed Class Is Not Ascertainable ...................... 13

        ii.   The Class Representatives' Claims Are Not Typical of the Putative Class ......................................................... 16

        iii.  The Case Does Not Turn on a Common Question of Law or Fact ..................................................................... 18

    C.   Plaintiffs Do Not and Cannot Satisfy Any of the Rule 23(b) Requirements ................................................................... 19

        i.    The Proposed Class Does Not Meet the Requirements of Rule 23(b)(3) ....................................... 20

        ii.   The Proposed Class Does Not Meet the Requirements of Rule 23(b)(2) ....................................... 21

V.   CONCLUSION ..................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.M. San Bernardino County Superintendent of Schools*, No. EDCV 19-1944 PSG (KKx), 2020 WL 5775169 (C.D. Cal. July 17, 2020) ................ 17

*Algarin v. Maybelline, LLC*,
300 F.R.D. 444 (S.D. Cal. 2104) ........................................................ 15

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*,
No. CV 15-00153 BRO SPX, 2015 WL 1266787 (C.D. Cal. Mar. 18, 2015) ........................................................................................ 10

*Carpenter v. PetSmart, Inc.*,
441 F. Supp. 3d 1028 (S.D. Cal. 2020) ................................................ 10

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. Jan. 21, 2015) .................................... 11

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .............................................................................. 20

*Dixon v. Monterey Fin. Servs. Inc.*,
No. 15-CV-03298, 2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) ............. 12, 13

*Escalante v. Cal. Physicians' Serv.*,
309 F.R.D. 612 (C.D. Cal. 2015) ........................................................ 20

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ....................................................... 11, 16, 17, 18

*Gonzalez v. Proctor & Gamble Co.*,
247 F.R.D. 616 (S.D. Cal. 2007) ........................................................ 17

*Guzman v. Bridgepoint Educ., Inc.*,
No. 11-CV-69 WQH (WVG), 2013 WL 593431 (S.D. Cal. Feb. 13, 2013) ................................................................................................ 11

*Hartranft v. Encore Cap. Grp., Inc.*,
No. 3:18-CV-01187-BEN-RBB, 2021 WL 2473951 (S.D. Cal. June 16, 2021) ............................................................................................ 10

*Jabbari v. Farmer*,
965 F.3d 1001 (9th Cir. 2020) ............................................................ 20

*Jackson v. Gen. Mills, Inc.*,
No. 18-CV-2634-LAB (BGS), 2019 WL 4599845 (S.D. Cal. Sept. 23, 2019) ............................................................................................ 10

*James v. Uber Tech. Inc.*,
338 F.R.D. 123 (N.D. Cal. 2021) ........................................................ 13

*Kamm v. Cal. City Dev. Co.*,
    509 F.2d 205 (9th Cir. 1975) ................................................................. 10

*La Mar v. H & B Novelty & Loan Co.*,
    489 F.2d 461 (9th Cir. 1973) ................................................................. 17

*Mantolete v. Bolger*,
    767 F.2d 1416 (9th Cir. 1985) ............................................................... 10

*Mazur v. eBay Inc.*,
    257 F.R.D. 563 (N.D. Cal. 2009) ........................................................... 14

*Mazza v. American Honda Motor Co., Inc.*,
    666 F.3d 581 (2012) .............................................................................. 8

*In re NJOY, Inc. Consumer Class Action Litig.*
    120 F. Supp. 3d 1050 (C.D. Cal. 2015) ................................................. 13

*Olean Wholesale Grocery Coop. Inc. v. Bumble Bee Foods LLC*,
    21 F.4th 651 (9th Cir. 2022) .......................................................... 12, 13

*Ramirez v. TransUnion LLC*,
    951 F.3d 1008 (9th Cir. 2020), *rev'd and remanded on other
    ground*s, 141 S. Ct. 2190 (2021) ........................................................... 5

*Randleman v. Fid. Nat'l Title Ins. Co.*,
    646 F.3d 347 (6th Cir. 2011) ................................................................. 12

*Route v. Mead Johnson Nutrition Co.*,
    No. CV 17-7530-GWJEMx, 2013 WL 658251 (C.D. Cal. Feb. 21,
    2013) ..................................................................................................... 11

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) .............................................. 10, 12

*Sandoval v. Ali*,
    34 F. Supp. 3d 1031 (N.D. Cal. 2014) ................................................... 16

*Sandoval v. Cnty. of Sonoma*,
    912 F.3d 509 (9th Cir. 2018) ................................................................. 16

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) ................................................. 15

*Stewart v. Kodiak Cakes, LLC*,
    No. 19-CV-2454-MMA (MSB), 2021 WL 1698695 (S.D. Cal. Apr.
    29, 2021) ............................................................................................... 11

*M.D. ex rel. Stukenberg v. Perry*,
    675 F.3d 832 (5th Cir. 2012) ................................................................. 21

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................. 10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..................................................................17, 18, 19, 21

*Wiener v. Dannon Co.*,
    255 F.R.D. 658 (C.D. Cal. 2009)........................................................... 11

