1  KEKER, VAN NEST & PETERS LLP
   PAVEN MALHOTRA #258429
2  pmalhotra@keker.com
   MATAN SHACHAM #262348
3  mshacham@keker.com
   JANAY M. WILLIAMS #345219
4  jwilliams@keker.com
   633 Battery Street
5  San Francisco, CA 94111-1809
   Telephone:  415 391 5400
6  Facsimile:   415 397 7188
   Attorneys for Defendants
7  META PLATFORMS, INC. and INSTAGRAM, LLC

8  *Additional counsel listed in signature block*

9

          UNITED STATES DISTRICT COURT

10        CENTRAL DISTRICT OF CALIFORNIA

11

12 | RICHARD JACKSON, JULIE BRIGGS, | Case No. 2:22-cv-09438-AB-MAA
13 | and GREGG BUCHWALTER, | 
   | Individually And On Behalf Of All Others | **META PLATFORMS, INC.;**
14 | Similarly Situated, | **INSTAGRAM, LLC; GOOGLE LLC;**
   | | **ALPHABET, INC.; AND X CORP.,'S**
15 | Plaintiffs, | **(AS SUCCESSOR IN INTEREST TO**
   | | **TWITTER, INC.) NOTICE OF**
16 | v. | **MOTION AND MOTION TO**
   | | **DISMISS (RULE 12) AND MOTION**
17 | TWITTER, INC., a Delaware | **TO STRIKE (ANTI-SLAPP);**
   | Corporation; GOOGLE, LLC, a limited | **MEMORANDUM OF POINTS AND**
18 | liability company; ALPHABET, INC., a | **AUTHORITIES IN SUPPORT**
   | Delaware corporation; META | **THEREOF**
19 | PLATFORMS, INC., a corporation doing | 
   | business as "META" and "FACEBOOK, | Date:       June 9, 2023
20 | INC."; INSTAGRAM, LLC, a Delaware | Time:       10:00 a.m.
   | corporation; AMAZON INC., a Delaware | Dept.:       7B
21 | corporation; YOU TUBE, INC., a | 
   | Delaware corporation; APPLE, INC., a | Judge:      Honorable André Birotte, Jr
22 | Delaware corporation; AMERICAN | 
   | FEDERATION OF TEACHERS; | Date Filed:  December 29, 2022
23 | NATIONAL EDUCATION | 
   | ASSOCIATION; NATIONAL SCHOOL | Trial Date:   None set
24 | BOARD ASSOCIATION; DNC | 
   | SERVICES CORPORATION, a | 
25 | corporation doing business nationwide as | 
   | "THE DEMOCRATIC NATIONAL | 
26 | COMMITTEE" or "DNC", | 
27 | Defendants. | 

28

2132119

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 9, 2023 at 10:00 a.m. in Courtroom 7B, at 350 West 1st Street, Los Angeles, CA 90012, before the Honorable Judge André Birotte Jr., Defendants Meta Platforms, Inc., Instagram, LLC[1] (collectively "Meta") Google LLC, Alphabet, Inc., YouTube LLC (collectively, "Google"),[2] and X Corp. as successor in interest to named defendant Twitter, Inc. ("Twitter"), (collectively, the "Defendants") will and hereby do move for an order dismissing the Complaint and/or each of its causes of action as against them pursuant to Rules 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Defendants additionally request the Court strike Claim 3 (Unruh Act) under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16.

This motion is based upon the memorandum of points and authorities that follows; the proposed order submitted herewith; the complete files and records in this action; the argument of counsel; and such other matters as the Court may consider.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 20, 2023. The Defendants initiated the meet-and-confer process through email on March 27 and March 30, 2023, and concluded it via a phone conference on April 20, 2023.

---

[1] Instagram LLC is incorrectly identified in the Complaint as Instagram, Inc.

[2] YouTube LLC is incorrectly identified in the Complaint as Youtube, Inc.

2132119

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................. 1

II.  BACKGROUND ................................................................................ 2

III.  LEGAL STANDARDS ...................................................................... 3

IV.  ARGUMENT ..................................................................................... 4

   A.  Plaintiffs lack Article III standing. ........................................... 4

   B.  Plaintiffs fail to state a claim for violation of their First
       Amendment Rights under 42 U.S.C. § 1983. ........................... 6

       1.  Plaintiffs cannot premise a § 1983 claim on federal
           action. ............................................................................ 6

       2.  Plaintiffs have not alleged facts that transform the
           Defendants into state actors. .......................................... 7

           a.  The Defendants did not exercise a state-created
               right. ...................................................................... 8

           b.  The Defendants cannot be treated as state actors. ............ 8

               i.  Plaintiffs cannot sue Defendants on a
                   coercion or encouragement theory. ...................... 9

               ii.  Plaintiffs fail to plausibly allege joint
                    action. ................................................................ 12

       3.  Plaintiffs' claim inverts the relevant First Amendment
           rights. ............................................................................ 14

   C.  Plaintiffs fail to state a claim for election interference. ....................... 14

   D.  Plaintiffs fail to state a claim under the Unruh Act. ......................... 15

       1.  Plaintiffs lack statutory standing. ............................................. 16

       2.  The Unruh Act does not recognize claims based on
           political viewpoint. ................................................................ 17

   E.  Section 230 immunizes the Defendants from liability. ...................... 18

       1.  Section 230(c)(1) bars liability for the Defendants'
           alleged conduct. ................................................................... 18

       2.  Section 230(c)(2)(A) bars liability for the Defendants'
           alleged conduct. ................................................................... 20

   F.  The Court should strike Plaintiffs' Unruh Act claim. .......................... 21

1.   The Unruh Act claim arises from conduct in
     furtherance of Defendants' free speech rights. .......................... 21

2.   Plaintiffs cannot prevail on their Unruh Act claim. ................. 22

G.   The Complaint's claims for injunctive and declaratory relief
     must be dismissed. ................................................................. 22

V.   CONCLUSION ............................................................................ 23

2132119

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
  526 U.S. 40 (1999) ......................................................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................... 3, 4

*Assocs. & Aldrich Co. v. Times Mirror Co.*,
  440 F.2d 133 (9th Cir. 1971) ............................................................ 15

*Atkinson v. Meta Platforms, Inc.*,
  2021 WL 5447022 (9th Cir. Nov. 22, 2021) ...................................... 7

*Barnes v. Yahoo!*,
  570 F.3d 1096 (9th Cir. 2009) ................................................... 19, 20

*Berenson v. Twitter, Inc.*,
  2022 WL 1289049 (N.D. Cal. Apr. 29, 2022) ................................... 6

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
  403 U.S. 388 (1971) ......................................................................... 7

*Carlin Commc'ns, Inc. v. Mountain States Tel. and Telegraph Co.*,
  827 F.2d 1291 (9th Cir. 1987) ............................................... 10, 11, 12

*Children's Health Defense v. Facebook Inc.*,
  546 F.Supp.3d 909 (N.D. Cal. 2021), *appeal filed* No. 21-16210
  (9th Cir. Jul. 21, 2021) .................................................... 7, 10, 11, 13

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ............................................................................ 6

*City of Reno v. Netflix, Inc.*,
  52 F.4th 874 (9th Cir. 2022) ............................................................ 24

*CoreCivic. Inc. v. Candide Grp., Inc.*,
  46 F.4th 1136 (9th Cir. 2022) ..................................................... 22, 23

*Craft v. Musk*,
  2023 WL 2918739 (N.D. Cal. Apr. 12, 2023) ................................... 6

2132119

*Cross v. Facebook, Inc.*,
222 Cal.Rptr.3d 250 (Cal. Ct. App. 2017) .......................................... 23

*Daniels v. Alphabet Inc.*,
2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) ..................................... 7, 9, 11, 13