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
    80 F. Supp. 3d 610 (E.D. Pa. 2015).......................................................... 15

**Statutes**

42 U.S.C. § 1983.......................................................................................... 8

Ala. Code § 17-6-34 .................................................................................... 14

California Unruh Civil Rights Act............................................................... 8

Federal Civil Rights Act of 1964 ............................................................... 8

**Constitutions**

Cal. Const. Article II, § 7 ........................................................................... 14

Idaho Const. Article VI, § 1........................................................................ 14

Mo. Const. Article VIII, § 3 ....................................................................... 14

**Rules**

Fed. R. Civ. P. 12(f)..................................................................................... 10

Fed. R. Civ. P. 23.................................................................................9, 10, 12, 13

Fed. R. Civ. P. 23(a) ...............................................................11, 13, 16, 18, 19, 20

Fed. R. Civ. P. 23(a)(3) ............................................................................... 18

Fed. R. Civ. P. 23(b).............................................................................. 19, 20

Fed. R. Civ. P. 23(b)(1)(A).................................................................... 11, 20

Fed. R. Civ. P. 23(b)(1)(B).................................................................... 11, 20

Fed. R. Civ. P. 23(b)(2) .................................................................... 11, 20, 21

Fed. R. Civ. P. 23(b)(3) ........................................................................ 12, 20

Fed. R. Civ. P. 23(d)(1)(D)......................................................................... 10

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

X Corp., successor in interest to named defendant Twitter, Inc. ("Twitter") understands that motions to strike class allegations at this early stage are rarely granted, but if there were ever a case that warranted such a motion, this is the case. Plaintiffs Richard Jackson, Julie Briggs, and Gregg Buchwalter ("Plaintiffs") seek to represent:

> *More than 72 million registered Republicans nationwide* – referred to by President Biden and some unenlightened Democrats as "MAGA Republicans" - *who voted for someone other than President Biden* and *suffered and will continue to suffer irreparable harm by the Censorship Scheme alleged herein* and in particular, the Defendants' and Biden Administration's past and current suppression and censorship of the opinions and viewpoints of conservative-leaning speakers and/or MAGA Republicans who choose to dispute, disagree or challenge Democratic Party policies, dogma and propaganda.

Compl. ¶ 85 (emphasis added).

To begin, Plaintiffs' class definition creates a classic improper fail-safe class. Plaintiffs have defined the class in terms that are central to the underlying merits of their claims.  In other words, even if the Court somehow manages to identify some subset of Republicans who *might* be part of the class, it could only make a final determination of who is in the class after it has determined the merits of Plaintiffs' claims—namely, that the alleged "Censorship Scheme" (*i.e.*, "the Defendants' and Biden Administration's past and current suppression and censorship of the opinions and viewpoints of conservative-leaning speakers and/or MAGA Republicans") has caused and will continue to cause "irreparable harm" to this subset of Republicans. As such, class members cannot be defined until the case is resolved on the merits.

Plaintiffs' class definition also suffers from obvious ascertainability problems. In order to identify members of Plaintiffs' class, this Court would first have to identify the "72 million registered Republicans nationwide" and then determine

3

whether they voted for "someone other than President Biden." Even if this task was possible—which it generally is not given the secrecy of voting ballots—the Court would then have to determine which of these individuals have "suffered and will continue to suffer irreparable harm by the Censorship Scheme." In other words, the trier-of-fact would need to conduct individualized inquiries into whether each proposed class member has suffered irreparable harm from "the Censorship Scheme" alleged in the Complaint.

The failures of this class definition are particularly striking where, even *after* a merits determination, this Court would still be left with a class that would be fatally overbroad as to Twitter (and likely many of the other Defendants). It is implausible that all 72 million registered Republicans who voted for someone other than President Biden suffered irreparable harm due to any actions taken by Twitter. Plaintiffs themselves fail to allege facts sufficient to show that they have suffered harm from any one of these schemes, and notably fail to allege that they or any of the putative class members are users of Twitter. On the contrary, Plaintiffs specifically allege only 23% of U.S. adults use Twitter. Compl. ¶ 129. Plaintiffs' claims against Twitter should be dismissed on these grounds alone but if they are not, Plaintiffs certainly should not be permitted to represent a class against Twitter that includes non-Twitter users.[1]

Moving beyond the deficiencies presented by the class definition on its face, as pled, commonality and typicality are lacking on the face of the Complaint because Plaintiffs seek to represent three distinct groups of individuals. As further described below, Plaintiffs allege three different censorship schemes by three different sets of defendants in three different industries: (1) censorship of posts and content by the

---

[1] As explained in the concurrently filed Motion to Dismiss, because Plaintiffs have not alleged that they were harmed by the alleged schemes, they lack Article III standing.

internet platform defendants; (2) censorship of books, movies, audios and other media by the retail defendants; and (3) censorship of parents' complaints by the education defendants in the school system.  Where the Complaint asserts claims based on three different censorship schemes, it is impossible for the proposed class members to all have claims that arise "from the same event or practice or course of conduct."  *See Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020), *rev'd and remanded on other ground*s, 141 S. Ct. 2190 (2021).  As a result, it is implausible that Plaintiffs have claims in common with the rest of the class, and even the putative class members here necessarily have claims that are not common among the class.