*Doe v. Google LLC*,
2021 WL 4864418 (N.D. Cal. Oct. 19, 2021), *aff'd* 2022 WL
17077497 (9th Cir. Nov. 18, 2022) .............................................. *passim*

*Domen v. Vimeo, Inc.*,
433 F.Supp.3d 592 (S.D.N.Y. 2020), *aff'd*, 2021 WL 4352312 (2d
Cir. Sept. 24, 2021) ................................................................... 21, 22

*Dozier v. Walmart Inc.*,
2021 WL 1534973 (C.D. Cal. Mar. 5, 2021) (Birotte, J.) .................................... 3

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) ..................................................... 19, 20

*e360Insight, LLC v. Comcast Corp.*,
546 F.Supp.2d 605 (N.D. Ill. 2008) .................................................. 21

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ........................................................... 4

*Elansari v. Meta, Inc.*,
2022 WL 4635860 (E.D. Pa. Sept. 30, 2022) ....................................... 17

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
946 F.3d 1040 (9th Cir. 2019) ........................................................ 21

*Fair Housing Council of San Fernando Valley v. Roommates. Com,
LLC*,
521 F.3d 1157,1170-71 (9th Cir. 2008) (en banc) ........................................... 20

*Fed. Agency of News LLC v. Facebook, Inc.*,
432 F.Supp.3d 1107 (N.D. Cal. 2020) ....................................... 7, 13, 20

*Greater Los Angeles Agency on Deafness v. Cable News Network,
Inc.*,
742 F.3d 414 (9th Cir. 2014) ......................................................... 22

iv

2132119

*Harris v. Cap. Growth Inv. XIV*,
   52 Cal.3d 1142 (1991) ............................................................................... 18

*Hart v. Cult Awareness Network*,
   13 Cal.App.4th 777 (1993) ........................................................................ 18

*Hart v. Facebook Inc.*,
   2022 WL 1427507 (N.D. Cal. May 5, 2022) ........................................... 11

*Heineke v. Santa Clara Univ.*,
   965 F.3d 1009 (9th Cir. 2020) .............................................................. 7, 11

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) .................................................................... 23

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   273 F.Supp.3d 1099 (N.D. Cal. 2017) ..................................................... 22

*Huber v. Biden*,
   2022 WL 827248 (N.D. Cal. Mar. 18, 2022), *aff'd*, 2022 WL
   17818543 (9th Cir. Dec. 20, 2022) ............................................... 7, 13, 18

*Informed Consent Action Network v. YouTube LLC*,
   582 F.Supp.3d 712 (N.D. Cal. 2022) ......................................................... 7

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal.App.4th 1050 (2005) ............................................................. 18, 19

*Johnson v. Knowles*,
   113 F.3d 1114 (9th Cir. 1997) .................................................................... 9

*Jones v. United States Postal Serv.*,
   488 F.Supp.3d 103 (S.D.N.Y. 2020) ........................................................ 16

*King v. Facebook, Inc.*,
   572 F.Supp.3d 776 (N.D. Cal. 2021) ....................................................... 20

*Koebke v. Bernardo Heights Country Club*,
   36 Cal.4th 824 (2005) ............................................................................... 18

*Lewis v. Casey*,
   518 U.S. 343 (1996) .................................................................................... 5

*Lewis v. Google*,
   461 F.Supp. 3d 938 (N.D. Cal. 2020) ........................................................ 7

2132119

*Lieberman v. KCOP Television, Inc.*,
   110 Cal.App.4th 156 (2003) ................................................................ 22

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) ............................................................ 22

*Manhattan Cmty. Access Corp. v. Halleck*,
   139 S. Ct. 1921 (2019) ........................................................................ 15

*Marina Point, Ltd. v. Wolfson*,
   30 Cal.3d 721 (1982) .......................................................................... 18

*Mathis v. Pac. Gas & Elec. Co.*,
   75 F.3d 498 (9th Cir. 1996) ................................................................ 14

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) .............................................................. 3

*Miami Herald Publ'g Co. v. Tornillo*,
   418 U.S. 241 (1974) ............................................................................ 14

*Midpeninsula Citizens for Fair Hous. v. Westwood Invs.*,
   221 Cal.App.3d 1377 (1990) .............................................................. 16

*Missouri v. Biden*,
   2023 WL 2578260 (E.D. La. 2023) ..................................................... 12

*Missouri v. Biden*
   (Case No. 3:22-cv-01213-TAD-KDM (W.D. La. 2022)) ..................... 12

*Morse v. N. Coast Opportunities, Inc.*,
   118 F.3d 1338 (9th Cir. 1997) .............................................................. 7

*Morton v. Twitter, Inc.*,
   2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) ..................................... 20

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
   696 F.3d 849 (9th Cir. 2012) ................................................................ 5

*Neerman v. Cates*,
   2022 WL 18278377 (C.D. Cal. Dec. 28, 2022) ................................... 23

*NetChoice, LLC v. Attorney General, Florida*,
   34 F.4th 1196 (11th Cir. 2022) ........................................................... 14

2132119

*O'Handley v. Padilla*,
  2022 WL 93625 (N.D. Cal. Jan. 10, 2022) ....................................................... 14

*O'Handley v. Weber*,
  62 F.4th 1145 (9th Cir. 2023) ..................................................................*passim*

*O'Rourke v. Dominion Voting Sys., Inc.*,
  2022 WL 1699425 (10th Cir. May 27, 2022), *cert. denied*, 214 L.
  Ed. 2d 279, 143 S. Ct. 489 (2022) ..................................................................... 4

*Osborne v. Yasmeh*,
  1 Cal.App.5th 1118 (2016) ................................................................................ 16

*Pirozzi v. Apple Inc.*,
  913 F.Supp.2d 840 (N.D. Cal. 2012) .................................................................. 4

*Prager Univ. v. Google LLC*,
  951 F.3d 991 (9th Cir. 2020) .......................................................................... 6, 7

*Rawson v. Recovery Innovations, Inc.*,
  975 F.3d 742 (9th Cir. 2020) ("[T]he color of law and state action
  inquiries are the same" under Section 1983 and the Fourteenth
  Amendment) ....................................................................................................... 15

*Rogalinski v. Meta Platforms, Inc.*,
  2022 WL 3219368 (N.D. Cal. Aug. 9, 2022) .............................................. 13, 14

*Salmon Spawning & Recovery All. v. Gutierrez*,
  545 F.3d 1220 (9th Cir. 2008) ............................................................................ 6

*Schilling v. Rogers*,
  363 U.S. 666 (1960) .......................................................................................... 24

*State of Missouri ex rel. Schmitt v. Biden et al.*,
  No. 3:22-cv-01213-TAD-KDM (W.D. La. 2022) .............................................. 1

*Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*,
  144 F.Supp.3d 1088 (N.D. Cal. 2015) ............................................................. 20

*Simmons v. Allstate Ins. Co.*,
  92 Cal. App.4th 1068 (Ct. App. 2001) .............................................................. 22

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................................ 4

2132119

*Sutton v. Providence St. Joseph Med. Ctr.*,
  192 F.3d 826 (9th Cir. 1999) ................................................................. 12

*Tafuto v. Donald J. Trump for President, Inc.*,
  827 Fed. App'x 112 (2d Cir. 2020) ................................................. 6, 10

*Trump v. Twitter Inc.*,
  602 F.Supp.3d 1213 (N.D. Cal. 2022) ............................................ 7, 10

*White v. Square, Inc.*,
  7 Cal.5th 1019 (2019) ........................................................................ 17

*Williams v. City of Bakersfield*,
  2015 WL 1916327 (E.D. Cal. Apr. 27, 2015) .................................... 18

*Williams v. Twitter, Inc. et al.*,
  No. 20STCV41458 (L.A. Sup. Ct.) .................................................... 1