Finally, because this case involves three separate censorship schemes, numerous different defendants, and countless instances of censorship, proving liability as to each class member will require individualized inquiries which will far predominate over any common questions presented.

Because the deficiencies in Plaintiffs' class allegations are apparent on their face, the Court need not wait for class certification to strike Plaintiffs' class allegations.  No amount of time or discovery will fix these deficiencies.  Accordingly, Twitter respectfully requests that the Court strike all class allegations and claims without leave to amend.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs Allege Three Different and Distinct Censorship Schemes.

The crux of Plaintiffs' Complaint is that the Democratic National Committee, federal government, and President Biden's campaign and administration "colluded with and/or coerced" the various named defendants to censor Republican and conservative viewpoints in order to "frame[] the narrative for public discourse," create a "one-party dogma and rule," and "stif[le] conservative voices, viewpoints and opinions to frame the public 'narrative' in a way that mirrors only the Democratic Party and DNC party line only." Compl. ¶¶ 3, 23-24.  Given the number

5

of named defendants, Plaintiffs attempt to allege at least three separate censorship schemes—which notably involve different conduct, different content, and inevitably different harm—to support their tenuous allegations. Specifically, as further discussed below, Plaintiffs' allegations involve an internet platform censorship scheme, a retail censorship scheme, and an education censorship scheme. Only the purported internet platform censorship scheme is alleged against Twitter. *See generally* Compl.

### i. Purported Internet Platform Censorship Scheme.

First, Plaintiffs allege that Twitter, along with defendants Google, LLC, Alphabet, Inc., and YouTube, Inc., (collectively, "Google"), Meta Platforms, Inc., a corporation doing business as "Meta" and "Facebook, Inc., and Instagram, Inc., (collectively, "Meta") (together with Twitter and Google, the "Internet Platform Defendants"), engaged in a censorship scheme in which they labeled certain content as "dis-information, "misinformation," and/or "mal-information," and then suppressed or censored such content in order to "affect the election's outcome in favor of the Democrats." Compl. ¶ 140. Specifically, the Internet Platform Defendants allegedly censored posts related to the "Hunter Biden laptop story," the lab-leak theory of COVID-19's origin, the efficacy of mask mandates and COVID-19 lockdowns, and the security of voting by mail so that Democratic viewpoints were predominantly available on these topics. Compl. ¶¶ 134-168.

Plaintiffs allege that this censorship infringed on their rights to "freedom of expression" and freedom "to be exposed to free expression on such platforms." Compl. ¶ 169. Plaintiffs contend that the Internet Platform Defendants were able to perpetrate this alleged censorship by terminating speakers' accounts, imposing warnings about disfavored speech, "shadow banning" speakers, "demonetizing" content, adjusting algorithms to suppress speakers, placing warning labels on content, and otherwise suppressing or censoring content. Compl. ¶ 132. However, notably, there are no allegations that Plaintiffs or the putative class members' posts

were censored by the Internet Platform Defendants—much less Twitter specifically—or that Plaintiffs or the putative class members even had Twitter accounts. *See generally* Compl.

### ii.   Purported Retail Censorship Scheme.

Second, Plaintiffs allege that defendants Apple, Inc. and Amazon, Inc. (collectively, the "Retail Defendants"), refused to distribute books, articles, movies, audios, and other media that was written or published by conservative or disfavored speakers. Compl. ¶ 5. Plaintiffs further allege that the Retail Defendants denied "authors and publishers the right to distribute and publish and sell their publications on the internet retailer platforms." Compl. ¶ 78. Although Plaintiffs do not clearly identify the specific harm caused by the Retail Defendants, it appears that the purported harm is premised on the right of the Plaintiffs and putative class members to purchase the allegedly censored media. *See generally* Compl.

### iii.   Purported Education Censorship Scheme.

Third, Plaintiffs allege that defendants American Federation of Teachers, National Education Association, and National School Board Association (collectively, the "Education Defendants"), stifled and suppressed complaints from concerned parents about their student's curriculum or COVID-19 policies at schools. Compl. ¶ 6. Specifically, Plaintiffs contend that the Education Defendants allegedly censored complaints related to concerns about teaching "critical race theory" and "highly sexualized matters" in schools without the knowledge or consent of parents. *Id.* They also contend that the Education Defendants censored complaints involving the closures of schools due to the COVID-19 pandemic. *Id.*

The Education Defendants allegedly perpetrated this censorship scheme through public school board meetings and in communications with teachers' unions. Compl. ¶ 14. Plaintiffs contend this alleged censorship violated *parents'* first amendment rights by suppressing their complaints. Compl. ¶ 6.