*Young v. Facebook*,
  790 F.Supp.2d 1110 (N.D. Cal. 2011) ............................................... 17

*Zhang v. Baidu.com Inc.*,
  10 F.Supp.3d 433 (S.D.N.Y. 2014) ................................................... 19

*Zhou v. Breed*,
  2022 WL 135815 (9th Cir. Jan. 14, 2022) ......................................... 10

**Statutes**

42 U.S.C. § 1983 ............................................................................ 1, 3, 6, 7

47 U.S.C. § 230 ...................................................................... 10, 19, 20, 21

47 U.S.C. § 230(c)(2)(A) ....................................................................... 21

52 U.S.C. § 10101(a)(2) ................................................................... 15, 16

Cal. Civ. Code § 51(b) ..................................................................*passim*

Cal. Civ. Code § 425.16(b)(1) ............................................................... 22

Cal. Civ. Proc. Code § 425.16 ...................................................... 1, 2, 22

Civil Rights Act of 1964 ....................................................................... 15

Civil Rights Act Title I .......................................................................... 15

2132119

Communications Decency Act Section 230(c) ........................................................... 19

Communications Decency Act Section 230(c)(1), 47 U.S.C. §
    230(c)(1) ................................................................................................... 2, 19

Declaratory Judgment Act ............................................................................ 24

Plaintiffs' Declaratory Judgment Act .......................................................... 23

Section IV.B.3. Extending the Unruh Act ..................................................... 18

**Other Authorities**

Fed. Rule of Civ. Proc. 12(b)(1) ............................................................... 1, 3

Fed. Rule of Civ. Proc. 12(b)(6) ......................................................... 1, 22, 23

DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE
Case No. 2:22-cv-09438-AB-MAA

2132119

## I.  INTRODUCTION

Plaintiff Richard Jackson's Complaint marks his second attempt to vindicate grievances allegedly suffered by "MAGA Republicans" at the hands of a supposed collection of technology companies, educational institutions, the Democratic National Committee, and the Biden Administration. Jackson first attempted to bring this suit in state court,[3] but abandoned that effort and voluntarily dismissed the case in the face of a demurrer. This second Complaint mushroomed to ten times the length of the state-court complaint, adds two plaintiffs, and is replete with conspiracy theories, tabloid storylines, and haphazard copy-and-paste jobs from other lawsuits.[4] Length, however, is no substitute for substance. And on that, the Complaint falls short.

Six defendants—Twitter, Alphabet, Google, YouTube, Meta, and Instagram (collectively, the "Defendants") jointly move to dismiss Plaintiffs' Complaint with prejudice on the following grounds.

*First*, Plaintiffs lack Article III standing, including because they have not alleged particularized injuries that affect them in a personal way.

*Second*, Plaintiffs cannot state a Section 1983 claim against Defendants (all private actors) for violating the First Amendment. Section 1983 does not create a cause of action for claims under the color of federal law, and the Defendants do not qualify as state actors under any recognized theory of coercion or joint action.

*Third*, Plaintiffs fail to allege a claim for election interference. Any such claim requires showing state action, which Plaintiffs cannot do. And the Complaint contains no allegations remotely suggesting any statutory or constitutional

---

[3] *Williams v. Twitter, Inc. et al.*, No. 20STCV41458 (L.A. Sup. Ct.).

[4] The Complaint lifts portions of the complaint from *State of Missouri ex rel. Schmitt v. Biden et al.*, No. 3:22-cv-01213-TAD-KDM (W.D. La. 2022). *See, e.g.*, Compl. ¶ 159 (referring to "Plaintiff Kulldorff," who is not a plaintiff in this lawsuit, but is a plaintiff in the *Missouri* case); ¶ 153 ("referring to "Plaintiffs Bhattacharya and Kulldorff," each of whom are not plaintiffs in this lawsuit).

2132119

violation.

**Fourth**, Section 230(c)(1) of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), bars Plaintiffs' statutory claims, as courts in this Circuit have repeatedly held.

**Fifth,** Plaintiffs' Unruh Act claim fails because Plaintiffs do not allege that the Defendants discriminated against them personally and because claims of political viewpoint discrimination are not actionable under the Unruh Act (Cal. Civil Code §51 *et seq*) and could not be actionable here consistent with the First Amendment.

**Finally,** the Unruh Act claim must be stricken under the California Anti-SLAPP statute, Cal. Civ. Proc. §425.16, which enables courts to strike meritless claims that arise out of protected free speech activities connected to an issue of "public interest."

## II.   BACKGROUND

Plaintiffs are "registered Republicans with conservative viewpoints who consider [themselves] to be so-called 'MAGA Republican[s].'"  Compl. ¶¶ 57-59. Plaintiffs complain that "the Democratic National Committee, the federal government and in particular, the Biden Administration, aided and abetted by the 'mainstream media,' colluded with and/or coerced social media companies" to "suppress and censor disfavored speakers, viewpoints and content on social media platforms and/or barred them from the public square by falsely labeling content 'dis-information,' 'misinformation,' and 'malinformation.'"  *Id*. ¶ 3. Plaintiffs dub this conduct the "Censorship Scheme." *Id*.

The "Censorship Scheme" allegedly involves a "massive, sprawling federal 'Censorship Enterprise'" that includes "dozens of federal officials across at least eleven federal[ agencies and components" all of whom "pressure[ ] social media platforms to censor and suppress private speech that federal officials disfavor." *Id*. ¶

53. The disfavored speech, per the Complaint, includes the truth about "Hunter Biden's laptop," the "Lab-Leak Theory of Covid-19's Origins," the "efficacy of mask mandates and Covid-19 lockdowns," and the integrity of the 2020 elections. *Id*. ¶¶ 135, 141, 151, 163.

Plaintiffs assert their claims on behalf of a putative class they define as "[m]ore than 72 million registered Republicans nationwide – referred to by President Biden and some unenlightened Democrats as 'MAGA Republicans' –who voted for someone other than President Biden and suffered and will continue to suffer irreparable harm by the Censorship Scheme alleged herein…" *Id*. ¶ 85. Plaintiffs allege that Defendants violated their First Amendment rights in violation of 42 U.S.C. § 1983, "interfered with Plaintiffs' and the Putative Class's voting rights," and violated the Unruh Act. Plaintiffs seek an injunction to prohibit Defendants from engaging in the "Censorship Scheme" as well as unspecified declaratory relief.

## III.   LEGAL STANDARDS

A "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "A plaintiff bears the burden of establishing standing." *Dozier v. Walmart Inc.*, 2021 WL 1534973, at *3 (C.D. Cal. Mar. 5, 2021) (Birotte, J.).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). A "formulaic recitation of the elements" of a claim or assertions "devoid of 'further factual enhancement'" is insufficient. *Id*. Plaintiffs' factual allegations "must be enough to raise a right to relief above a 'speculative level.'" *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014).

2132119

## IV.    ARGUMENT

### A.    Plaintiffs lack Article III standing.

Plaintiffs fail to establish Article III standing to pursue any of their claims against the Defendants. Article III standing requires (1) an injury in fact that is (2) fairly traceable to the defendant's challenged conduct and (3) likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Most fundamentally, Plaintiffs do not plausibly allege any injury in fact. A plaintiff must show "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339. To be "particularized," a claimed injury must affect the plaintiff "in a personal and individual way." *Id.* Generalized grievances are insufficient to give rise to standing. *See O'Rourke v. Dominion Voting Sys., Inc.*, 2022 WL 1699425, at *2 (10th Cir. May 27, 2022), *cert. denied*, 214 L. Ed. 2d 279, 143 S. Ct. 489 (2022) (affirming dismissal for lack of standing where plaintiffs' allegations of voter right violations were not "distinct or different from the alleged injury to other registered voters").