### B.      Plaintiffs' Putative Class Action.

Plaintiffs bring this putative class action against Twitter and the other eleven defendants on behalf of themselves and the 72 million registered Republicans in the United States based on the tenuous censorship schemes described above.  Compl. ¶ 85.  As referenced above, Plaintiffs seek to represent the following class:

> More than 72 million registered Republicans nationwide – referred to by President Biden and some unenlightened Democrats as "MAGA Republicans" - who voted for someone other than President Biden and suffered and will continue to suffer irreparable harm by the Censorship Scheme alleged herein and in particular, the Defendants' and Biden Administration's past and current suppression and censorship of the opinions and viewpoints of conservative-leaning speakers and/or MAGA Republicans who choose to dispute, disagree or challenge Democratic Party policies, dogma and propaganda."

Compl. ¶ 85.

On these grounds, Plaintiffs assert the following causes of action against all defendants: (1) violation of 42 U.S.C. §1983 (First Amendment; Censorship and Suppression of Protected Speech); (2) violation of Federal Civil Rights Act of 1964 (Election Interference); (3) violation of the California Unruh Civil Rights Act[2]; (4) injunctive relief; and (5) declaratory relief.  *See generally* Compl.  Plaintiffs seek relief under each cause of action on behalf of themselves and the putative class, including general damages, statutory damages, injunctive relief, declaratory relief, and attorney's fees and costs.  *Id.* at Prayer.  As discussed in the concurrently filed Joint Motion to Dismiss submitted by Twitter, Meta, and Google (the "Motion to

---

[2] Plaintiffs cannot represent a nationwide class in respect to a California Unruh Civil Rights Act claim. Plaintiffs seem to acknowledge this and assert the claim on behalf of only California residents, but do not properly define a subclass to do so. Thus, to the extent the claim is plead on behalf of the nationwide class, the nationwide class allegations regarding this claim should be stricken.  *See Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (2012).

Dismiss"), Plaintiffs fail to sufficiently allege any of these claims against Twitter or that they are entitled to such relief.  Moreover, as set forth herein, the Complaint itself illustrates that Plaintiffs cannot maintain a class action, and thus their class allegations should be stricken at the outset as a result.

### C.    Allegations Regarding Class Representatives.

Plaintiffs provide identical summaries regarding each of the named Plaintiffs. Compl. ¶¶ 57-59.  Indeed, each named Plaintiff—Richard Jackson, Julie Briggs, and Gregg Buchwalter—was allegedly a registered Republican with conservative viewpoints who consider themselves a "MAGA Republican." *Id.*  Each generically alleges that they were harmed by the defendants' various purported censorship schemes by contending they were and continue to be "deprived of [their] First Amendment rights as a result of the Censorship Scheme and in particular, ha[ve] been unconstitutionally burdened by Defendants' continuing unlawful censorship and suppression of conservative or 'disfavored' viewpoints and what [they] choose[] to read, see, say or hear in the public square." *Id.*

Notably, aside from these vague contentions, there are no specific allegations regarding how Plaintiffs were purportedly harmed.  *See generally* Compl.  Indeed, there are no allegations indicating that Plaintiffs themselves had speech censored or that they did not otherwise have access to the information that was supposedly censored by defendants.  *Id.*  Moreover, there are no allegations supporting that Plaintiffs were users of any of the Internet Platform Defendants' platforms, a purchaser of any of the Retail Defendants, or a parent who expressed complaints related to their child's education, *much less users of Twitter in particular*.  *Id.*  Thus, there are no allegations that any named Plaintiff was actually harmed by any of the alleged censorship schemes, or specifically, that they were harmed by Twitter.  *Id.*

## III.   STANDARD OF REVIEW

The Ninth Circuit has long recognized that the "plaintiff bears the burden of advancing a *prima facie* showing that the class action requirements of Fed. R. Civ.

P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *see also Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975). If Plaintiffs cannot make a *prima facie* showing that certification is appropriate, the trial court has discretion to dismiss the class allegations before commencing discovery. *Mantolete*, 767 F.2d at 1424. "It is thus appropriate to strike class allegations prior to discovery where the allegations make it obvious that classwide relief is not available." *Am. W. Door & Trim v. Arch Specialty Ins. Co.*, No. CV 15-00153 BRO SPX, 2015 WL 1266787, at *20 (C.D. Cal. Mar. 18, 2015); s*ee also Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) ("[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery.")

Further, Rule 23(d)(1)(D) provides that the Court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23. "Thus, the court may strike class allegations if the complaint plainly reflects that a class action cannot be maintained." *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1032 (S.D. Cal. 2020) (internal quotations omitted); *See also Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) (stating that under Rules 12(f) and 23(d)(1)(D), a court "has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained.")