Here, Plaintiffs claim violations of their constitutional rights and illegal discrimination based on Defendants' removal or flagging of certain third-party content from their services, but they fail to establish how that conduct personally harmed them. They do not allege that they even *have accounts* on any of the Defendants' sites, much less that those accounts were directly affected by Defendants' alleged conduct. *E.g.*, *Pirozzi v. Apple Inc.*, 913 F.Supp.2d 840, 847 (N.D. Cal. 2012) (no standing where plaintiff did not "identify which of the Apple Devices she used" or identify any specific "[a]pps she downloaded that accessed or tracked her personal information").

The closest Plaintiffs come to alleging injury is the conclusory claim that they *and the entire 72-million-person putative class* were "all[] censored, banned,

DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE
Case No. 2:22-cv-09438-AB-MAA

2132119

and 'shadow-banned' from the Defendants' platforms, *or* … have been punished and *or* have had impermissible burdens placed on them by Defendants as the price for expressing truthful facts and opinions." Compl. ¶ 47 (emphasis added). This blanket assertion does not plausibly identify a particularized injury to any of the 72 million individuals it describes, much less to any of the named Plaintiffs. Plaintiffs do not identify any content that they posted on the Defendants' services that was removed or otherwise moderated. Nor do they allege any other injury that is any way personalized. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class must allege and show that they *personally* have been injured.") (emphasis added).  The entire Complaint can and should be dismissed on this ground alone.[5]

Plaintiffs' allegations on the second prong of standing—traceability—suffer from similar flaws. To show traceability, "[t]he line of causation between the defendant's [alleged] action and the plaintiff's [purported] harm must be more than attenuated." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012). But all Plaintiffs have are hypothetical and tenuous connections between the Defendants' content moderation and the supposed harms Plaintiffs allegedly suffered because of a purported vast conspiracy involving dozens of other players. *See id.* at 867 ("[W]here the causal chain involves numerous third parties … the causal chain is too weak to support standing.").

Plaintiffs' causation theory for their claims of election interference is even more inscrutable. Plaintiffs never explain how any specific "voting rights" they held were affected by the Defendants' treatment of third-party content on their platforms. Nor could they. Such "an attenuated chain of conjecture [is] insufficient to support standing." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d

---

[5] To the extent that Plaintiffs' election interference claims rest on vote dilution, their allegations are also fatally deficient. Plaintiffs fail to specifically allege that any one of them voted in the 2020 or 2022 elections, much less how the removal of content on private online services had any conceivable impact on their votes.

1220, 1228 (9th Cir. 2008) (citation omitted); *accord Tafuto v. Donald J. Trump for President, Inc.*, 827 Fed. App'x 112 (2d Cir. 2020) (vote dilution allegations asserted "generalized" injury). This deficiency also warrants dismissing the entire Complaint.

Finally, Plaintiffs' request for an injunction suffers from a unique standing flaw. Standing to pursue injunctive relief requires showing more than past harm: it requires a "real and immediate threat" of imminent *future* harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Plaintiffs' allegations fail to meet this standard. *Cf.* Compl. ¶¶ 12, 22, 30 (alleging Twitter's new owner "outed" alleged scheme). Plaintiffs' claims for injunctive relief should be dismissed.

### B. Plaintiffs fail to state a claim for violation of their First Amendment Rights under 42 U.S.C. § 1983.

Plaintiffs allege that the Defendants removed from their sites various kinds of third-party content at the urging of Democratic Party legislators, officials, and political candidates. Plaintiffs contend this exercise of editorial discretion violates their First Amendment rights and seek damages under 42 U.S.C. § 1983. Compl. ¶¶ 73-80. Dozens of cases in this Circuit have rejected similar claims against private online service providers. *See, e.g.*, *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023).[6] This Court should follow suit.

### 1. Plaintiffs cannot premise a § 1983 claim on federal action.

Plaintiffs' claim fails at the threshold because it is based on the theory that

---

[6] *E.g., Prager Univ. v. Google LLC,* 951 F.3d 991, 996 (9th Cir. 2020); *Craft v. Musk,* 2023 WL 2918739, at *2-3 (N.D. Cal. Apr. 12, 2023); *Berenson v. Twitter, Inc.*, 2022 WL 1289049, at *3 (N.D. Cal. Apr. 29, 2022); *Huber v. Biden*, 2022 WL 827248, at *3-7 (N.D. Cal. Mar. 18, 2022), *aff'd*, 2022 WL 17818543, at *1 (9th Cir. Dec. 20, 2022); *Doe v. Google LLC*, 2021 WL 4864418 (N.D. Cal. Oct. 19, 2021), *aff'd* 2022 WL 17077497 (9th Cir. Nov. 18, 2022); *Atkinson v. Meta Platforms, Inc.*, 2021 WL 5447022 at *1-2 (9th Cir. Nov. 22, 2021); *Trump v. Twitter Inc.*, 602 F.Supp.3d 1213, 1225 (N.D. Cal. 2022) (on appeal); *Informed Consent Action Network v. YouTube LLC*, 582 F.Supp.3d 712, 719-724 (N.D. Cal. 2022); *Children's Health Defense v. Facebook Inc.* ("*CHD*"), 546 F.Supp.3d 909, 914-15 (N.D. Cal. 2021), *appeal filed* No. 21-16210 (9th Cir. Jul. 21, 2021); *Daniels v. Alphabet Inc.*, 2021 WL 1222166 (N.D. Cal. Mar. 31, 2021); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F.Supp.3d 1107, 1121-27 (N.D. Cal. 2020) ("*FAN*").

2132119

the Defendants acted at the behest of *federal* officials. Compl. ¶¶ 61-63, 65-68 (alleging that Defendants acted "on behalf of the Biden Administration and federal government"). Section 1983 claims are limited to persons acting "under color of ... State" law. 42 U.S.C. § 1983. So, "by its very terms, § 1983 precludes liability in federal government actors." *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997). That rule alone warrants dismissal—as it has in similar cases involving online services. *See Daniels*, 2021 WL 1222166, at *5; *Lewis v. Google,*, 461 F.Supp. 3d 938, 955-56 (N.D. Cal. 2020).[7]

## 2.   Plaintiffs have not alleged facts that transform the Defendants into state actors.

Plaintiffs' claim also fails because the Defendants —all private companies— are not state actors. Compl. ¶¶ 61-68. "The First Amendment prohibits the government—not a private party—from abridging speech." *Prager Univ. v. Google LLC*, 951 F.3d 991, 996 (9th Cir. 2020). And there is a strong "presumption that private conduct does not constitute [state] action." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020). In assessing whether a private entity's conduct rises to the level of state action, courts apply a "two-step framework." *O'Handley*, 62 F.4th at 1157. The first step asks "whether the alleged constitutional violation was caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id.* (cleaned up). The second step asks whether "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Id.*

Applying this framework, the Ninth Circuit recently affirmed dismissal of a similar First Amendment claim. The plaintiff in *O'Handley* alleged that Twitter and California's Secretary of State violated his First Amendment rights "by acting in

---

[7] "A plaintiff asserting a claim for a federal violation of constitutional rights must seek relief under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)." *Daniels*, 2021 WL 1222166, at *5. While Plaintiffs have not even tried to plead a *Bivens* claim here, it would be futile. *See id.*; *Doe v. Google LLC*, WL 17077497 at *9; *CHD*, 546 F.Supp.3d at 923-24 (all rejecting *Bivens* claims against private online services).

concert to censor his speech," with state officials "regularly flagg[ing] tweets with false or misleading information" that Twitter "almost invariably remov[ed]." *Id*. at 1153. Echoing the long line of Ninth Circuit cases that have consistently rejected similar claims, the Ninth Circuit held that such allegations did not transform Twitter into a state actor. *Id*. at 1156-59. This case is no different.