A Rule 12(f) motion to strike is meant to avoid the expenditure of time and money that arises from litigating spurious issues by dispensing with those issues prior to trial. *Hartranft v. Encore Cap. Grp., Inc.*, No. 3:18-CV-01187-BEN-RBB, 2021 WL 2473951, at *6 (S.D. Cal. June 16, 2021); *Jackson v. Gen. Mills, Inc.*, No. 18-CV-2634-LAB (BGS), 2019 WL 4599845, at *2 (S.D. Cal. Sept. 23, 2019). The Supreme Court explained that it is sometimes possible to determine from the pleadings alone that the requirements of commonality, typicality and adequacy

10

cannot possibly be met, and in such cases, striking class allegations before commencing discovery is appropriate. *Guzman v. Bridgepoint Educ., Inc.*, No. 11-CV-69 WQH (WVG), 2013 WL 593431, at *7 (S.D. Cal. Feb. 13, 2013) *citing Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Courts often reason it is appropriate to strike class allegations that are deficient on their face at the pleading stage to avoid the unnecessary burden of class discovery. Where, as here, "the matter is sufficiently obvious from the pleadings, a court may strike class allegations" from the pleadings with no class discovery. *Route v. Mead Johnson Nutrition Co.*, No. CV 17-7530-GWJEMx, 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013); *see also Stewart v. Kodiak Cakes, LLC*, No. 19-CV-2454-MMA (MSB), 2021 WL 1698695, at *7 (S.D. Cal. Apr. 29, 2021) (quoting *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. Jan. 21, 2015)).

## IV.   LEGAL ARGUMENT

In order to maintain a class action, Plaintiffs must show that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; *and* (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). If one of these elements is not met, a class action cannot be maintained. *Id.*; *Wiener v. Dannon Co.*, 255 F.R.D. 658, 664 (C.D. Cal. 2009). Additionally, Plaintiffs must show that there is a risk of prejudice from separate actions establishing incompatible standards of conduct (Fed. R. Civ. P. 23 (b)(1)(A)), that judgments in individual lawsuits would adversely affect the rights of other members of the class (Fed. R. Civ. P. 23(b)(1)(B)), that the party opposing the class has acted or refused to act in a manner applicable to the class generally, thereby making injunctive or declaratory relief appropriate with respect to the class as a whole (Fed. R. Civ. P. 23(b)(2)), or that the questions of law or fact common to the class "predominate" over questions affecting the individual members and, on balance, a

1  class action is superior to other methods available for adjudicating the controversy
2  (Fed. R. Civ. P. 23(b)(3)).

3      Where the complaint demonstrates that the requirements of Rule 23 *cannot be*
4  *met*—as is the case here—the class allegations may be stricken.  *See Sanders*, 672
5  F. Supp. 2d at 990; *see supra*, Section III.  As discussed in detail below, the
6  Complaint clearly shows the uncurable defects with Plaintiffs' class allegations so
7  as to warrant them being stricken at this stage in the litigation.

8          **A.      The Putative Class is an Improper Fail-Safe Class.**

9      As an initial matter, the class definition is a "fail-safe" class, which is woefully
10  improper.  A fail-safe class is a "way of labeling the obvious problems that exist
11  when the class itself is defined in a way that precludes membership unless the
12  liability of the defendant is established."  *Dixon v. Monterey Fin. Servs. Inc.*, No.
13  15-CV-03298, 2016 WL 4426908, at *1 (N.D. Cal. Aug. 22, 2016) (noting class is
14  fail-safe where class definition is "one that determines the scope of the class only
15  once it is decided that a class member was actually wronged"); *see also Olean*
16  *Wholesale Grocery Coop. Inc. v. Bumble Bee Foods LLC*, 21 F.4th 651, 669 n.14
17  (9th Cir. 2022) (stating that a court may not create a fail-safe class "that is defined
18  to include only those individuals who were injured by the allegedly unlawful
19  conduct"); *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)
20  (improper fail-safe class exists where "[e]ither class members win or, by virtue of
21  losing, they are not in the class, and, therefore, not bound by the judgment").  Here,
22  Plaintiffs define the class in a way in which the merits of their claims must first be
23  determined.  In addition to the significant issues and overbreadth with the scope of
24  the class definition—over 72 million registered Republicans nationwide, which is
25  further discussed below—class members ultimately could only be determined after
26  a decision on the merits has been made.  Indeed, the purported class members include
27  those that the alleged "Censorship Scheme" (*i.e.*, "the Defendants' and Biden
28  Administration's past and current suppression and censorship of the opinions and

12

viewpoints of conservative-leaning speakers and/or MAGA Republicans") has caused and will continue to cause "irreparable harm" to said Republicans. Compl. ¶ 85. Since the class definition includes only those that were harmed by the alleged "Censorship Scheme," the definition "determines the scope of the class only once it is decided that a class member was actually wronged" (*Dixon*, 2016 WL 4426908, at *1), which improperly requires such a determination to be made before the merits of the case have been adjudicated. Particularly, where each claim here is premised on the putative class members' deprivation of a right to view or express speech, only those who were actually deprived of that right can be said to have been harmed by the alleged "Censorship Scheme," and thus, only those who were deprived of that right could be members of the putative class. *See Olean Wholesale Grocery Coop. Inc.*, 31 F.4th at 669 n.14. Accordingly, the putative class is an impermissible fail-safe class and should be stricken as a result. *See Dixon*, 2016 WL 4426908, at *1.