### a.     The Defendants did not exercise a state-created right.

As in *O'Handley*, Plaintiffs' claims "falter at the first step." *Id.* The Defendants "did not exercise a state-created right" when they allegedly "limited access" to conservative posts. *Id*. Instead, the Defendants' "right[s] to take those actions when enforcing [their] content-moderation polic[ies were] derived from [their] user agreement[s] …, not from any right conferred by the State." *Id.* The Complaint acknowledges as much.[8] So even if the Defendants, the Biden Administration, and the federal government were "aligned in their missions to limit the spread of misleading election information," among other topics, "[s]uch alignment does not transform private conduct into state action." *Id*.

### b.     The Defendants cannot be treated as state actors.

As in *O'Handley*, Plaintiffs fare no better at step two. Plaintiffs must show (1) that "government officials have 'exercised coercive power or [have] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State,'" *Id*. (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)); or (2) "joint action" by "proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Id*. (quoting *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1140 (9th Cir. 2012)). Plaintiffs' claim fails under either theory.

---

[8] Compl. ¶¶ 152 ("Twitter's 'COVID-19 misleading information policy'"); 211 ("Facebook's 'COVID and Vaccine Policy'"); 257 ("Twitter['s] … Civic integrity policy"); 267 (describing Facebook announcement "that it 'won't allow ads with content that seeks to delegitimize the outcome of an election'"); 290 (YouTube's "Elections misinformation policy").

2132119

### i.      Plaintiffs cannot sue Defendants on a coercion or encouragement theory.

The government-coercion theory requires Plaintiffs to identify some "state regulation or custom having the force of law that compelled, coerced, or encouraged the Defendants to discriminate against the Plaintiffs." *Johnson v. Knowles*, 113 F.3d 1114, 1120 (9th Cir. 1997); *see also O'Handley*, 62 F.4th at 1157 (coercion occurs when "government officials threaten adverse action to coerce a private party into performing a particular act"). Plaintiffs have not satisfied this standard.

*First*, much of what Plaintiffs allege lacks the force of law. Plaintiffs point to statements from individual legislators, (Compl. ¶¶ 185, 275, 336), members of the Biden-Harris campaign (not even the administration) (*id.* ¶¶ 185, 193, 195, 255, 265-266), and former First Ladies (*id.* ¶ 8). But no individual member of Congress, much less any presidential candidate or former First Lady, can make law. Courts thus have repeatedly held that such statements cannot support a claim that "the government compelled [private] actions." *Doe*, 2022 WL 17077497, at *2; *accord Daniels*, 2021 WL 1222166, at *6 ("The publicly expressed views of individual members of Congress—regardless of how influential—do not constitute 'action' on the part of the federal government."). As to the remainder (Compl. ¶¶ 49, 200-254, 282-316, 328-381), vague expressions of displeasure are not executive action. *See, e.g.*, *Trump*, 602 F.3d at 1220 ("[T]he comments of a handful of elected officials are a far cry from a rule of decision for which the State is responsible.").

*Second*, the statements Plaintiffs identify are expressions of individual officials' beliefs that online platforms should do something about misinformation. *See, e.g.*, Compl. ¶¶ 185, 188-89, 191, 195. The Ninth Circuit has made clear that mere attempts to persuade do not create state action. *See O'Handley*, 62 F.4th at 1158 ("[G]overnment officials do not violate the First Amendment when they request that a private intermediary not carry a third party's speech so long as the

2132119

officials do not threaten adverse consequences if the intermediary refuses to comply."); *Zhou v. Breed*, 2022 WL 135815, at *1 (9th Cir. Jan. 14, 2022) ("The mere fact that [Mayor] Breed or other public officials criticized a billboard or called for its removal . . . does not make that billboard's subsequent removal by a private party state action."). General musings about possible changes to the CDA's Section 230 or antitrust laws, Compl. ¶¶ 181-190, are equally insufficient. *See Trump,* 602 F.Supp.3d at 1224; *CHD*, 546 F.Supp.3d at 933; *Doe*, 2021 WL 4864418, at *4 (rejecting virtually identical allegations).

In contrast, the rare cases finding coercion involve threats by executive branch actors to take adverse action (typically criminal prosecution) if private entities do not do some specific thing. *See, e.g.*, *Carlin Commc'ns, Inc. v. Mountain States Tel. and Telegraph Co.*, 827 F.2d 1291, 1293, 1295 (9th Cir. 1987). Nothing like that is alleged here. Plaintiffs point to no threats of any enforcement actions, and "speculative assertions about the possibility defendants will be subpoenaed to testify before Congress or exposed to some other peril . . . do not support a theory of government action." *Daniels*, 2021 WL 1222166, at *6; *accord CHD*, 546 F.Supp.3d 909, 932-33; *O'Handley*, 62 F.4th at 1157-58 (distinguishing *Carlin*).

*Third,* coercion requires showing the "government commanded a particular result in, or otherwise participated in, [plaintiff's] specific case." *Heineke*, 965 F.3d at 1014. *See also Hart v. Facebook Inc.*, 2022 WL 1427507, at *8 (N.D. Cal. May 5, 2022) (no coercion where governmental activities had had no particularized connection as to plaintiff)*; Doe*, 2021 WL 4864418, at *3 (rejecting claim where none of the supposedly coercive statements "mention Plaintiffs' names, their YouTube or Google accounts, their channels, or their videos"); *Daniels*, 2021 WL 1222166, at *7 (same); *CHD*, 546 F.Supp.3d 933 (same). But the Complaint does not point to any decision by the Defendants that had anything to do with Plaintiffs—much less some action that was specifically coerced by federal officials. *Cf.* Compl. ¶¶ 57-59, 85. Instead, Plaintiffs allege the kinds of "broad lawmaker

2132119

proclamations regarding 'misinformation'" that create no First Amendment issue. *Doe*, 2021 WL 4864418, at *3.

The same flaws doom any "encouragement" theory. Encouragement requires showing that the government's "positive incentives" are "so significant" that they "overwhelm the private party and essentially compel the party to act in a certain way." *O'Handley*, 62 F.4th at 1157-58. Plaintiffs here allege "nothing of the sort." *Id.* Instead, the Complaint recites instances in which people associated with the Democratic Party commented that they would like content removed without offering *anything* in return. *See, e.g.*, Compl. ¶ 185. But, as the Ninth Circuit has explained, the government asking a private party to remove content is not actionable encouragement: "The First Amendment does not interfere with this communication so long as the intermediary is free to disagree with the government and make its own independent judgment about whether to comply with the government's request." *O'Handley*, 62 F.4th at 1158. No allegations suggest that the Defendants could not make their own choices about what content to remove. Just like in *O'Handley*, each Defendant was "free to prioritize communications from state officials in its review process without being transformed into a state actor." *Id.* at 1159.

Finally, Plaintiffs cannot evade this authority by importing allegations from *Missouri v. Biden*, 2023 WL 2578260 (E.D. La. 2023). *Missouri* involves claims of censorship against various federal officials, departments, and agencies; there are no claims against any private entities. *See id.*, at *1 n.1. *See also Missouri v. Biden,* (Case No. 3:22-cv-01213-TAD-KDM (W.D. La. 2022)) at ECF No. 84 ¶¶ 26-93. But whether individuals whose content is removed from online services allegedly at federal officials' behest can assert a First Amendment claim **against those government officials** is a very different question from whether Plaintiffs here can bring such a claim **against private entities** based on the theory (however unsupported) that they were coerced into removing third-party speech. They cannot.