## B.   Plaintiffs Do Not and Cannot Satisfy the Requirements of Rule 23(a).

### i.   <u>The Proposed Class Is Not Ascertainable.</u>

As referenced above, Plaintiffs propose a nationwide class of over 72 million Republicans who voted for someone other than President Biden and who were harmed by the alleged censorship schemes described above. Compl. ¶ 85. However, the proposed class is not sufficiently ascertainable. "Although not specifically mentioned in Rule 23, plaintiffs must, in addition to showing numerosity, commonality, typicality and adequacy, demonstrate that the members of the class are ascertainable." *In re NJOY, Inc. Consumer Class Action Litig.* 120 F. Supp. 3d 1050, 1091 (C.D. Cal. 2015). In order to satisfy the ascertainability requirement, the class definition must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *James v. Uber Tech. Inc.*, 338 F.R.D. 123, 130 (N.D. Cal. 2021).

As an initial matter, the class definition as stated in the Complaint is entirely unclear and references many groups of people.  Where the definition is imprecise and not clearly identifiable, it is not ascertainable.  *See, e.g.*, *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).  The definition purports to include: (1) "more than 72 million registered Republicans,"; (2) those referred to by President Biden as "MAGA Republicans,"; (3) those who voted for someone other than President Bident; (4) those referred to as "MAGA Republicans; and (5) "conservative-leaning speakers and/or MAGA Republicans who choose to dispute, disagree or challenge Democratic Party policies, dogma and propaganda" who have allegedly had their opinions and viewpoints suppressed and censored.  Compl. ¶ 85.  These varying groups clearly include different sets of people.  Indeed, for example, not all Republicans are "MAGA Republicans," and not all Republicans voted for someone other than President Biden.  This overbroad and vague definition cannot stand.  A definition that is vague as to who could be included cannot be found to be ascertainable.

Second, as a practical matter, it would be *impossible* to determine class members based on state-by-state laws related to the secrecy of (1) an individual's registration as a Republican, and (2) who an individual voted for.  Where the putative class only includes registered Republicans who voted for someone other than President Biden, it is impossible to determine membership in the class without seeing these records.  However, most, if not all, states make an individual's ballot secret.  *See, e.g.*, Cal. Const. art. II, § 7; Idaho Const. art. VI, § 1; Ala. Code § 17-6-34; Mo. Const. art. VIII, § 3.  Thus, it is not feasible to identify members of the putative class.

Third, the proposed class is also not ascertainable because it refers to those who "suffered and will continue to suffer" harm by the "Censorship Scheme" without any clear indication of how said individuals were harmed.  As discussed above, this makes the putative class an improper fail-safe class, but it also makes it

14

impermissibly unascertainable.  *See Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 623 (E.D. Pa. 2015) ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.") (internal quotations omitted).  Given the three censorship schemes alleged, it would need to be determined that putative class members were users of one of the Internet Platform Defendants' platforms, a purchaser of a Retail Defendant, and/or a concerned parent who was affected by the Education Defendants, and harmed by the censorship of such information and/or products.  However, it is impossible to determine which putative class members would have seen or not seen the purported censored content, purchased or not the purported censored products, or was a parent impacted by the purported censorship of complaints in schools without individualized fact-finding of the millions of people identified in Plaintiffs' purported class.  Such an onerous requirement renders the putative class action impermissible.  Further, some of the registered Republicans who voted for someone other than President Biden may have simply not had a desire to see the allegedly censored information, or may have agreed with the decision to censor such information.  Yet another issue is presented by where the line is drawn on what specific pieces of information constitute "Democratic party policies, dogma, and propaganda."

Finally, the proposed class is impermissibly overbroad.  Courts have found that where a class includes those that were not damaged at all, it is not ascertainable.  *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 455 (S.D. Cal. 2104) (Because the proposed class includes these "uninjured" purchasers, the class is impermissibly overbroad and thus unascertainable."); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010) (finding a class not ascertainable where the definition includes persons who have not suffered any damages at all).  Here, the proposed class includes "more than 72 million registered Republicans" who have allegedly suffered from the "Censorship Scheme."  Compl. ¶ 85.  However, it is

15

implausible that 72 million people have suffered from any of the censorship schemes alleged here—the internet platform censorship scheme, the retail censorship scheme, or the education censorship scheme—let alone all three.  As such, given the vastness of the purported class, it is almost certain that it includes individuals that have not been injured by any of the censorship schemes at issue.

As it pertains to the Internet Platform Defendants in particular, including Twitter, to the extent Plaintiffs are contending that harm has been suffered because they were deprived access to information, there is no indication that this information was not otherwise readily available.  In fact, the Complaint itself states that only 23% of adults use Twitter, which alone shows that it is improbable, if not impossible, that all putative class members are Twitter users.  Compl. ¶ 129.  Where the alleged harm is based on the putative class members' inability to see certain posts *on Twitter*, only those who actually use Twitter can be found to have been harmed.  Thus, a class that fails to include only Twitter users must be found to be overbroad as to Twitter. *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1044 (N.D. Cal. 2014) (striking class action allegations where the proposed class was overbroad because it included class members who were not affected by the alleged wrongful conduct).