"[T]he state-action doctrine only allows plaintiffs to hold the government liable for a private entity's conduct and does not support a claim against the private entity itself." *Doe*, 2022 WL 17077497, at *2; *accord Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 838 (9th Cir. 1999) ("the mere fact that the government compelled a result does not suggest that the government's action is fairly attributable to the private defendant"); *accord Carlin*, 827 F.3d at 1293, 1295-75 (vacating injunction against private party coerced by the government). If Plaintiffs think the federal government twisted Defendants' arms, they have sued the wrong parties.

### ii.     Plaintiffs fail to plausibly allege joint action.

Plaintiffs also fall short in asserting a "joint action" theory. Compl. ¶¶ 250, 260, 383. Joint action exists only when "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Federal Agency of News*, 432 F.Supp.3d at 1124. The Ninth Circuit and district courts within it have repeatedly rejected similar efforts to meet this "intentionally demanding" test.[9]

Plaintiffs do not allege anything close to a "meeting of the minds to violate constitutional rights" or "willful participation" by the Defendants in the government's purported "efforts to censor political speech online." *O'Handley*, 62 F. 4th at 1159. Instead, Plaintiffs allege that experts like the Center for Disease Control and Prevention and the Surgeon General's Office "advise[d]" the Defendants that government officials "engage[d]" with the Defendants to discuss misinformation on social media platforms, and that officials and members of Congress "called on" the Defendants to restrict health misinformation. Compl. ¶¶ 210-250. But "general statements … about 'working together' to reduce the

---

[9] *O'Handley*, 62 F.4th at 1159-61; *accord Huber*, 2022 WL 827248, at *2-3; *Rogalinski v. Meta Platforms, Inc.*, 2022 WL 3219368, at *1 (N.D. Cal. Aug. 9, 2022); *Doe*, 2021 WL 4864418, at *4-6; *CHD*, 546 F.Supp.3d at 927-31; *FAN*, 432 F.Supp.3d at 1124-27; *Daniels*, 2021 WL 1222166, at *6-7.

spread of health or vaccine misinformation … do not show that the government was a 'joint participant in the challenged activity.'" *CHD*, 546 F.Supp.3d at 927-28. As in *O'Handley*, which rejected similar allegations of "consultation and information sharing"—including a state "partnership with social media platforms"—the Complaint reflects that the Defendants had an "arm's-length relationship" with the government and "never took [their] hands off the wheel." 62 F.4th at 1159-60; *cf., e.g.*, Compl. ¶¶ 210-250. On the other hand, Plaintiffs allege "no facts plausibly suggesting either that the [government] interjected itself into the [Defendants'] internal decisions" to limit access to their content or that the government "played any role in drafting" the Defendants' content-moderation policies. *Id. See also Rogalinski v. Meta Platforms, Inc.*, 2022 WL 3219368, at *5 (N.D. Cal. Aug. 9, 2022) ("[E]ven if the government provided Meta with information about Rogalinski, that (without more) is insufficient because the government can work with a private entity without converting that entity's later decisions into state action.").

Plaintiffs' theory that a private party becomes a state actor whenever it acts consistent with public-health recommendations or consults federal officials would have pernicious consequences. It could "effectively cause companies to cease communicating with their elected representatives for fear of liability." *Doe*, 2021 WL 4864418, at *5. But regulatory interest in a problem does not "transform[] any subsequent private efforts to address the problem (even those expressly designed to obviate the need for regulation) into state action." *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 503 (9th Cir. 1996). Simply put, joint action does not exist where the governing "statutory and regulatory regime leaves the challenged decisions to the judgment of [the private entities]." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 58 (1999). Nothing beyond that is alleged here.

2132119

### 3. Plaintiffs' claim inverts the relevant First Amendment rights.

Plaintiffs' invocation of the First Amendment is misguided for another reason: their effort to enjoin the Defendants from making editorial judgments about user speech would violate the *Defendants'* First Amendment rights.[10]

Plaintiffs' claims strike at the essence of these rights. They seek to stretch the "traditional boundaries" of state-action doctrine, *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1934 (2019), to limit the Defendants' decisions about whether and how to publish user-created material that, in their view, violated their content policies. In other words, Plaintiffs seek to force the Defendants to disseminate unwanted speech. Compl. ¶¶ 75-76, 345, 373, 398. The First Amendment does not allow that result, *e.g.*, *Assocs. & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 135-36 (9th Cir. 1971) ("nothing in the United States Constitution ... allows us to compel a private newspaper to publish advertisements without editorial control of their content"), and state-action rules should not be expanded in ways that would "disable private property owners and private lessees from exercising editorial discretion over speech and speakers on their property," *Halleck*, 139 S. Ct. at 1931.

### C. Plaintiffs fail to state a claim for election interference.

Plaintiffs allege that the "Censorship Scheme" interfered with Plaintiffs' "voting rights . . . by diluting the value of their vote in the 2020 and 2022 elections," giving rise to a statutory claim under the Civil Rights Act of 1964 and constitutional claims under the Fifth and Fourteenth Amendment. Compl. ¶ 388. Such claims require Plaintiffs to show state action, which they cannot do. *See*

---

[10] *See, e.g. O'Handley v. Padilla*, 2022 WL 93625, at *14-15 (N.D. Cal. Jan. 10, 2022) ("decisions about what content to include, exclude, moderate, filter, label, restrict, or promote … are protected by the First Amendment"); *NetChoice, LLC v. Attorney General, Florida*, 34 F.4th 1196, 1210-13 (11th Cir. 2022) (same); *accord Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

2132119

*Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) ("[T]he color of law and state action inquiries are the same" under Section 1983 and the Fourteenth Amendment); 52 U.S.C. § 10101(a)(2) (requiring action under color of state law); *supra* Section IV.B.2.

Additionally, Plaintiffs fail to make specific factual allegations stating a claim under any of those provisions. Title I of the Civil Rights Act[11] prohibits anyone "acting under color of law" from (1) using different standards for qualifying voters; (2) using literacy tests; and (3) disqualifying voters for immaterial errors in registration or voting documents. 52 U.S.C. § 10101(a)(2). The Complaint does not allege that any of these specific voting rights were violated, much less violated by anything the Defendants did. Nor could they.

As for Plaintiffs' claims under the Fifth and Fourteenth Amendments, the Complaint lacks specific factual allegations suggesting "arbitrary disparities in voting mechanisms ma[king] it less likely that voters in certain areas will cast votes that count." *Jones v. United States Postal Serv.*, 488 F.Supp.3d 103, 134 (S.D.N.Y. 2020) (citing *Bush v. Gore*, 531 U.S. 98, 104-05 (2000)). Plaintiffs do not allege that they could not vote or that their votes were not counted fairly and accurately. Instead, they allege the opposite: they, and the class they want to represent, consist of the "72 million United States citizens who *voted*" for a candidate other than President Biden. Compl. ¶ 85 (emphasis added). These claims are frivolous.

### D.   Plaintiffs fail to state a claim under the Unruh Act.

The Unruh Act guarantees all persons "the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments" "no matter what their sex, race, color, religion," or other protected identities. Cal. Civ. Code § 51(b). Plaintiffs have not alleged any viable Unruh Act claim.

---

[11] *See* Civil Rights Act of 1964, Pub. L. No. 88-352 §101, 78 Stat. 241 (1964).

2132119

### 1. Plaintiffs lack statutory standing.

Private plaintiffs can only sue under the Unruh Act if they are *actual victims* whose rights have been "personally violated." *Midpeninsula Citizens for Fair Hous. v. Westwood Invs.*, 221 Cal.App.3d 1377, 1383–84 (1990). A "plaintiff who only learns about the defendant's allegedly discriminatory conduct, but has not personally experienced it, cannot establish standing." *Osborne v. Yasmeh*, 1 Cal.App.5th 1118, 1133 (2016). For online businesses, plaintiffs must allege that they "visit[ed] a business's website with intent to use its services and encounter[ed] [discriminatory] terms or conditions that exclude the[m] from full and equal access to its services." *White v. Square, Inc.*, 7 Cal.5th 1019, 1025, 1032 (2019).