### ii. The Class Representatives' Claims Are Not Typical of the Putative Class.

The general rule for Rule 23(a) typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 518 (9th Cir. 2018).  The claims of the entire class need not be identical, but the class representatives must generally "possess the same interest and suffer the same injury" as the unnamed class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

Here, it is clear from the face of the Complaint that Plaintiffs are not typical of the 72 million putative class members. As noted above, Plaintiffs allege three different censorship schemes by three different sets of defendants in three different industries: (1) censorship of media posts and content by the Internet Platform Defendants; (2) censorship of books, movies, audios and other media by the Retail Defendants; and (3) censorship of parents' complaints by the Education Defendants in the school system. *See generally* Compl. However, Plaintiffs do not even allege that they are users of any of the Internet Platform Defendants, purchaser of the Retail Defendants, or that they are concerned parents whose complaints were suppressed by the Education Defendants, yet they seek to represent these three distinct groups of individuals. *Id.* Regardless, it is implausible that any of the named Plaintiffs, much less all three, have been harmed by: Twitter, Google, and Meta purportedly censoring information they would have otherwise accessed; Apple, Inc. and Amazon, Inc. not selling them conservative products; and being parents who the American Federation of Teachers, National Education Association, and National School Board Association censored complaints from. As such, they cannot be typical of the class as it is virtually impossible that one person could have been harmed by each defendants' conduct in a way that is representative of all 72 million purported class members.

More specifically as to Twitter, Plaintiffs cannot represent a putative class against Twitter when they do not allege they are Twitter users, which makes it inconceivable that they were even harmed at all by Twitter. *See La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 465 (9th Cir. 1973); *A.M. San Bernardino Cnty. Superintendent of Schools*, No. EDCV 19-1944 PSG (KKx), 2020 WL 5775169, at *5 (C.D. Cal. July 17, 2020) ("While Plaintiffs may 'have all suffered a violation of the same provision of law,' they have not demonstrated that they 'have suffered the same injury' at the hands of the same defendant") (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 449-50 (2011)); *Gonzalez v. Proctor & Gamble Co.*, 247

17

F.R.D. 616, 621-22 (S.D. Cal. 2007) (finding that named plaintiff did not satisfy the Rule 23(a)(3) typicality requirement where product plaintiff purchased was not one of the twenty-eight products subject to allegedly false hair strengthening claims). Finally, even as to the putative class members who were Twitter users, not all individuals would have been exposed to the same content but for the censorship scheme, and not all putative class members were harmed, because some were plausibly able to see the censored information elsewhere.   Accordingly, the Complaint on its face shows that Plaintiffs are not typical of the putative class.

### iii.   The Case Does Not Turn on a Common Question of Law or Fact.

Commonality is met through the existence of a "common contention" that is of such a nature that it is capable of classwide resolution in "one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Relief must "turn on questions of law applicable in the same manner to each member of the class." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982).   The commonality and typicality requirements of Rule 23(a) "tend to merge," because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 157 n.13 (1982).

As discussed above, Plaintiffs allege three separate censorship schemes: (1) a scheme perpetrated by the Internet Platform Defendants, in which each Internet Platform Defendant censored certain content on their webpages; (2) a scheme perpetrated by the Retail Defendants, in which each Retail Defendant refused to sell certain media; and (3) a scheme perpetrated by the Education Defendants, in which the Education Defendants censored and suppressed complaints by concerned parents.  To prove their claims against the Internet Platform Defendants, Plaintiffs would have to prove that specific posts were censored, that the censored content

included a Republican viewpoint, and that it was censored for the purpose of furthering the alleged "Censorship Scheme." Similarly, to prove their claims against the Retail Defendants, Plaintiffs would have to prove that the Retail Defendants refused to sell certain products, that the censored content included a Republican viewpoint, and that it was censored for the purpose of furthering the alleged "Censorship Scheme." Further, as to both the Internet Platform Defendants and the Retail Defendants, Plaintiffs would have to prove that each member of the putative class would have seen the information but for the censorship, and that they did not see the information elsewhere. Finally, to prove their claims against the Education Defendants, Plaintiffs would have to prove that they were concerned parents who attempted to make complaints related to the allegedly censored viewpoints, and that the Education Defendants stifled or suppressed said complaints. Moreover, after establishing all of the aforementioned issues for each censorship scheme, Plaintiffs would further have to prove that the censorship was wrongful, and that each defendant colluded with the Federal Government in censoring the various information. As such, numerous individualized inquiries would need to be made to establish the purported class. It is improbable that all 72 million class members— or even a substantial number of class members—were harmed by the same scheme, same defendant, and same censored information. Thus, this is not a case where the resolution of a common issue could resolve the case in "one stroke" as required. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350.

Because each alleged censorship scheme relies on different parties, different theories, and different facts, relief does not and cannot turn on any common question of fact.