The Complaint does not come close to meeting these requirements. Plaintiffs do not allege any personal interaction with any Defendant's platforms, let alone any discriminatory terms encountered. Indeed, the Complaint lacks any allegation that Plaintiffs tried using the Defendants' services *at all*. Compl. ¶¶ 57-59, 85.

Even if they had used Defendants' services, Plaintiffs were not treated differently from anyone else. Plaintiffs do not allege that they were denied access to Defendants' services or that those services were made available to them on different conditions than others. Instead, their claim is that the Defendants have not made available as much conservative content as Plaintiffs would like. Compl. ¶¶ 77-80, 398. But that frustration simply does not equate to discrimination *against Plaintiffs* themselves. *See, e.g.*, *Young v. Facebook*, 790 F.Supp.2d 1110, 1114, 1116 (N.D. Cal. 2011) (dismissing Unruh Act claim where "the essence of Young's complaint is that Facebook's account management and customer service systems treat all users in the same cold, automated way"); *Elansari v. Meta, Inc.*, 2022 WL 4635860, at *3-4 (E.D. Pa. Sept. 30, 2022) (rejecting discrimination claim against Meta where plaintiff did "not alleg[e] that his access to Facebook was different from any other user" but instead "merely allege[d] that some Palestine/Muslim news pages were removed while some Israel/Jewish news pages were not").

Plaintiffs simply have no viable Unruh Act claim.

### 2. The Unruh Act does not recognize claims based on political viewpoint.

Even if Plaintiffs could point to some instance of differential treatment, they still would have no viable claim. Compl. ¶ 83. The Unruh Act does not by its terms cover discrimination on the basis of political viewpoints or affiliations. While the California Supreme Court once suggested in dicta that the Act could perhaps cover "political affiliation," *Marina Point, Ltd. v. Wolfson*, 30 Cal.3d 721, 726 (1982), it has more recently emphasized "the continued importance" of adhering to "the specified categories of discrimination in the Act," such as race, gender, and sexual orientation, *Harris v. Cap. Growth Inv. XIV*, 52 Cal.3d 1142, 1159 (1991); *accord Koebke v. Bernardo Heights Country Club*, 36 Cal.4th 824, 840 (2005). Political viewpoint or affiliation is not among those categories, and the Defendants are not aware of a single case that has *ever* applied the Unruh Act claim to such claims. *See Huber,* 2022 WL 827248, at *10 ("The Unruh Act has not been held to protect persons based on their viewpoints."); *Williams v. City of Bakersfield*, 2015 WL 1916327, at *5 (E.D. Cal. Apr. 27, 2015) ("[T]he Unruh Civil Rights Act does not protect against discrimination based upon political affiliation or the exercise of constitutional rights.").

This would be a particularly inappropriate context in which to extend the Unruh Act. To apply the Act to limit the Defendants' judgments about what content they disseminate raises serious First Amendment problems. *Supra* Section IV.B.3. Courts consistently have rejected efforts to invoke the Unruh Act when doing so threatens to impinge defendants' own constitutional rights. *See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal.App.4th 1050, 1070-74 (2005) (rejecting age discrimination claim brought by caller against radio show because the show had "First Amendment right to control the content of their program"); *Hart v. Cult Awareness Network*, 13 Cal.App.4th 777 (1993) (same for religious discrimination

claim seeking to require nonprofit organization to accept Scientologists).

That risk is obvious here. The Defendants have First Amendment rights to make choices over what speech to present. *See supra* Section IV.B.3. Extending the Unruh Act to recognizing a novel discrimination claim asserting that Defendants' editorial judgments must conform to Plaintiffs' political preferences would directly intrude on that right. *See, e.g.*, *Zhang v. Baidu.com Inc.*, 10 F.Supp.3d 433, 441 (S.D.N.Y. 2014) (First Amendment bars discrimination claim challenging decisions to exclude politically disfavored websites from search results); *Ingels*, 129 Cal. App. 4th at 1074 ("plaintiff had failed to demonstrate a compelling interest to apply the [Unruh] Act in face of the defendant's First Amendment rights"). The Unruh Act cannot be used to hold the Defendants liable for allegedly failing to publish enough conservative speech.

### E.     Section 230 immunizes the Defendants from liability.

Section 230(c) of the Communications Decency Act presents another insurmountable hurdle to Plaintiffs' claims against the Defendants. 47 U.S.C. § 230. "[S]ection 230 protects from liability 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online.'" *Barnes v. Yahoo!*, 570 F.3d 1096, 1103 (9th Cir. 2009) (quoting *Fair Housing Council of San Fernando Valley v. Roommates. Com, LLC*, 521 F.3d 1157,1170-71 (9th Cir. 2008) (en banc)). "When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). That is the situation here.

### 1.     Section 230(c)(1) bars liability for the Defendants' alleged conduct.

Section 230(c)(1) provides that no "interactive computer service" provider "shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). This action satisfies all three

2132119

requirements for Section 230(c)(1) protections: (1) the Defendants qualify as "interactive computer service" providers; (2) Plaintiffs' claims concern information provided by another information content provider; and (3) Plaintiffs seek to treat the Defendants as publishers of that content. *Dyroff*, 934 F.3d at 1097.

There is no question that the Defendants provide "interactive computer services."[12] Nor is there any doubt that the moderated content at issue here is content from information content providers other than the Defendants —i.e., third-party or user-generated content. *See, e.g.*, Compl. ¶¶ 78-79 (alleging the Defendants "remove[d] from their respective internet sites any possibility of posting [third-party] messages" and blocked access to "stories, articles or reports").

Plaintiffs' claims all seek to treat the Defendants as the publishers of this user content. "[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. As the en banc Ninth Circuit has observed, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates*, 521 F.3d at 1170-71. "[I]t is immaterial whether this decision comes in the form of deciding what to publish in the first place or what to remove among the published material." *Barnes*, 570 F.3d at 1102 n.8.

Because Plaintiffs' claims are all premised on the view that the Defendants wrongly removed or restricted some content while allowing posting of other content, they seek to treat the Defendants as the publishers of that third-party content. Compl. ¶¶ 382, 388, 397, 398-99, 402, 404. A long line of cases has reached exactly that conclusion about similar claims.[13]

---

[12] *See, e.g.*, *Morton v. Twitter, Inc.*, 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2021); *Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*, 144 F.Supp.3d 1088, 1093 (N.D. Cal. 2015).

[13] *See, e.g.*, *FAN*, 432 F.Supp.3d at 1119-20 (plaintiff sought to "hold Facebook liable as a publisher for hosting, and later blocking, [its] online content"); *see also King v. Facebook, Inc.*, 572 F.Supp.3d 776 (N.D. Cal. 2021) (granting Facebook's

## 2.  Section 230(c)(2)(A) bars liability for the Defendants' alleged conduct.

Plaintiffs' claims are independently barred by Section 230(c)(2)(A), which further protects interactive computer services from liability based on "any action voluntarily taken in good faith to restrict access to or availability of materials that the provider … considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230(c)(2)(A). Content may be considered "otherwise objectionable" even if it is not "described in the seven specific categories that precede it." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1051 (9th Cir. 2019); *see id.* at 1051-52. Even "a mistaken choice to block" content that the internet computer service deems objectionable, "if made in good faith, cannot be the basis for liability under federal or state law." *e360Insight, LLC v. Comcast Corp.*, 546 F.Supp.2d 605, 609 (N.D. Ill. 2008).