## C.   Plaintiffs Do Not and Cannot Satisfy Any of the Rule 23(b) Requirements.

Since Plaintiffs' proposed class cannot satisfy the requirements of Rule 23(a) for the reasons discussed above, the Court need not analyze whether the putative

1 class could satisfy Rule 23(b). Nonetheless, Plaintiffs' proposed class also cannot
2 satisfy the requirements of Rule 23(b).[3]

3      **i.      The Proposed Class Does Not Meet the Requirements of**
4                **Rule 23(b)(3).**

5      Rule 23(b)(3) provides that a class action can be maintained if the court finds
6 that the questions of law or fact common to class members predominate over any
7 questions affecting only individual members, and that a class action is superior to
8 other available methods for fairly and efficiently adjudicating the controversy. "To
9 determine whether a class satisfies the requirement, a court pragmatically compares
10 the quality and import of common questions to that of individual questions." *Jabbari*
11 *v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020). Courts require that the class be
12 ascertainable under Rule 23(b)(3) as well. *Escalante v. Cal. Physicians' Serv.*, 309
13 F.R.D. 612, 621 (C.D. Cal. 2015).

14      Here, as discussed further in Section IV.B.iii, *supra*, this case does not turn
15 on *any* common questions of law or fact, let alone common questions that
16 predominate over individual questions. Rather, it is clear that Plaintiffs have alleged
17 three separate censorship schemes, involving numerous separate defendants and
18 countless individual instances of censorship. Individualized inquiries into each
19 instance of censorship, the reason for such censorship, and the defendant responsible
20 for the censorship, will far outnumber any common questions that may be presented
21 in this case. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (Rule 23(b)(3)'s
22 predominance criterion is even more demanding than Rule 23(a)).

23

24

25 [3] Plaintiffs do not allege which Rule 23(b) provision they will attempt to certify the
26 class under (*See* Compl. ¶¶ 83-95). Rule 23(b)(1)(A) and Rule 23(b)(1)(B) are not
alleged in the Complaint and also appear to be inapplicable to the instant matter. *See*
27 *generally* Compl. As such, Twitter solely discusses Rule 23(b)(2) and 23(b)(3)
herein.
28

Additionally, as discussed in Section IV.B.i, *supra*, the proposed class is not ascertainable.  The definition is vague and overbroad, and it requires individual determinations of harm to be made to define who is a class member.

### ii.   <u>The Proposed Class Does Not Meet the Requirements of Rule 23(b)(2).</u>

Rule 23(b)(2) provides that a class action can be maintained where the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *see also M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 847 (5th Cir. 2012) (finding that certification under Rule 23(b)(2) was improper where individualized issues "overwhelm[ed] class cohesiveness").

Here, Plaintiffs do not seem to allege the party opposing the putative class has acted or refused to act on grounds that apply generally to the putative class, such that injunctive or declaratory relief is appropriate. *See* Compl. ¶¶ 83-95.  But given the numerous defendants and overbroad class definition, it is clear that Twitter specifically has *not* acted on grounds that apply generally to the putative class as a whole.  As explained extensively in Section IV.B, *supra*, each class member was likely harmed by a different censorship scheme, a different individual defendant, and a different specific instance of censorship.  Thus, there is not one type of injunctive or declaratory relief that would be appropriate for the putative class as a whole given the various differing censorship theories at play.  *See Wal-Mart Stores, Inc.*, 564 U.S. at 360; *M.D. ex rel. Stukenberg*, 675 F.3d at 847.

1    For these additional reasons, a class action is not proper and Plaintiffs' class
2    allegations should be stricken as a result.

3    **V.    CONCLUSION**

4    For the forgoing reasons, this Court should strike Plaintiffs' flawed class
5    allegations.  In cases like this, where the class definition sets forth an improper
6    textbook fail-safe class, the named representatives cannot possibly represent all the
7    class members due to commonality and typicality issues, and numerous
8    predominating individualized issues are apparent on the face of the Complaint, it is
9    appropriate to strike or dismiss class allegations before the parties engage in
10   protracted, expensive, and duplicative discovery.  Accordingly, Twitter respectfully
11   requests that the Court do so here.

13   DATED: April 26, 2023                    MCGUIREWOODS LLP

15                                            By: /s/ Tanya L. Greene
16                                                Tanya L. Greene
17                                                Attorneys for X Corp., successor in
                                                  interest to named defendant Twitter, Inc.

1

**CERTIFICATE OF COMPLIANCE**

2

3

    The undersigned, counsel of record for Defendant X Corp., successor in

4

interest to named defendant Twitter, Inc., certifies that this brief contains 6,293

5

words, which complies with the word limit of L.R. 11-6.1 and Standing Order 6(c).

6

DATED: April 26, 2023                 MCGUIREWOODS LLP

7

8

9                                       By: /s/ Tanya L. Greene

10                                           Tanya L. Greene
                                             Attorneys for X Corp., successor in
                                             interest to named defendant Twitter, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF COMPLIANCE

1

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2023, the foregoing document was electronically filed using this Court's CM/ECF system; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in the case.

*/s/ Tanya L. Greene*
Tanya L. Greene