All of Plaintiffs' claims are premised on the Defendants' alleged "block[ing] or filter[ing]" of material they viewed as "objectionable." The Complaint alleges that the Defendants removed or blocked content they subjectively (even if allegedly mistakenly) viewed as "dangerous" or harassing—whether because it presented a "threat to democracy," was "life-threatening" false information, or was simply obnoxious or bothersome. *See, e.g.*, Compl. ¶¶ 16, 21, 216.

Moreover, although Plaintiffs assert that "[v]iewpoint and content-based discrimination . . . are the antithesis of 'good faith,'" Compl. ¶ 176, that conclusory allegation is both insufficient and incompatible with Section 230. *Domen v. Vimeo, Inc.*, 433 F.Supp.3d 592, 604 (S.D.N.Y. 2020), *aff'd*, 2021 WL 4352312 (2d Cir. Sept. 24, 2021). Section 230's very purpose is to permit internet service providers to moderate third-party speech on their platforms based on its content. Any

---

motion to dismiss for claims "based on Facebook's decision not to publish" content that "treat[ed] Facebook as a publisher").

2132119

interpretation of Section 230(c)(2)(A) that denied protection for content-based moderation because it was based on content would be self-defeating. *Id.* at 604 n.9.

### F.     The Court should strike Plaintiffs' Unruh Act claim.

Plaintiffs' state-law claim for violating the Unruh Act is subject to an additional defense—it must be struck under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. California's anti-SLAPP statute provides a mechanism for expeditiously resolving California claims that "arise from the exercise of free speech rights." *Simmons v. Allstate Ins. Co.*, 92 Cal. App.4th 1068, 1073 (Ct. App. 2001) (quotation omitted). To qualify for protection, a defendant must make a prima facie showing that a claim arises from an act in furtherance of the defendant's right to free speech. *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 (9th Cir. 2017). "[T]he burden [then] shifts to the plaintiff to establish a reasonable probability that it will prevail on its claims." *Id.* In federal court, at the second step, the legal sufficiency of California claims is "analyzed under the same standards as Rule 12(b)(6) motions to dismiss." *CoreCivic. Inc. v. Candide Grp., Inc.*, 46 F.4th 1136, 1143 (9th Cir. 2022).

### 1.     The Unruh Act claim arises from conduct in furtherance of Defendants' free speech rights.

Plaintiffs' Unruh Act claim "arises from" acts by the Defendants "in furtherance of [their] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Code § 425.16(b)(1). The anti-SLAPP statute applies "to all conduct *in furtherance of* the exercise of the right of free speech," not just pure speech. *Lieberman v. KCOP Television, Inc.*, 110 Cal.App.4th 156, 166 (2003) (emphasis in original); *accord hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F.Supp.3d 1099, 1115 (N.D. Cal. 2017). When "an action directly targets the way a content provider chooses to deliver, present, or publish news content on matters of public interest, that action is based on conduct in furtherance of free speech rights." *Greater Los*

2132119

*Angeles Agency on Deafness v. Cable News Network, Inc.*, 742 F.3d 414, 424–425 (9th Cir. 2014). California courts have applied this principle to online platforms. *See Cross v. Facebook, Inc.*, 222 Cal.Rptr.3d 250, 260 (Cal. Ct. App. 2017).

This principle applies here. Plaintiffs' Unruh Act claim is based on the Defendants' alleged removing, restricting, or otherwise choosing whether and how to display content addressing matters of public interest. Compl. ¶ 397 (alleging that Defendants denied "full and equal access" to their "goods and services by censoring and suppressing what [Plaintiffs] were allowed to publish, sell, see, read or hear" on their platforms). That content allegedly included news articles and user posts discussing issues ranging from the COVID-19 pandemic to information relevant to the 2020 presidential election. *Id.* ¶¶ 79, 271. These are clearly "topic[s] of widespread, public interest" that are "of concern to a substantial number of people." *Hilton v. Hallmark Cards*, 599 F.3d 894, 907 (9th Cir. 2010) (citations omitted).

## 2. Plaintiffs cannot prevail on their Unruh Act claim.

Because Plaintiffs' Unruh Act claim arises from conduct in furtherance of the Defendants' free speech rights in connection with issues of public interest, Plaintiffs must show that their Unruh Act claim "is properly stated" under Rule 12(b)(6). *CoreCivic.*, 46 F.4th at 1143. As discussed, Plaintiffs cannot carry that burden. *Supra* Section IV.D.

## G. The Complaint's claims for injunctive and declaratory relief must be dismissed.

Finally, the Court should dismiss Plaintiffs' injunctive and declaratory relief claims (Counts IV and V) with prejudice. As explained above, all of Plaintiffs' federal and state law claims fail as a matter of law, and there is no independent cause of action under California law for injunctive relief. *See, e.g.*, *Neerman v. Cates*, 2022 WL 18278377, at *6 (C.D. Cal. Dec. 28, 2022). Plaintiffs' Declaratory Judgment Act claim similarly fails because that statute "presupposes the existence

of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Because Plaintiffs "lack[] a cause of action under a separate statute," the "Declaratory Judgment Act does not provide a cause of action." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022).

## V.   CONCLUSION

For these reasons, the Defendants respectfully request that the Court dismiss with prejudice Plaintiff's Complaint, strike Plaintiffs' Unruh Act Claim, and set a briefing schedule for recovery of attorneys' fees and costs pursuant to the California Anti-SLAPP statute.

Dated: April 26, 2023

KEKER, VAN NEST & PETERS LLP

By   /s/ Paven Malhotra
PAVEN MALHOTRA
MATAN SHACHAM
JANAY M. WILLIAMS

Attorneys for Defendants META PLATFORMS INC. and INSTAGRAM LLC

2132119

1    Dated: April 26, 2023             MCGUIREWOODS LLP

2

3                           By   */s/ Tanya Greene*
                                     TANYA L. GREENE #267975

4                                 tgreene@mcguirewoods.com
                               JONATHAN Y. ELLIS (*admitted*

5                                 *pro hac vice*)
                               jellis@mcguirewoods.com

6                                 KATHRYN M. BARBER (*pro hac*
                               *vice forthcoming*)

7                                 kbarber@mcguirewoods.com

8                                 Attorneys for Defendant
                               X CORP., SUCCESSOR IN

9                                 INTEREST TO NAMED
                               DEFENDANT TWITTER, INC.

10

11    Dated: April 26, 2023             WILSON SONSINI GOODRICH &
                               ROSATI, P.C.

12

13                           By   */s/ Brian Willen*
                                 BRIAN M. WILLEN (*pro hac vice*

14                                 *forthcoming*)
                               bwillen@wsgr.com

15                                 ARIEL C. GREEN ANABA

16                                 #304780
                               aanaba@wsgr.com

17

18                                 Attorneys for Defendants GOOGLE

19                                 LLC, ALPHABET, INC., and
                               YOUTUBE LLC

20

21                                **<u>ATTESTATION</u>**

22        Pursuant to Local Rule 5-4.3.4(a)(2), the file attests that all other signatories

23 listed, and on whose behalf the filing is submitted, concur in the filing's content and

24 have authorized the filing.

25                                 /s/ Paven Malhotra
                                PAVEN MALHOTRA

26

27

28

2132119

1

**CERTIFICATE OF COMPLIANCE**

2

3
     The undersigned, counsel of record for Defendants Meta Platforms, Inc. and

4
Instagram, LLC certifies that this brief contains 6,589 words, which complies with

5
the word limit of L.R. 11-6.1 and Standing Order 6(c).

6
Dated: April 26, 2023

7
                                        /s/ Paven Malhotra
                                        PAVEN MALHOTRA

8
                                        Attorney for Defendants Meta
                                        Platforms, Inc. and Instagram, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2132119

# CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2023, the foregoing document was electronically filed using this Court's CM/ECF system; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in the case.

Dated: April 26, 2023

/s/ Paven Malhotra
PAVEN MALHOTRA

2132119